## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

IN RE: FORD MOTOR CO. F-150
AND RANGER TRUCK FUEL
ECONOMY MARKETING AND
SALES PRACTICES LITIGATION,

This Document Relates To: All
Actions

Case No. 2:19-md-02901-SFC

Honorable Sean F. Cox

### PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)

Pursuant to this Court's Order dated November 6, 2019 (Dkt. No. 13) and Fed. R. Civ. P. 23(g), plaintiffs Marshall B. Lloyd, Tracey Travis, Victor Perez, Harold Brower, Kyle Mannion, Ryan Combs, Nicholas Leonardi, Dean Kriner, James Williams, David Brewer, Jamar Haynes, Cassandra Morrison, Benjamin Bischoff, Scott Whitehill, David Polley, Matthew Brownlee, Robert Raney, and Stephen Leszczynski ("Plaintiffs") respectfully move the Court for an Order appointing Steve W. Berman and Hagens Berman Sobol Shapiro LLP as Plaintiffs' Interim Co-Lead Class Counsel in the above-captioned action. This motion is based on the attached memorandum and exhibits.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

IN RE: FORD MOTOR CO. F-150
AND RANGER TRUCK FUEL
ECONOMY MARKETING AND
SALES PRACTICES LITIGATION,

This Document Relates To: All
Actions

Case No. 2:19-md-02901-SFC

Honorable Sean F. Cox

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)

010825-11/1212128 V1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................... 1

II.   PROCEDURAL HISTORY ....................................................... 1

III.  ARGUMENT............................................................................ 3

      A.    The Standards for Appointment of Interim Co-Lead Counsel. .......................................................................... 3

      B.    The Court's Order Regarding Initial Status Conference and Motions For Interim Lead Counsel and the Rule 23(g) Factors Favor Steve Berman's and HB's Appointment. ..................................................................... 5

IV.   CONCLUSION........................................................................ 15

010825-11/1212128 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006)............................................................................4

*Hill v. The Tribune Co.*,
    No. 05 C 2602, 2005 WL 3299144 (N.D. Ill. Oct 13, 2005).................................4

*In re Stericycle, Inc., Sterisafe Contract Litig.*,
    No. 13 C 5795, 2013 WL 5609328 (N.D. Ill. Oct. 11, 2013).............................15

*In re Stericycle, Inc., Sterisafe Contract Litig.*,
    No. 13 C 5795, 2017 WL 4864874 (N.D. Ill. Oct. 26, 2017).............................15

*Parkinson v. Hyundai Motor Am.*,
    No. 06-cv-345, 2006 WL 2289801 (C.D. Cal. Aug. 7, 2006).............................4

*Walker v. Discover Fin. Servs.*,
    No. 10-cv-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011) ............................4

### RULES

Fed. R. Civ. P. 23(g) ...........................................................................*passim*

010825-11/1212128 V1

## STATEMENT OF ISSUES PRESENTED

Whether, under Fed. R. Civ. P. 23(g)(1)(A) and (B), Steve W. Berman and Hagens Berman Sobol Shapiro LLP should be appointed Interim Co-Lead Class Counsel, where Mr. Berman and his firm: (1) initiated this action in this District; (2) were the only litigants to perform independent expert testing of EPA MPG estimates, which revealed that the Ford F-150 should be included as a Coastdown Cheating Vehicle; (3) have been selected by over 650 putative class members, from 48 states, to pursue this action on their behalf; (4) have extensive leadership experience in complex nationwide class actions; (5) led the most recent nationwide EPA MPG overstatement class action; (6) have extensive leadership experience in complex class actions in this District; (7) have the human and financial resources to efficiently and effectively prosecute this Action to a successful conclusion; and (8) have a dedicated Auto Defect Litigation Group that has been nationally recognized for its groundbreaking work and success in cases like this Action.

## STATEMENT OF CONTROLLING OR MOST
## APPROPRIATE AUTHORITY

The controlling authority in appointing Interim Co-Lead Class Counsel is Federal Rule of Civil Procedure 23(g)(1)(A) and (B). Under Fed. R. Civ. P. 23(g)(1)(A), a court considering the appointment of interim class counsel must consider the following criteria: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Under Rule 23(g)(1)(B), the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

010825-11/1212128 V1

## I.    INTRODUCTION

Pursuant to this Court's Order dated November 6, 2019 and Federal Rule of Civil Procedure 23(g)(1)(A) and (B), plaintiffs Marshall B. Lloyd, Tracey Travis, Victor Perez, Harold Brower, Kyle Mannion, Ryan Combs, Nicholas Leonardi, Dean Kriner, James Williams, David Brewer, Jamar Haynes, Cassandra Morrison, Benjamin Bischoff, Scott Whitehill, David Polley, Matthew Brownlee, Robert Raney, and Stephen Leszczynski ("Plaintiffs") respectfully move the Court for an Order appointing Steve W. Berman and Hagens Berman Sobol Shapiro LLP ("HB") as plaintiffs' Interim Co-Lead Class Counsel in the above-captioned action. Based on Plaintiffs' counsel's partnerships with Jason Thompson of Sommers Schwartz, P.C. ("SS") and E. Powell Miller from the Miller Law Firm ("MLF") in numerous automotive class cases in this District, Plaintiffs believe that Mr. Thompson and Mr. Miller would be excellent selections for Co-Lead and Mr. Berman would be pleased to work with Mr. Thompson and Mr. Miller in this case, should the Court so desire.

## II.    PROCEDURAL HISTORY

The cases consolidated in the MDL seek to hold Ford Motor Co. ("Ford") accountable for causing the EPA miles per gallon estimates for fuel efficiency ("EPA MPG Estimates") to be fraudulently inflated on Ford Ranger, Ford F-150, and likely other Ford vehicles (the "Coastdown Cheating Vehicles"). The result of this fraud is that Ford was able to falsely market the Coastdown Cheating Vehicles as having

-1-

"best in class" fuel efficiency and otherwise providing exceptional fuel economy. Unwitting consumers purchased the Coastdown Cheating Vehicles under the false belief that they would achieve the EPA MPG Estimates displayed on the window stickers of each vehicle, and thus they chose the Ford vehicles over competitive offers from other manufacturers, paid a premium for fuel efficiency that did not actually exist and did not realize the benefit of paying less for fuel for the life of the vehicle that they purchased.

Mr. Berman filed the first case in this MDL and did so in this District. Having successfully resolved the most recent nationwide MPG fraud case (*In re: Hyundai/Kia Fuel Economy Litigation*[1]), Mr. Berman knew it was unlikely that Ford had limited its coastdown fraud to just a single model, the Ranger, as disclosed by Ford. But rather than sit back and wait for a governmental investigation to reveal additional affected vehicles, Mr. Berman retained experts in EPA MPG certification to independently test and confirm the Ford Ranger had overstated MPG ratings, and to test the Ford F-150 (the most popular vehicle in the U.S.) to determine whether it too was being marketed with fraudulently inflated MPG ratings. Mr. Berman filed additional cases in this District that included his expert testing results. Only after

---

[1] No. 2:13-ml-02424-GW-FFM (C.D. Cal.).

010825-11/1212128 V1

Mr. Berman named the F-150 as a Coastdown Cheating Vehicle did other firms file cases that included the F-150 trucks.

Mr. Berman and the HB Auto Defect Litigation Group have been contacted by over 650 owners of affected vehicles, representing at present 48 of the 50 states, with additional requests for representation arriving on a daily basis. The identification and investigation of additional vehicle models that may be included as Coastdown Cheating Vehicles in the action continues with ongoing research and analysis, and ongoing engagement of a highly qualified expert consultant. In addition, HB has maintained an informational web page related to the case and the issue of Ford's EPA MPG overstatement. Putative class members have been able to utilize this resource to keep abreast of case developments and, if they desire, receive periodic updates. Hundreds of class members regularly access this resource.

## III. ARGUMENT

### A. The Standards for Appointment of Interim Co-Lead Counsel.

Under Rule 23(g)(3), a court has discretion whether to appoint class counsel before class certification.[2] A court considering the appointment of interim class counsel must consider the following criteria: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience

---

[2] A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g).

in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Under Rule 23(g)(1)(B), the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The focus in appointing interim class counsel should be the best interests of the parties, the proposed class, and the Court.[3]

In conjunction with the Rule 23(g) requirements, the Court has asked attorneys seeking appointment as lead class counsel to provide a current firm

---

[3] While neither Rule 23(g) nor the Advisory Committee Notes explicitly set forth the standards to be applied in choosing interim class counsel, courts generally apply the same factors in choosing interim class counsel as they apply in choosing class counsel upon class certification. *See Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."); *see also Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *3-4 (N.D. Ill. Oct 13, 2005) (applying the Rule 23(g) criteria for consideration in appointing class counsel to appointing interim counsel); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."); *Parkinson v. Hyundai Motor Am.*, No. 06-cv-345, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably the same factors apply, however.").

resume, a detailed description of the firm's prior experience in other complex class actions and in serving as lead class counsel in this District. *See* ECF No. 13.

Plaintiffs propose a co-lead structure comprised of HB, SS and MLF with individual appointments of Steve W. Berman, Jason Thompson and E. Powell Miller. If the Court is inclined to appoint an Executive Committee, plaintiffs submit that one or two firms from among the most qualified will be ample.

**B.    The Court's Order Regarding Initial Status Conference and Motions For Interim Lead Counsel and the Rule 23(g) Factors Favor Steve Berman's and HB's Appointment.**

The considerations of Fed. R. Civ. P. 23(g)(1)(A) and (B) favor the appointment of Steve Berman and HB as Interim Co-Lead Class Counsel.

**Rule 23(g)(1)(A)(i) (work counsel has done in identifying or investigating potential claims in the action)**: HB filed the first complaint in this action in this District. Mr. Berman, having already successfully prosecuted the most recent nationwide EPA MPG fraud case, immediately recognized that Ford was unlikely to have restricted its coastdown cheating to just a single model. HB retained experts in coastdown certification and both confirmed the reported EPA MPG inflation for the Ford Ranger and began testing other Ford Vehicles. This expert testing revealed that Ford's F-150, the best-selling passenger vehicle in the United States, was also consuming far more fuel than suggested by its EPA MPG certification.

Mr. Berman then filed *Brewer, et al. v. Ford Motor Co.*[4], which specifically included F-150 models in the class definition and set forth in detail the expert testing undertaken and its results. Only after HB published its testing results in the *Brewer* complaint did other firms in this action begin to include F-150 owners as plaintiffs. Tellingly, none of the subsequent complaints allege any independent facts or testing to support including the F-150, they rely entirely on the facts and testing in the complaint filed by Mr. Berman.

The identification and investigation of additional vehicle models that may be included as Coastdown Cheating Vehicles in the action continues with the firm's ongoing research and analysis, and its ongoing engagement of a highly qualified expert consultant. In addition, HB has maintained an informational web page related to the case and the issue of Ford's EPA MPG overstatement. Putative class members have been able to utilize this resource to keep abreast of case developments and, if they desire, receive periodic updates. Hundreds of class members regularly access this resource. This broad base of support from the class will allow HB to promptly file a nationwide multi-state case without the need of adding other lawyers and law firms, just to get representation from every state. Mr. Berman's actions to date *in*

---

[4] No. 2:19-cv-12135-SJM-RSW.

*this litigation* show that he is fully committed to protecting the entire class of Ford customers who may have been victimized by Ford's EPA MPG fraud.

**Rule 23(g)(1)(A)(ii) (counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action)**: The firm's experience in handling class actions and other complex litigation meets that of any leadership contestant.[5] Mr. Berman's prosecution of this case is consistent with his and HB's track record of cutting edge litigation in consumer class actions generally, and specifically in automobile-related consumer class actions. Mr. Berman and the Auto Defect Litigation Group at his firm have been named a Practice Group of the Year by Law360 in 2018 and 2016, highlighting its "eye toward landmark matters and general excellence" in this area of law. Mr. Berman was one of *National Law Journal*'s 2016 Elite Trial Lawyers for his work in automotive class actions was just last week identified by Law360 as an MVP in Class Actions.

Mr. Berman and his firm have had leadership roles in dozens of nationwide mega-cases, including in nearly all of the largest automotive class actions over the last 20 years. These include the *Toyota Sudden Unintended Acceleration Litigation* where Steve Berman was appointed co-lead counsel[6] in the massive MDL alleging

---

[5] *See* Hagens Berman Sobol Shapiro LLP firm resume, attached as Exhibit A.

[6] Mr. Berman was appointed co-lead *sua sponte* by Judge Selna. The same occurred in the *General Motors Ignition Switch Litigation* where Mr. Berman was appointed *sua sponte*.

that Toyota vehicles contained a defect causing sudden, unintended acceleration. Mr. Berman and his co-leads secured the largest automotive litigation settlement in history, at that time—a $1.6 billion settlement—that Judge Selna called, "extraordinary because every single dollar in the cash fund will go to claimants." Mr. Berman was also a member of the Plaintiffs' Steering Committee and directly involved in settlement negotiations in the *Volkswagen "Clean Diesel" Emissions Fraud Litigation*, which resulted in a class settlement valued at over $10 billion and included a first-ever nationwide buyback of affected vehicles. Mr. Berman is co-lead counsel in the *General Motors Ignition Switch Litigation*, seeking to recover economic losses for consumers who have suffered numerous recalls and diminution value of their cars as a result of faulty ignition switches that led to more than 100 fatalities and countless injuries across the country. Mr. Berman was also appointed to the Plaintiffs' Steering Committee in the Jeep Grand Cherokee emissions cheating litigation, which resulted in a settlement valued at $330 million.[7] Additionally, the parties in *Whalen v. Ford Motor Co.*,[8] which addresses alleged defects in the MyFord Touch computerized user interface, have recently announced a settlement.

---

[7] As requested by the Court, a current firm resume and a detailed description of the firm's prior experience in other complex class actions are attached as Exhibits A and B.

[8] N.D. Cal. No. 13-cv-03072-EMC. HB serves as co-lead counsel. The case has been ongoing for five years and has involved the review and analysis of many millions of pages of documents, as well as software source code, along with other intensive discovery and motions practice on the merits.

As specifically requested by the Court for consideration here, Mr. Berman's and HB's experience leading complex class actions in this District is especially noteworthy. In just the last three years, Mr. Berman has been appointed or chosen by agreement of co-counsel to lead or co-lead eight different automotive consumer class cases in the Eastern District of Michigan.

- By agreement of counsel, Mr. Berman is lead in *Bledsoe v. FCA US LLC*[9], *Raymo v. FCA US LLC*[10] and *Chapman v. General Motors LLC*[11], which are all before Judge Berg.

- By agreement of counsel, Mr. Berman is leading *Counts v. General Motors LLC*[12] and *In re Duramax Diesel Litigation*[13] before Judge Luddington.

- By agreement of counsel, Mr. Berman is co-lead counsel in *Droesser v. Ford Motor Co.*[14], which is before Judge Levy.

- By agreement of counsel, Mr. Berman is leading *Matanky v. General Motors LLC* before Judge Roberts.

- Mr. Berman was appointed co-lead interim class counsel in *Gamboa v. Ford Motor Co.*[15], which is before Judge Hood.

- While a member of the Executive Committee in *In re FCA US LLC Monostable Electronic Gear Shift Litigation*[16], which is before Judge Lawson, Mr. Berman was asked by lead counsel, Powell Miller, to

---

[9] 16-cv-14024-TGB-RSW.

[10] 17-cv-12168-TGB-SDD.

[11] 19-cv-12333-TGB-DRG.

[12] 16-cv-12541-TLL-PTM.

[13] 17-cv-11661-TLL-PTM.

[14] 19-cv-12365-JEL-APP.

[15] 18-cv-1016-DPH-EAS.

[16] 16-md-02744-DML-DRG.

-9-

argue the pivotal class certification motion because of Mr. Berman's extraordinary experience and track record of success.[17]

Mr. Berman's outstanding relationship with Mr. Thompson and Mr. Miller have led him to work with Mr. Thompson and/or Mr. Miller on all of the nine active automotive class actions described above.

Directly relevant to the types of claims asserted here, Mr. Berman obtained a revolutionary settlement in the *Hyundai/Kia MPG Litigation*. There, Hyundai and Kia were alleged to have fraudulently inflated the EPA MPG estimates of their vehicles using doctored coastdown data. Mr. Berman negotiated a nationwide settlement for Hyundai/Kia owners that gave consumers the choice of a cash card for excess fuel expenses or an up-front payment based upon predicted future excess fuel expenses. In addition to extensive document review and necessary familiarization with the process of obtaining EPA MPG certification, the investigation of the *Hyundai/Kia* case included HB attorneys travelling to South Korea to interview witnesses and investigate the origin of the EPA MPG overstatement. The investigation and prosecution of that case, and the directly relevant experience in settling it, gives Mr. Berman and HB a knowledge and experience base that no other applicant firm can match.

---

[17] As requested by the Court, a complete description of Mr. Berman's and the firm's prior experience in serving as lead counsel in class actions in the Eastern District of Michigan is attached as Exhibit C.

**Rule 23(g)(1)(A)(iii) (knowledge of applicable law)**: The firm is also well-versed in applicable common and statutory law, including the consumer protection acts and other relevant statutes of all 50 states, as well as the ways they can be grouped for purposes of establishing predominance and manageability. The firm has briefed and grouped the law in this area in the numerous auto cases now pending in this district. Importantly, HB's class member database already includes potential class representatives from nearly every state, making standing to pursue a remedy under each state's laws in a consolidated amended complaint a non-issue.

**Rule 23(g)(1)(A)(iv) (resources that counsel will commit)**: Mr. Berman and HB have the human and financial resources to face off against the largest and wealthiest companies in the world, and win. HB will commit the resources necessary to prevail in this case, whatever they may be. Mr. Berman will lead a team of himself at least one other HB Partner, and associate lawyers from the specialized Auto Defect Litigation Group at HB. These lawyers will be used as needed, and if more are ever needed, Mr. Berman can draw upon the 79 other lawyers at the firm. Further, as a successful and well-managed firm, HB *never* relies on outside funding for its cases. HB has the financial resources necessary to prosecute the case against Ford. By avoiding a multi-firm, potentially sprawling leadership structure, the class will benefit substantially from the efficiency of a lean, dedicated litigation team.

-11-

**Rule 23(g)(1)(B) (other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class)**: There are many other pertinent matters that support the appointment of Mr. Berman and HB as Interim Co-Lead Class Counsel. For example, Mr. Berman and HB are dedicated to maximizing the recovery to every class they are chosen to represent, and their track record shows it. The firm's success is due to our focus on providing real recoveries for class members. We recently negotiated a $1.2 billion settlement on behalf of Volkswagen franchise dealers for fraud related to Volkswagen's diesel emissions. Each dealer class member received between $1 million and $3.4 million. The firm successfully seeks to obtain high recoveries to the greatest number of class members. For example, in *In re Charles Schwab Corp. Securities Litigation*, the firm recovered $235 million in damages (recovering between 42% and 82% of class members' damages); and we are the first firm in the country to mail checks directly to class members in a securities case without requiring a claim form. Similarly, in *Toyota Sudden Unintended Acceleration Litigation*, the firm obtained injunctive relief in the form of extended warranties and the installation of a safety-enhancing brake override in 1.6 million vehicles in addition to $500 million in cash payments mailed directly to class members. And in its groundbreaking *NCAA Grant-In-Aid Scholarships* case,

-12-

HB recovered $208 million for former student-athletes.[18] Checks averaging $4,000 were mailed to class members with no need to file claims.

Mr. Berman is one of the few class action lawyers that actually tries cases and defendants know he will do so if that is what it takes. For example, in the *Average Wholesale Price Drug Litigation*, HB was co-lead counsel in a ground-breaking drug pricing case against the world's largest pharmaceutical companies. Steve Berman was lead trial counsel and secured trial verdicts against three defendants, leading to court approval of a total of $338 million in settlements. In *NCAA Grant-in-Aid Scholarships*, Steve Berman served as co-lead counsel and trial counsel in the *Alston* case that successfully challenged the NCAA's limitations on the benefits student-athletes can receive as part of a scholarship. Following a $208 million settlement, amounting to 100 percent of single damages, Steve Berman took the injunctive aspect of the case to trial, and won, resulting in a change of NCAA rules limiting the financial treatment of athletes. The trial has changed the landscape of how NCAA football and basketball players are compensated.

As a result of his experience in trying class bellwether cases, Mr. Berman was able to have an informed and productive discussion on those issues at the class certification hearing in the *In re FCA US LLC Monostable Electronic Gear Shift*

---

[18] http://www.grantinaidsettlement.com/media/879051/settlement_agreement.pdf.

*Litigation*[19] before Judge Lawson and will similarly be able to apply that experience here.

The judiciary has recognized Mr. Berman and HB's prowess in running and resolving complex class action cases as reflected, by example, in the comments of a true judicial lion,[20] the Hon. Milton Shadur,[21] in *In re: Stericycle, Inc., Steri-Safe Contract Litigation*. *Stericycle* was a large, complex MDL case that involved the pricing of medical-waste services. There, in appointing HB as sole interim lead counsel in a leadership contest, Judge Milton Shadur cited the "high praise of attorney Berman's skills" that inquiry to his Northern District of Illinois colleagues had elicited. And while the court noted a competitor's "wealth of trial experience," including in class actions, it also stated: "it must be said that the track record of HB and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the *Toyota Unintended Acceleration*

---

[19] 16-md-02744-DML-DRG.

[20] *See*, *e.g.*, "Judge Shadur, 93, to step down after 37 years on federal bench," *Chicago Tribune*, Aug. 1, 2017 (available at http://www.chicagotribune.com/news/local/breaking/ct-judge-milton-shadur-retires-met-20170801-story.html (last accessed May 2, 2018)).

[21] Judge Shadur recently passed away after an exemplary life and long turn on the bench. *E.g.*, "Milton Shadur, federal judge who oversaw key cases involving Chicago schools, Cook County jail, dies," *Chicago Tribune*, Jan. 16, 2018 (available at http://www.chicagotribune.com/news/obituaries/ct-met-milton-shadur-obituary-20180116-story.html (last accessed May 2, 2018)).

-14-

*Litigation* and a substantial number of really outstanding big-ticket results."[22] As Judge Shadur put it, the firm's, and in particular Mr. Berman's, "sterling credentials" were to be considered pursuant to Rule 23(g)(1)(B).[23] The court's decision to choose HB was vindicated when the firm, led by Mr. Berman, settled the case for $295 million,[24] together with changes to the company's pricing practices.[25]

## IV.   CONCLUSION

For the forgoing reasons, plaintiffs respectfully submit that the Court should appoint as Plaintiffs' Interim Co-Lead Class Counsel Steve W. Berman and the HB

---

[22] *In re Stericycle, Inc., Sterisafe Contract Litig.*, No. 13 C 5795, 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013). As the court noted further: "In that respect District Judge James Selna went out of his way, at the windup of the case, in describing the settlement as truly extraordinary—indeed unique—in terms of the benefits conferred on the plaintiff class." *Id.* at n.4.

[23] *See id.* The court was offered a "multilayered format" by other firms but declined it, noting that it "is not one that fosters efficiency—instead it tends to promote a duplication of effort via conferencing, as well as overlapping work assignments and other inefficiencies too often attendant on such a structure. And that of course inevitably tends to increase the lodestar figure without any corresponding increase in meaningful lawyer output." *Id.*

[24] At the preliminary approval hearing, Judge Shadur commended both sides for their "professionalism of the highest order" and commented that "the current submission [papers in support of plaintiffs' motion for preliminary approval of the class settlement] contains [] an impeccable covering of all the necessary bases, demonstrating the type of high quality work product that this Court anticipated when it designated Hagens Berman and its lead partner Steve Berman as Class Counsel." *In re Stericycle, Inc., Sterisafe Contract Litig.*, No. 13 C 5795, 2017 WL 4864874, at *1 (N.D. Ill. Oct. 26, 2017).

[25] http://www.stericycleclassaction.com/docs/LFN.pdf.

-15-

law firm. Mr. Berman recognizes the substantial experience and skill of Jason

Thompson and E. Powell Miller, and would be pleased to co-lead this case with Mr.

Thompson and Mr. Miller, should the Court find it appropriate.

Dated: November 20, 2019

Respectfully Submitted,

By: */s/ Steve W. Berman*
    Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

Jason Thompson
SOMMERS SCHWARTZ, P.C.
One Tower Square, Suite 1700
Southfield, MI 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com

*Attorneys for Plaintiffs Marshall B. Lloyd, Tracey Travis, Victor Perez, Harold Brower, Kyle Mannion, Ryan Combs, Nicholas Leonardi, Dean Kriner, James Williams, David Brewer, Jamar Haynes, Cassandra Morrison, Benjamin Bischoff, Scott Whitehill, David Polley, Matthew Brownlee, Robert Raney, and Stephen Leszczynski*

-16-

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on November 20, 2019, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

*s/ Steve W. Berman*

STEVE W. BERMAN

-17-