## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: FORD MOTOR CO. F-150 AND RANGER TRUCK FUEL ECONOMY MARKETING AND SALES PRACTICES LITIGATION, | Case No. 2:19-md-02901-SFC |
| | Honorable Sean F. Cox |
| This Document Relates To: All Actions | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS THE CONSOLIDATED AMENDED MASTER CLASS ACTION COMPLAINT PURSUANT TO FEDERAL <u>RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(1)</u>

## STATEMENT OF ISSUES PRESENTED

1.    Whether Plaintiffs' state law claims for false advertising regarding fuel economy, failure to disclose the truth regarding fuel economy and other actionable misrepresentations and/or omissions by Ford with respect to fuel economy are not expressly or impliedly preempted?

      a.  Plaintiffs Answer:  Yes

      b.  Defendant Answers: No

      c.  The Court Should Answer: Yes

2.    Whether Plaintiffs allege a justiciable claim where Plaintiffs do not sue for Energy Policy and Conservation Act of 1975, 49 U.S.C. § 32901, *et seq.* ("EPCA") violations, Plaintiffs sufficiently pled an injury caused by conduct traceable to Ford, and Plaintiffs possess Article III standing to sue in states where they did not purchase or lease vehicles?

      a.  Plaintiffs Answer:  Yes

      b.  Defendant Answers: No

      c.  The Court Should Answer: Yes

3.    Whether the doctrine of primary jurisdiction is inapplicable where, as here, this Court has jurisdiction over cases challenging false and misleading advertising related to inaccurate fuel economy ratings and where Plaintiffs contend Ford deceived consumers at the point or purchase or lease, and where the EPA does not have the power to adjudicate claims for money damages?

      a.  Plaintiffs Answer:  Yes

      b.  Defendant Answers: No

      c.  The Court Should Answer: Yes

4.    Whether Plaintiffs pled actionable express warranty claims where Plaintiffs' have alleged Ford's misrepresentations in detail, where Plaintiffs allege both a manufacturing and/or design defect, where the warranty fails in its essential

purpose because Ford has failed and/or refused to adequately provide the a remedy within a reasonable time, where privity is not required to sustain Plaintiffs' claims, and where Plaintiffs have satisfied all applicable pre-suit notice requirements, including issuing a notice letter via certified mail as early as May 6, 2019?

    a. Plaintiffs Answer: Yes

    b. Defendant Answers: No

    c. The Court Should Answer: Yes

5.   Whether Plaintiffs allege an actionable Magnuson-Moss Warranty Act ("MMWA") claim where Plaintiffs have adequately pled the elements of a MMWA claim and where Plaintiffs' express warranty claims survive?

    a. Plaintiffs Answer: Yes

    b. Defendant Answers: No

    c. The Court Should Answer: Yes

6.   Whether Plaintiffs' allegations satisfy Fed. R. Civ. P. 8(a) and 9(b) where Plaintiffs' allegations are pled with particularity and specificity?

    a. Plaintiffs Answer:  Yes

    b. Defendant Answers: No

    c. The Court Should Answer: Yes

7.   Whether Plaintiffs have sufficiently pled their state law fraudulent concealment claims where Plaintiffs allege that (a) Ford knowingly failed to disclose that the Coastdown Cheating Vehicles do not provide the fuel efficiency that Ford advertised and certified; (b) that Ford failed to disclose that the Coastdown Cheating Vehicles' mileage is far worse than a reasonable consumer would expect, particularly given the premium paid for these vehicles; (c) that Ford materially omitted that the Monroney Sticker is false; and (d) that Ford omitted in its representations to Plaintiffs and the other Class members that the

Coastdown Cheating Vehicles were, in fact, defective, with reduced fuel efficiency?

    a.  Plaintiffs Answer: Yes

    b.  Defendant Answers: No

    c.  The Court Should Answer: Yes

8.    Whether Plaintiffs sufficiently allege their state law fraud and negligent misrepresentation claims where Plaintiffs allege that (a) Ford omitted material facts regarding its miscalculation of factors during internal vehicle testing in order to report that its vehicles were more fuel efficient than they actually were; (b) Ford should have disclosed the true fuel economy of the vehicles; (c) how Ford deliberately miscalculated coastdown testing in order to report that the vehicles used less fuel and emitted less pollution than they actually did and how Ford admitted improper coastdown testing on Class Vehicles but took no action to correct ongoing misrepresentations to consumers and (d) that Ford obtained increased profits due to its fraud, and where any applicable business transaction requirement is satisfied by Plaintiffs' purchase or lease of the Vehicles?

    a.  Plaintiffs Answer: Yes

    b.  Defendant Answers: No

    c.  The Court Should Answer: Yes

9.    Whether Plaintiffs' consumer protection claims should proceed where Plaintiffs have pled actionable misrepresentations and omissions to support claims under state consumer protection acts, where Fed. R. Civ. P. 23 allows Plaintiffs to pursue class claims under consumer protection statutes, where Mississippi Plaintiffs have alleged that they provided Ford with pre-suit notice, where approval is not required by the Iowa Attorney General to pursue a class action, and where Plaintiffs' claims are not exempt under the Michigan Consumer Protection Act?

    a.  Plaintiffs Answer:  Yes

    b.  Defendant Answers: No

c.  The Court Should Answer: Yes

10.   Whether Plaintiffs properly pled their breach of contract claims where the sale of a vehicle is a valid contract that Ford has breached?

a.  Plaintiffs Answer: Yes

b.  Defendant Answers: No

c.  The Court Should Answer: Yes

11.   Whether Plaintiffs sufficiently pled their unjust enrichment claims where Plaintiffs allege that Ford overcharged for its vehicles (which do not reflect the true value of Plaintiffs' vehicles) and the increased financial gains Ford enjoyed (wrongfully obtained profits that would be inequitable and unjust for Ford to retain), Ford obtained increased profits due to its fraud and each Plaintiff alleges that he/she overpaid for his/her vehicle?

a.  Plaintiffs Answer: Yes

b.  Defendant Answers: No

c.  The Court Should Answer: Yes

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Argument IV – Plaintiffs' State Law Claims are Not Preempted**

- *Wyeth v. Levine*, 129 S. Ct. 1187 (2009)

- *Gamboa v. Ford Motor Company*, 381 F. Supp.3d 853, 870-71 (2019)

**Argument IV(A) - Defendant's Express Preemption Arguments Fail**

- *Wyeth v. Levine,* 129 S. Ct. 1187 (2009)

- *Chrysler Grp. LLC v. S. Holland Dodge, Inc.*, 862 F. Supp. 2d 661 (E.D. Mich. 2012)

**Argument IV(A)(i) - 49 U.S.C. § 32919(a) does not preempt Plaintiffs' claims**

- 49 U.S.C. § 32919(a)

- *N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)

**Argument IV(A)(ii) - 49 U.S.C. § 32919(b) does not preempt Plaintiffs' claims**

- 49 U.S.C. § 32919(b)

- *Wyeth v. Levine*, 129 S. Ct. 1187 (2009)

- *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014)

**Argument IV(A)(iii) - The EPA's regulations do not preempt Plaintiffs' claims**

- *Wyeth v. Levine*, 129 S. Ct. 1187, 1201 (2009)

**Argument IV(B) - Defendant's Implied Preemption Arguments Fail**

- *Chrysler Grp. LLC v. S. Holland Dodge, Inc.*, 862 F. Supp. 2d 661 (E.D. Mich. 2012)

**Argument IV(B)(i) - Field preemption does not bar Plaintiffs' state law claims**

- *English v. General Elec. Co.*, 496 U.S. 72 (1990)

- *Green Mountain Chrysler Plymouth Dodge Jeep*, 508 F. Supp. 2d at 355

**Argument IV(B)(ii) - Conflict preemption does not bar Plaintiffs' state law claims**

- *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)

- *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

- *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

**Argument V - Plaintiffs Allege a Justiciable Claim**

- N/A

**Argument V(A) - Plaintiffs are Suing for State Law claims, Not EPCA Violations.**

- *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

- *Bledsoe v. FCA US LLC,* 378 F. Supp. 3d 626 (E.D. Mich. 2019)

**Argument V(B) – Plaintiffs' Out-of-Pocket Losses are a Concrete Injury in Fact.**

- *Bledsoe v. FCA US LLC,* 378 F. Supp. 3d 626 (E.D. Mich. 2019)

- *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018)

- *Aberdeen v. Toyota Motor Sales, U.S.A.*, 2008 WL 11336173 (C.D. Cal. Aug. 22, 2008)

- *Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359 (D.N.J. Mar. 25, 2020)

**Argument V(C) - Plaintiffs Properly Assert Nationwide Claims.**

- *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

- *In re Auto. Parts Antitrust Litig.*, 29 F.Supp.3d 982 (E.D. Mich. 2014)

- *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)

**Argument VI – Primary Jurisdiction Does Not Apply**

- *Martin v. Behr Dayton Thermal Prods. LLC*, 2011 WL 4073703 (S.D. Ohio Sept. 13, 2011)

- *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

- *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

- *Spears v. Chrysler, LLC*, 2011 WL 540284 (S.D. Ohio Feb. 8, 2011)

- *Gentry v. Hyundai Motor Am., Inc.*, 2017 WL 354251 (W.D. Va. Jan. 23, 2017)

**Argument VII - Plaintiffs' Express Warranty Claims Are Proper**

- *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *Francis v. General Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020)

- *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)

- *Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826 (D.N.J. 2013)

- *Hamilton v. TBC Corp.*, 328 F.R.D. 359 (C.D. Cal. Aug. 24, 2018)

- *Wilson v. Volkswagen Grp. of Am., Inc.*, 2018 WL 9850223 (S.D. Fla. Nov. 30, 2018)

- *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

- *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2018)

- *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)

- *In re Rust-Oleum Restore Marketing, Sales Practices, and Prods. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016)

- *Fire Ins. Exch. v. Electrolux Home Prods.*, 2006 WL 2925286 (E.D. Mich. Oct. 11, 2006)

- U.C.C. § 2-607(3)(a)

- UCC § 2-313

**Argument VIII - Plaintiffs' Magnuson-Moss Warranty Act Claims are Well-Pled**

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *Ranford v. Daimler Chrysler Corp.,* 168 F. Supp. 2d 752 (N.D. Ohio 2001)

- *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017)

**Argument IX – Plaintiffs Properly Pled Their State Law Claims**

- N/A

**Argument IX(A) - Plaintiffs' Allegations Satisfy Rules 8(a) and 9(b).**

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

- *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012)

- *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)

- *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)

- *Raymo v. FCA US LLC*, 2020 WL 4366061 (E.D. Mich. July 30, 2020)

- *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019)

- *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)

## Argument IX(B) – Plaintiffs' Fraudulent Concealment Claims are Well-Pled

- *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019)

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

## Argument IX(C) - Plaintiffs Fraud and Negligent Misrepresentation Claims are Proper.

- *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

- *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

- *In re Rust-Oleum Restore Marketing, Sales Practices, and Prods. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016)

## Argument IX(D) – Plaintiffs Properly Pled Their State Law Claims

- N/A

## Argument IX(D)(i) - Defendant fails to meet its burden under Rule 12(b)(6)

- *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

- *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)

**Argument IX(D)(ii) – <u>Plaintiffs can pursue class claims under all states' consumer protection statutes</u>**

- Fed. R. Civ. P. 23

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)

- *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018)

- *In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304 (S.D. Fla. 2020)

- *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090 (S.D. Fla. 2019)

- *In re Myford Touch Consumer Litig.*, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016)

**Argument IX(D)(iii) - <u>Plaintiffs can pursue claims under the Iowa and Mississippi consumer protection statutes</u>**

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)

- *Rickman v. BMW of N. Am.*, 2020 WL 3468250 (D.N.J. June 25, 2020)

**Argument IX(D)(iv) - <u>Plaintiffs' Claims Are Not Exempt Under the Michigan CPA.</u>**

- *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019)

**Argument IX(E) - <u>Plaintiffs Properly Pled Their Breach of Contract Claims.</u>**

- *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019)

**Argument IX(F)** - **Plaintiffs Properly Pled Their Unjust Enrichment Claims**

- *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982 (E.D. Mich. 2014)

- *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

- *Francis v. General Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020)

- *Solo v. UPS Co.*, 819 F.3d 788 (6th Cir. 2016)

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218 (E.D. Mich. 2020)

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  STATEMENT OF FACTS ....................................................................5

III.  LEGAL STANDARDS .......................................................................13

IV.  Plaintiffs' State Law Claims are not Preempted .............................14

   A.  Defendant's Express Preemption Arguments Fail ......................17

     i.  49 U.S.C. § 32919(a) does not preempt Plaintiffs' claims ....................17

     ii.  49 U.S.C. § 32919(b) does not preempt Plaintiffs' claims ....................19

     iii.  The EPA's regulations do not preempt Plaintiffs' claims ......................28

   B.  Defendant's Implied Preemption Arguments Fail ......................29

     i.  Field preemption does not bar Plaintiffs' state law claims ....................29

     ii.  Conflict preemption does not bar Plaintiffs' state law claims ................33

V.  Plaintiffs Allege a Justiciable Claim................................................35

   A.  Plaintiffs are Suing for State Law Claims, Not EPCA Violations.............35

   B.  Plaintiffs' Out-of-Pocket Losses are a Concrete Injury in Fact .................38

   C.  Plaintiffs Properly Assert Nationwide Claims ...........................43

VI.  Primary Jurisdiction Does Not Apply .......................................455

VII.  Plaintiffs' Express Warranty Claims are Proper .........................47

VIII.  Plaintiffs' Magnuson-Moss Warranty Act Claims Are Well-Pled .............55

IX.  Plaintiffs Properly Pled Their State Law Claims ..........................56

   A.  Plaintiffs' Allegations Satisfy Rules 8(a) and 9(b). ..................56

   B.  Plaintiffs' Fraudulent Concealment Claims are Well-Pled........60

   C.  Plaintiffs' Fraud and Negligent Misrepresentation Claims are Proper .......62

D.  Plaintiffs Properly Pled State Law Consumer Protection Claims...............65

i.  Defendant fails to meet its burden under Rule 12(b)(6) .........................65

ii.  Plaintiffs can pursue class claims under all states' consumer protection statutes...............................................................................................69

iii.  Plaintiffs can pursue claims under the Iowa and Mississippi Consumer Protection statutes ................................................................................70

iv.  Plaintiffs' Claims are Not Exempt under the Michigan CPA.................71

E.  Plaintiffs Properly Pled Their Breach of Contract Claims.........................72

F.  Plaintiffs Properly Pled Their Unjust Enrichment Claims.........................73

X.  CONCLUSION ...............................................................................................75

# TABLE OF AUTHORITIES

## Cases

*2500 Lakeview Ass'n v. Euchem, Inc.*, 1997 WL 126857 (N.D. Ill. Mar. 17, 1997) ...................................................................................................................66

*Aberdeen v. Toyota Motor Sales, U.S.A.*, 2008 WL 11336173 (C.D. Cal. Aug. 22, 2008) ......................................................................................................41

*Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018) .............46

*Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359 (D.N.J. Mar. 25, 2020)..42

*Alden v. Maine,* 527 U.S. 706 (1999) ........................................................................4

*Alexander v. Sandoval*, 532 U.S. 275 (2001)...........................................................36

*Altria Group, Inc. v. Good,* 555 U.S. 70 (2008) ........................................ 26, 27, 28

*Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018) ..........70

*Andren v. Alere, Inc.*, No. 16-1255, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017)70

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................13

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007) ...................................................................................................................13

*Ass'n of Taxicab Operators, USA v. City of Dallas*, 866 F. Supp. 2d 595 (N.D. Tex. 2012) ......................................................................................................31

*Atascadero State Hospital v. Scanlon,* 473 U.S. 234 (1985)................................3, 4

*Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ....40

*Ball v. Sony Electronics, Inc.*, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) .....52

*Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505 (D. Md. 2011) ......................................................................................................66

*Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018)......................55

*Beck v. FCA US LLC,* 273 F. Supp. 3d 735 (E.D. Mich. 2017) ............... 40, 50, 58

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................13

*Bildstein v. MasterCard Int'l, Inc.*, 2005 WL 1324972 (S.D.N.Y. June 6, 2005) ..67

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ............................................39

*Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019) ................ passim

*Buettner v. R.W. Martin & Sons, Inc.*, 47 F.3d 116 (4th Cir. 1995) .......................52

*Campbell v. First Am. Title Ins. Co.*, 644 F. Supp. 2d 126 (D. Me. 2009) .............66

*Canfield v. FCA US LLC*, 2019 WL 133402 (D. Del. Jan. 8, 2019) .......................51

*Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090 (S.D. Fla. 2019) .............70

*Carriuolo v. Gen. Motors LLC,* 72 F. Supp. 3d 1323 (S.D. Fla. 2014)...................23

*Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722 (6th. Cir. 2013) .....................29

*Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815 (D. Ariz. 2016) ..............................66

*Chrysler Grp. LLC v. S. Holland Dodge, Inc.*, 862 F. Supp. 2d 661 (E.D. Mich. 2012) ......................................................................................................... 17, 29

*Cipollone v. Ligget Group, Inc.*, 505 U.S. 504 (1992) ..................................... 14, 30

*Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789 (E.D. Tenn. 2009) ...................67

*Codonics, Inc. v. DatCard Sys., Inc.*, No. 1:08-CV-1885, 2009 WL 2382567 (N.D. Ohio July 31, 2009)...............................................................................................15

*Copelan v. Infinity Ins. Co.*, 728 Fed. App'x 724 (9th Cir. 2018)..........................42

*Correctional Servs. Corp. v. Maleska*, 534 U.S. 61 (2001)....................................36

*Cottrell v. AT&T Inc.,* 2020 WL 4818606 (N.D. Cal. Aug. 19, 2020)...................74

*Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254 (2006)...........................................66

*CSX Transp., Inc. v. Easterwood*, 507 U. S. 658 (1993) ..........................................3

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) ........................................................15

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)............................... 49, 55

*Davis v. United Air Lines, Inc.,* 575 F. Supp. 677 (E.D.N.Y. 1983) ......................37

*De Shazer v. National RV Holdings, Inc.*, 391 F. Supp. 2d 791 (D. Ariz. 2005) ....52

*DeFrank v. Samsung Elecs. Am., Inc.*, 2020 WL 6269277 (D.N.J. Oct. 26, 2020) 67

*Donat v. Trek Bicycle Corporation*, 2016 WL 297436 (D.S.D. Jan. 22, 2016) ......51

*English v. General Elec. Co*., 496 U.S. 72 (1990)............................................ 30, 33

*Estrada v. Johnson & Johnson,* 2017 WL 2999026 (D.N.J July 14, 2017) ...........41

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100 (1981).........16

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................60

*Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410 (6th Cir. 1998)........................44

*Fednav, Ltd. v. Chester,* 547 F.3d 607 (6th Cir. 2008)............................... 17, 29, 33

*Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830 (D.N.J. Dec. 18, 2012) ...................................................................................................................................14

*Fire Ins. Exch. v. Electrolux Home Prods.*, 2006 WL 2925286 (E.D. Mich. Oct. 11, 2006) ..................................................................................................................54

*Francis v. Gen. Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) .................................................................................................................... passim

*Freeman v. Burlington Broadcasters*, *Inc*., 204 F.3d 311 (2d Cir. 2000) ..............30

*Gamboa v. Ford Motor Company*, 381 F. Supp.3d 853 (2019) ................. 17, 34, 63

*Geier v. Am. Honda Motor Co.,* 529 U.S. 861 (2000).............................................28

*Gentry v. Hyundai Motor Am., Inc.*, 2017 WL 354251 (W.D. Va. Jan. 23, 2017) .46

*Gilles v. Ford Motor Co.*, 24 F.Supp.3d 1039 (D. Colo. 2014) ...................... passim

*Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017) ....................67

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007) ................................................................................................. 18, 31

*Greenery Rehabilitation Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73 (1994) ...................................................................................................................66

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .............................................................3, 4

*Gregory v. Poulin Auto Sales, Inc.*, 2012 VT 28 (2012) .........................................67

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003).....................................37

*Hamilton v. TBC Corp.*, 328 F.R.D. 359 (C.D. Cal. Aug. 24, 2018)....................51

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ..............................39

*Harney v. Associated Materials, LLC*, 2018 WL 468303 (D. Or. Jan. 18, 2018) ...67

*Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013)...........67

*Helpling v. Rheem Manufacturing Company*, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ...................................................................................................................52

*Ho v. Michelin North America, Inc.*, 2011 WL 3241466 (D. Kan. July 29, 2011) .50

*Horne v. Novartis Pharm. Corp.*, 541 F. Supp. 2d 768 (W.D.N.C. 2008).............50

*Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) ......43

*Hubert v. General Nutrition Corp.*, 2017 WL 3971912 (W.D. Pa. Sept. 8, 2017) .41

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .........66

*In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 1222 (N.D. Ga. 2018) ............66

*In re Auto. Parts Antitrust Litig.*, 29 F.Supp.3d 982 (E.D. Mich. 2014).... 43, 73, 74

*In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 867-68 (E.D. Mich. 2014) .44

*In re AZEK Bldg, Prods., Inc. Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608 (D.N.J. 2015)........................................................................................................52

*In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 5629790 (E.D. Va. Sept. 18, 2020) ....................................................................................................67

*In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Prods. Liab. Litig.*, 2018 WL 4826866 (N.D. Cal. Oct. 4, 2018) ................ 38, 43, 67, 71

*In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012)........................51

*In re Edwards*, 233 B.R. 461 (Bankr. D. Idaho 1999)............................................66

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582 (E.D. Mich. 2018)......................................................................................................71

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218 (E.D. Mich. 2020)......................................................................................................74

*In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017) ....................................................................................... 50, 69

*In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ........................................................... passim

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 491155 (E.D. La.) 50

*In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*, 2010 WL 2813788 (D.N.J. July 9, 2010)....................................................................50

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019) ...................................................................... 60, 61, 72

*In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372 (S.D.N.Y. 2017) ....................................................................................................................66

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) ...............................................................................................................................70

*In re Intel Corp. CPU Mktg., Sales Practices & Prod. Liab. Litig.*, 2020 WL 1495304 (D. Or. Mar. 27, 2020) .................................................................. 66, 67

*In re Motor Fuel Temperature Sales Practices Litig.*, 867 F. Supp. 2d 1124 (D. Kan. 2012)..............................................................................................................66

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) . 50, 53, 70

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012) ..............66

*In re Rustoleum Restore Mktg. Sales Practices and Prods. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016) ......................................................... 52, 53, 55, 65

*In re Santa Fe Natural Tobacco Company Mktg. & Sales Practices and Prods. Liab. Litig.*, 288 F. Supp. 3d 1087 (D.N.M. 2017) ..............................................50

*In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) ...........................................................................................66

*In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304 (S.D. Fla. 2020) .....70

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, 959 F.3d 1201 (9th Cir. 2020).................................................... 38, 43, 50

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ...........................................................................................13

*Jones v. Herlin*, 2013 WL 823420 (W.D. La. Mar. 6, 2013)...................................66

*Jones v. Rath Packing Co.,* 430 U.S. 519 (1977) ............................................ 17, 30

*Kansas v. Garcia*, 140 S. Ct. 791 (2020) ..................................................................2

*Kron Med. Corp. v. Collier Cobb & Assocs., Inc.*, 107 N.C. App. 331 (1992).......67

*Kuns v. Ford Motor Co.*, 543 Fed. App'x 572 (6th Cir. 2013) ...............................56

*Lambert v. Downtown Garage, Inc.*, 262 Va. 707 (2001) .......................................67

*Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284 (D. Conn. 2015)........................................................................................... 28, 66

*Leonard v. Abbott Labs., Inc* ., 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)...........68

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) .......70

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ...........................................14

*LWT, Inc. v. Childers*, 19 F.3d 539 (10th Cir. 1994)...............................................54

*Madeira v. Affordable Housing Foundation, Inc*., 469 F.3d 219 (2d Cir. 2006) ....30

*Maggard v. Essar Global Ltd.*, 16 F. Supp. 3d 676 (W.D. Va. 2014).....................74

*Mainline Tractor & Equipment Co., Inc. v. Nutrite Corp.*, 937 F. Supp. 1095 (D. Vt. 1996) ...........................................................................................................51

*Martin v. Behr Dayton Thermal Prods. LLC*, 2011 WL 4073703 (S.D. Ohio Sept. 13, 2011) ...........................................................................................45

*McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518 (Iowa 2015).....................66

*McKie v. Sears Protection Co.*, 2011 WL 1587103 (D. Or. Apr. 27, 2011) ...........68

*McQueen v. Yamaha Motor Corp., U.S.A.*, 2020 WL 5630006 (D. Minn. Sept. 21, 2020) ...................................................................................................66

*Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996) ................................................ 2, 3, 17

*Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2nd Cir. 2010)  19, 36

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993) ................................58

*Mooradian v. FCA US, LLC*, 2017 WL 4869060 (N.D. Ohio Oct. 27, 2017) ........42

*Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826 (D.N.J. 2013)...................51

*Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836 (D.N.J. Nov. 30, 2017) ........62

*Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977) .................................................................................................................13

*Motley v. Jaguar Land Rover N. Am., LLC*, 2012 WL 5860477 (Conn. Super. Ct. Nov. 1, 2012) ....................................................................................67

*Moulton v. Bane*, 2016 WL 1091093 (D.N.H. Mar. 21, 2016) ..............................66

*N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) .........................................................................................18

*Newington v. Forrester*, 2008 WL 4908200 (N.D. Tex. Nov. 13, 2008)...............74

*Ohio Nat'l Ins. Co. v. United Stated States*, 922 F. 2d 320 (6th Cir. 1990)...........13

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)....................................................15

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190 (1983) ...................................................................................................31

*Paduano v. Am. Honda Co., Inc.*, 169 Cal. App. 4th 1453 (Cal. App. 2009) . passim

*Parks v. AT&T Mobility, LLC*, 2011 WL 102543 (W.D. Okla. Jan. 12, 2011).......67

*Parrish v. Volkswagen Group of America, Inc.*, 463 F. Supp. 3d 1043 (C.D. Cal. 2020) ................................................................................................................50

*Patterson Oil Co. v. Verifone, Inc.*, 2015 WL 6149594 (W.D. Mo. Oct. 19, 2015) ................................................................................................................50

*Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018) ... passim

*Pleasant v. McDaniel*, 2018 Ark. App. 254 (2018).......................................... 66, 68

*POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014)...............................32

*Poole v. Nevada Auto Dealership Investments, LLC*, 135 Nev. 280 (Nev. App. 2019) ................................................................................................................66

*Puente Arizona v. Arpaio*, 821 F.3d 1098 (9th Cir. 2016).........................................2

*Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938 (2016) .............16

*Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 686 F. Supp. 1319 (N.D. Ill. 1988) ................................................................................................................50

*Raymo v. FCA US LLC*, 2020 WL 4366061 (E.D. Mich. July 30, 2020) ........ 59, 64

*Reed v. Arthrex, Inc.*, 2017 WL 4560140 (D. Nev. Oct. 11 2017) .........................52

*Retail Clerks v. Schermerhorn,* 375 U.S. 96 (1963) .................................................2

*Rhode v. E & T Investments, Inc.*, 29 F. Supp. 2d 1298 (M.D. Ala. 1998) .............51

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ...........................................30

*Rickman v. BMW of N. Am.*, 2020 WL 3468250 (D.N.J. June 25, 2020)................71

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) .....13

*Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456 (C.D. Cal. Feb. 3, 2017)...42

*Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348 (1975) ................................................................................................................50

*Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222 (Del. Super. Ct. Apr. 1, 2010) ..................................................................................................66

*Schmaltz v. Smithkline Beecham Corp.*, 2009 WL 1456723 (D. Colo. May 21, 2009) ..........................................................................................................66

*Shuker v Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2017) ..............................16

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944) ......................................................29

*Smith v. Gen. Motors Corp.*, 979 S.W.2d 127 (Ky. Ct. App. 1998).......................66

*Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012 (N.D. Ind. 2020).......................66

*Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735 (M.D. Tenn. 2010)...............................50

*Solo v. UPS Co*., 819 F.3d 788, 796 (6th Cir. 2016) ......................................... xi, 74

*Tafflin v. Levitt,* 493 U.S. 455 (1990) ......................................................................4

*Texas v. White,* 7 Wall. 700, 19 L.Ed. 227 (1869)...................................................4

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005)....................42

*Thiokol Corp., Morton Int'l v. Roberts*, 76 F.3d 751 (6th Cir. 1996).....................16

*Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2018)...........50

*True v. American Honda Motor Co., Inc.,* 520 F. Supp.2d 1175 .................... 17, 48

*United States v. Haun*, 124 F.3d 745 (6th Cir. 1997) .............................................45

*United States v. Mead Corp.,* 533 U.S. 218 (2001) ................................................29

*Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894 (2019)................................2, 15

*Waupaca Electric Light and Railway Co. v. Milwaukee Electric Railway & Light Co.*, 88 N.W. 308 (Wis. 1901) ...........................................................................50

*Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019)................52

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) ........................58

*Williamson v. Mazda Motor of Am., Inc*., 562 U.S. 323 (2011) ..............................15

*Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630 (E.D. Tex. 2007) ................42

*Wright v. Craft*, 372 S.C. 1 (Ct. App. 2006)..........................................................67

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) ........................................................... passim

*Yung Kim v. General Motors, LLC*, 99 F. Supp. 3d 1096 (C.D. Cal. 2015) ... passim

*Yvon v. Baja Marine Corp*., 495 F. Supp. 2d 1179 (N.D. Fla. 2007)......................52

*Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281 (11th Cir. 2007) ................66

*Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002) .............67

**Statutes**

15 U.S.C. § 1334(b) ...............................................................................................26

15 U.S.C. § 2301(6) ...............................................................................................55

49 U.S.C. § 32908(d) .............................................................................................47

49 U.S.C. § 32919(a) ............................................................................... 17, 18, 19, 27

49 U.S.C. § 32919(b) ....................................................................................... passim

49 U.S.C. §32901 ...................................................................................................25

Alaska Stat. § 45.50.471(12) ..................................................................................66

Arkansas Code § 4–88–107(a)(10) .........................................................................66

Idaho Admin. Proc. Act § 04.02.01.30 ...................................................................66

Ind. Code § 24-5-0.5-3(a) .......................................................................................66

Iowa Code § 714H.1 ...............................................................................................66

Kan. Stat. Ann. § 50–626(b)(3) ..............................................................................66

La. Civ. Code Art. 2315 ..........................................................................................66

Md. Code Ann., Com. Law § 13–301 ......................................................................66

Mich. Comp. Laws § 445.903(1)(s).........................................................................66

Mich. Comp. Laws § 445.904(1)(a) ........................................................................72

N.D. Cent. Code § 51–15–02...................................................................................67

ORS § 646.608(1)(t) ..................................................................................67

S.D. Codified Laws § 37-24-6(1) .............................................................67

Tex. Bus. & Com. Code Ann. § 17.46(24) ...............................................67

U.C.C. § 2-607(3)(a) ................................................................................50

U.C.C. §2-313 ..........................................................................................53

Utah Code § 13-11-4(2)(b) .......................................................................67

Wyo. Stat. Ann. § 40-12-105(a)(xv) ........................................................67

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...........................................................................13

Fed. R. Civ. P. 23 .....................................................................................44

Fed. R. Civ. P. 23(a) .................................................................................44

Fed. R. Civ. P. 23(b) .................................................................................44

Fed. R. Civ. P. 8 .......................................................................................63

Fed. R. Civ. P. 8(a)(3) ..............................................................................74

Fed. R. Civ. P. 9(b) ........................................................................... passim

Fed. R. Civ. P. Rule 8(a) ..........................................................................58

**Rules**

27A Am. Jur. 2d Energy and Power Sources § 127 .................................17

Clean Air Act ............................................................................................35

Davis-Bacon Act .......................................................................................37

Magnuson Moss Warranty Act ...................................................................1

Michigan Consumer Protection Act...........................................................71

Natural Gas Act..........................................................................................15

The Energy Policy and Conservation Act of 1975 ..................................................25

**Constitutional Provisions**

U.S. Const., Amdt. 10 .................................................................................................4

## I.   INTRODUCTION

Ford induced customers into buying Ford vehicles through misleading fuel economy representations and omissions. Nonetheless, Ford claims that it should escape any liability based on two primary arguments.

First, Ford claims that it was free to violate the EPA's carefully calibrated fuel economy analysis methods because, in practice, there is always some vehicle-to-vehicle fuel efficiency variation. But that is why there is a well-established system for determining a model's average fuel efficiency metrics in the first place. Plaintiffs are not complaining that their individual vehicles diverged from a properly determined fuel economy figure. Rather, Plaintiffs allege that, contrary to Ford's representations, the fuel economy figures were never properly determined – or, if they were, Ford concealed the true figures and advertised false ones.

Second, Ford claims that it was free to falsely advertise misleading fuel economy figures because the figures were determined in accordance with federal law. Specifically, Ford claims that none of the governing federal statutes establish a private cause of action. Then, Ford argues that state law cannot impose liability for a misstatement having anything to do with compliance with a federal regulation.

The first argument is simply wrong. As discussed below, Plaintiffs have stated claims under the federal Magnuson Moss Warranty Act and for state law fraud.

The second argument is not just wrong, but it is breathtaking in its implications.

In essence, Ford asks this Court to determine that states cannot prohibit lying about anything that touches on federal law. This would radically upset the preemption doctrine's inherent careful balancing, and undermine state sovereignty in favor of greatly expanded federal power. Moreover, it would be unworkable in practice: as just one example, states could no longer prohibit permit applicants from misrepresenting their citizenship status or federal criminal history. The Court need not – and should not – adopt this radical reasoning, which the Supreme Court has directly rejected. *See, e.g., Kansas v. Garcia*, 140 S. Ct. 791 (2020) (federal immigration statute does not preempt state identity theft prosecution of aliens who adopted others' information to falsify immigration status); *see also Puente Arizona v. Arpaio*, 821 F.3d 1098, 1108 (9th Cir. 2016) (same). All fifty states have exercised their sovereignty to afford a private cause of action to customers misled into making a purchase; there is no exemption for Ford.

The Supreme Court has recognized "two cornerstones of … pre-emption jurisprudence." *Wyeth v. Levine*, 129 S. Ct. 1187, 1194 (2009). "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) and *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)). "[A]ny '[e]vidence of pre-emptive purpose,' whether express or implied, must … be 'sought in the text and structure of the statute at issue.'" *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019) (quoting *CSX*

*Transp., Inc. v. Easterwood*, 507 U. S. 658, 664 (1993)).

Second, in "pre-emption cases ... [courts] 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth,* 129 S. Ct. at 1194 (quoting *Medtronic*, 518 U.S. at 485). Here, the states' interests reflect their "historic police powers." *Id.* at 1195-95. *See also In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *28 (S.D.N.Y. Nov. 12, 2015)[1] (the "regulation of false advertising is a traditional state police power" triggering "the presumption against preemption"). And nothing in the federal statutes suggest that Congress intended to broadly immunize civil defendants who made misleading statements having anything to do with the statutes' subjects.

Justice Thomas's *Wyeth* concurrence is worth quoting at length. "In order 'to ensure the protection of our fundamental liberties,' the 'Constitution establishes a system of dual sovereignty between the States and the Federal Government.'" *Wyeth*, 129 S. Ct. at 1205 (quoting *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242 (1985) and *Gregory v. Ashcroft,* 501 U.S. 452, 457 (1991)). "The Framers adopted this 'constitutionally mandated balance of power' to 'reduce the risk of tyranny and abuse from either front,' because a 'federalist structure of joint sovereigns preserves to the people numerous advantages,' such as 'a decentralized government that will be

---

[1] All unpublished cases are attached hereto as Exhibit 1.

-3-

more sensitive to the diverse needs of a heterogeneous society' and 'increase[d] opportunity for citizen involvement in democratic processes.'" *Id.* at 1205 (quoting *Atascadero State Hospital, supra,* at 242, and *Gregory, supra,* at 458).

"Under this federalist system, 'the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause.'" *Id.* (quoting *Tafflin v. Levitt,* 493 U.S. 455, 458 (1990)). Despite the supremacy clause, "the States retain substantial sovereign authority." *Id.* (citing U.S. Const., Amdt. 10; *Alden v. Maine,* 527 U.S. 706, 713 (1999); and *Tafflin, supra,* at 458). "In accordance with the text and structure of the Constitution, '[t]he powers delegated by the proposed constitution to the federal government, are few and defined' and '[t]hose which are to remain in the state governments, are numerous and indefinite.'" *Id.* at 1206 (quoting The Federalist No. 45, at 237–238). "Indeed, in protecting our constitutional government, 'the preservation of the States, and the maintenance of their governments, are as much within the design and care of the Constitution as the preservation of the Union and the maintenance of the National government.'" *Id.* (quoting *Texas v. White*, 7 Wall. 700, 725 (1869), which was quoted in *New York v. United States*, 505 U.S. 144, 162 (1992)). Similarly, here, Ford seeks to undermine state sovereignty through a gross expansion of federal preemption. The Court should reject its efforts.

Plaintiffs properly state their federal Magnuson-Moss Warranty Act claim, and

state law claims for fraud, fraudulent concealment, unfair and deceptive trade practices and breach of warranty. None of these claims are preempted nor do Plaintiffs rely on proof of a violation of the Energy Policy and Conversation Act ("ECPA") nor do they seek to enforce a federal statute or regulatory scheme. Rather, this action seeks to hold Ford accountable for its cheating on critical testing and calculations used to induce an unsuspecting public into purchasing its vehicles with promises of lower mileage and fuel economy. And the EPCA does not shield Ford from its wrongful acts. Ford cannot hide behind "estimates" and disclaimers that such estimates can vary. No law permits Ford to cheat in calculating such estimates and then touting them to the public.

## II.   STATEMENT OF FACTS

Ford cheated on its fuel economy testing on some of its best-selling trucks. Using those doctored test results, Ford made inaccurate and misleading representations as to fuel economy ratings on the Monroney Stickers[2] and in its advertisements and marketing to consumers to sell and lease the Class Vehicles (hereinafter known as "Vehicles")[3] (Plaintiffs' First Amended Consolidated Complaint ("FACC"), ECF No. 78, PageID.2029-3018, *e.g.*, ¶¶ 9, 11, 15, 17-20, 22)

---

[2] The Sticker, referred to as the "Monroney Sticker," is on the window of every new car and includes information about the vehicle's price, engine and transmission specifications, other mechanical and performance specs, fuel economy and emissions ratings, safety ratings, and standard and optional features.

[3] The Vehicles in the Class include but are not limited to the model year 2019 and 2020 Ford Ranger and the 2018, 2019, and 2020 Ford F-150.

("¶" hereafter refers to paragraphs in Plaintiffs' FACC).

### Ford's History of Subverting Vehicle Testing

Ford has a long, storied history of emissions cheating. In 1973, Ford and Volkswagen were caught in the EPA's first investigation into emission cheating devices. (¶ 457). Yet again, Ford was caught again in 1998, using a cheat device in 60,000 Econoline vans, which resulted in a multi-million-dollar settlement with the EPA. (¶ 458). Ford was caught just last year, cheating on emissions certification for over 500,000 heavy-duty diesel trucks for which Ford was sued and a motion to dismiss was denied in material respects. (¶ 459). Thereafter, Ford over-stated the fuel efficiency of its Ford Fusion and C-MAX hybrid vehicles and Ford was sued. Accordingly, "[i]n 2013 and 2014, it lowered the gas mileage ratings on several hybrid cars by one to seven miles per gallon." (¶ 461).

### The Calculation of Fuel Economy

Each vehicle's reported fuel economy is calculated pursuant to a specific testing methodology overseen by the Environmental Protection Agency ("EPA"). (¶¶ 398, 404, 433-434). First, each vehicle manufacturer conducts a "coastdown test" to measure "Road Load." (¶ 398). In a coastdown test, a vehicle is brought to a high speed on a flat, straight road and then set coasting in neutral until it slows to a low speed. (¶ 434). By recording the time the vehicle takes to slow down, it is possible to model the forces affecting the vehicle. *Id*. The test provides data regarding

aerodynamic drag, tire rolling resistance, and drivetrain frictional losses. *Id.* The coastdown test and Road Load measurement is governed according to standards developed by the Society of Automotive Engineers (SAE). *Id.* Federal law requires automotive manufacturers to follow these standards. *Id.*

Next, manufacturers place vehicles on a dynamometer (essentially, a treadmill for cars), and while a fixture holds the vehicle in place, the vehicle's driven wheels turn on the dynamometer using controlled procedures also standardized by the SAE. (¶¶ 434, 437). Road Load data from the coastdown test is then inputted to simulate the actual load on the engine during on-road driving. (¶¶ 437, 441-442). Fuel consumption and emissions are measured during the test. *Id.* The results of these various tests then form the basis of the EPA fuel economy ratings consumers see on the vehicle's Monroney Sticker. (¶¶ 5, 7, 439). All underlying data is reported to the EPA. (¶ 443).

### Ford's Manipulation of the Class Vehicles' Fuel Economy

Ford deliberately misrepresented and miscalculated Road Load data for the Vehicles. (¶¶ 15, 16, 440). The computer models and testing practices Ford used to calculate Road Load during the coastdown test departed from SAE standards and manipulated how factors such as aerodynamic drag, tire rolling resistance, and drivetrain frictional losses affect the Vehicles' performance. (¶¶ 15, 16, 22, 434, 435). The Vehicles face more resistance under real world driving conditions than what Ford reported to the EPA. (¶ 440). Ford then used this manipulated Road Load data when

testing the Vehicles on the dynamometer, leading to results that artificially inflated the Vehicles' fuel economy. (¶¶ 439, 441-449, Fig. 2, ¶¶ 452-453, Table 5).

In September 2018, several Ford employees expressed concerns about the testing practices at Ford pertaining to emissions and fuel efficiency. (¶ 432). In February 2019, Ford admitted it was looking into these concerns about its "computer-modeling methods and calculations used to measure fuel economy and emissions." *Id*. Ford's March 2019 SEC filing revealed that Ford was under criminal investigation by the United States Department of Justice ("DOJ") for its fuel economy and emissions certifications practices. (¶¶ 430, 432). Pressured by the initiation of a governmental criminal investigation, Ford stated that it would look into the testing of the 2019 Ranger truck before looking at its other vehicles. (¶ 411).

Ford's initial self-reporting of this wrongful activity spawned a two-year DOJ criminal investigation. (¶¶ 430, 432). And even though Ford purports that the DOJ and CARB (California Air Resources Board) investigations have closed,[4] it still admits that the EPA investigation is ongoing. (*Id*.; ECF No. 82, PageID.3231). The DOJ's decision not to criminally indict does not mean that the DOJ has found a potential malfeasor innocent: rather it often stands for the DOJ's realization that a civil action is

---

[4] Ford's Quarterly Report, period ending Sept. 2020, filed Oct. 29, 2020. (Exhibit 2, at pg. 73), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000037996/8851be13-4f97-49f2-a7fc-d8fd3bfe62c7.pdf

the most effective mechanism to bring tangible justice to the victims, as in this MDL.[5]

As fully set out in Plaintiffs' Complaint (¶¶ 438-454), independent testing conducted on Ford F-150 and Ford Ranger vehicles has vindicated the concerns of both consumers and Ford's own employees: Ford did not follow appropriate coastdown testing procedures, and instead disclosed inaccurate resistance figures to increase the MPG Rating of its F-150 and Ranger vehicles.[6] Ford miscalculated "Road Load," which is the force that is imparted on a vehicle while driving at a constant speed over a smooth, level surface from source such as tiring rolling resistance, driveline losses, and aerodynamic drag. (¶ 15). Ford's internal lab tests did not account for these factors, which led to better – and entirely inaccurate – fuel economy projections. (¶ 15). The information on these Monroney Stickers would be different if based on accurate coastdown testing. (¶ 9). Thus, Ford "used its inaccurate fuel economy ratings on the window Stickers to sell and lease these trucks to consumers." (¶ 2). (*See, e.g.*, ¶¶ 6-11, 17-20).

### *Ford's Affirmative Misrepresentations and Omissions to Consumers Regarding Fuel Efficiency to Induce Purchase or Lease of Class Vehicles*

---

[5] For instance, The Miller Law Firm obtained a $970,500,000 recovery in the largest securities fraud settlement absent a criminal indictment, SEC prosecution, or financial restatement (*See* Exhibit 3), https://www.reuters.com/article/us-aig-classaction-settlement/aig-investors-970-5-million-settlement-wins-u-s-court-approval-idUSKBN0MG2E920150321.

[6] For example, the Sticker for a 2018 Ford F-150 V6 indicates mileage of 20 city, 26 highway, and 22 combined. Accurate coastdown testing of a 2018 Ford F-150 V6 reveals the following: The real highway fuel number is 22.7 MPG compared to 26.6 reported by Ford to the EPA. (¶ 9).

By cheating, Ford made its F-150 and Ranger trucks more appealing and competitive in the marketplace, to the point of being named "best in class" for fuel economy for some F-150's, which, in turn, drove up sales and profits. (¶ 456). Ford did so not only by disclosing an inflated MPG rating on the Monroney Stickers of each of the Vehicles, but also by misrepresenting the artificially inflated fuel economy in advertisements, press releases and other public disclosures to consumers (defined collectively below as "misrepresentations").

In addition to the fraudulent disclosures on the Monroney Sticker, Ford engaged in systematic marketing and advertising campaigns for all the Vehicles to tout the inflated fuel efficiency. For instance, Ford's media center touted the 2019 Ranger truck as having "amazing performance without compromise," and fuel efficiency claims were presented to consumers front and center. (¶ 462). Ford knew that to sell the Ranger effectively, it had to tout its fuel efficiency and reduced emissions, and that such promises were material to consumers. (¶¶ 414, 415). Ford promised that certain 2018 F-150s were "best in class" for fuel economy, and it promised certain miles per gallon for other F-150 models, that were robust enough to make them attractive to consumers. (¶¶ 20, 465-66, 468, 470).

Likewise, to stimulate F-150 sales and maintain its lead over competitors like the Dodge Ram, Ford affirmatively misrepresented that the 2018 Ford F-150 would be best in class for fuel economy and/or published and advertised inflated fuel economy.

-10-

(¶ 465). Ford told consumers to expect "better fuel economy" in the 2018 F-150 (as early as August 2017). (¶ 466). An August 10, 2017 cnet.com article acknowledged "2018 Ford F-150 touts best-in-class towing, payload, fuel economy" (¶ 468; FACC Ex. 19). Likewise, the 2018 Ford F-150 brochure lists the doctored fuel economy for various types of F-150s. (¶ 470; FACC Ex. 20).

Ford affirmatively promised that its midsize truck, the 2019 Ford Ranger, "will deliver with durability, capability and fuel efficiency, while also providing in-city maneuverability and the freedom desired by many midsize pickup truck buyers to go off the grid." (¶ 17). Ford also informed customers that its "All-New Ford Ranger [was] Rated Most Fuel Efficient Gas-Powered Midsize Pickup in America." *Id.* Ford likewise publicly misrepresented that the 2019 Ranger "is no-compromise choice for power, technology, capability and efficiency whether the path is on road or off." *Id.* Ford sales brochures declared that the 2019 Ford Ranger was "most fuel efficient in its class." (¶ 463 and FACC Ex. 13). Ford never disclosed that it had manipulated the MPG ratings by deliberately omitting essential test data in its calculations.

Even after Ford employees came forward about the cheating, Ford's media center still touted the 2019 Ranger truck as having "amazing performance without compromise," and highlighted claims of unmatched fuel efficiency. (¶ 462; FACC Ex. 4). Undeterred, Ford falsely promised that "[t]he adventure-ready 2019 Ford Rangers is the most fuel-efficient gas-powered midsize pickup in America–providing a

-11-

superior EPA-estimated city fuel economy rating and unsurpassed EPA estimated combined fuel economy rating versus the competition." (¶ 19).

Ford made these disclosures—misrepresenting the Vehicles' fuel economy—on Ford's website, in brochures detailing the qualities of the vehicles, in television commercials, and in radio advertisements. (*See, e.g.*, ¶¶ 17, 19, 30, 38, 46, 54, 62, 78, 86, 94, 110, 118, 126, 134, 142, 150, 158, 166, 174, 182, 198, 206, 214, 222, 230 254, 262, 270, 278, 285, 293, 301, 309, 317, 341, 349, 357, 365, 374, 381, 389, 462-464, 470). All the while, Ford knew that the fraudulently calculated fuel economy was not attainable in real-world conditions. (¶¶ 6, 15, 16, 22, 410, 432, 462, 472).

Ford sold its 2019 and 2020 Ford Rangers and 2018, 2019, and 2020 F-150 models without disclosing its cheating on the coastdown testing was the reason for the inflated fuel economy. Ford knew that it would be material to a reasonable consumer; namely, that Ford omitted required factors during internal vehicle testing processes in order to advertise and tout that its trucks were more fuel efficient than they actually were, and discounted common real-world driving conditions. (*See, e.g.*, ¶¶ 6, 8, 15, 18, 22). The economic injury to consumers resulting from Ford's deception cannot be understated. For example, Ford has sold approximately one million 2018 and 2019 F-150s. (¶ 13). According to the detailed assumptions set forth in Plaintiffs' FACC, due to Ford's deception, the extra fuel costs for all 2018 and 2019 F-150s, just a portion of the total Vehicles in this case, have been calculated as approximately $2.32 billion for

city driving, $2.09 billion highway, and $1.9 billion combined. (¶ 13).

## III.  LEGAL STANDARDS

A Rule 12(b)(1) motion to dismiss predicated upon subject matter jurisdiction "questions the sufficiency of [Plaintiffs'] pleading," and thus the Court must "take[] the allegations in the complaint as true." *Ohio Nat'l Ins. Co. v. United Stated States*, 922 F. 2d 320, 325 (6th Cir. 1990); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (internal quotation omitted). For a Rule 12(b)(6) motion to dismiss, the Court must construe the operative complaint in Plaintiffs' favor and determine whether Plaintiffs' factual allegations present plausible claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs need only plead sufficient facts to "raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Fraud allegations are subject to the pleading standard of Rule 9(b); however, Rule 9(b) does not require fraud-by-omission claims to "specify the time, place, and specific content of an omission as precisely as would a…false representation claim." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009). "Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would

effectively gut state laws prohibiting fraud-by-omission." *Id. See also Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim.").

## IV.    PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED

Ford's preemption argument conveniently ignores the raft of cases involving emissions cheating, including several in this District, where defendants (including Ford) have unsuccessfully posited a similar challenge.[7]

Here, Ford argues that both express and implied preemption under the Energy Policy and Conservation Act ("EPCA") and related regulations allegedly warrant dismissal of Plaintiffs' claims. (ECF No. 82, PageID.3209-3217). In doing so, Ford fails to address the congressional purpose behind the EPCA, even though the Supreme Court has noted that "Congressional purpose is the 'ultimate touchstone'" of the preemption inquiry. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (quoting *Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 516 (1992).

None of Plaintiffs' claims conflict with or interfere with the purposes of the EPCA. Importantly, Plaintiffs' claims all fall within the "historic police powers of the

---

[7] *See, e.g., Gamboa v. Ford Motor Company*, 381 F. Supp. 3d 853 (2019); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019); *Counts v. Gen. Motors LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017); *Raymo v. FCA US LLC*, 2020 WL 4366061 (E.D. Mich. July 30, 2020); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018); *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Prods. Liab. Litig.*, 2018 WL 4826866 (N.D. Cal. Oct. 4, 2018).

States" related to regulating unfair business practices and advertising. *See Wyeth v. Levine*, 129 S. Ct. at 1180.

The "cornerstones" of preemption jurisprudence are Congress's clear intentions and deference to states' historic police powers. *Id.* at 1194-95. "In *Wyeth* the defendant drug-manufacturer had argued that the plaintiffs state law tort claims were 'pre-empted because they interfere with Congress's purpose to entrust an expert agency to make drug labeling decisions that strike a balance between competing objectives.'" *Codonics, Inc. v. DatCard Sys., Inc.*, 2009 WL 2382567, at *3 (N.D. Ohio July 31, 2009) (citing *Wyeth*, 129 S. Ct. at 1199, and recognizing "high burden" faced by proponents of preemption of state law causes of action). "But the Supreme Court rejected this argument after finding Congress had not intended to pre-empt state common law tort suits." *Id.* (citing *Wyeth*, 129 S. Ct. at 1200 for the proposition that "[Congress's] silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness.").[8] In short, "federal courts must give due respect to 'the fundamental principle of comity between federal courts and state governments that is essential to

---

[8] *See also* the following cases finding no preemption of state law claims: *Virginia Uranium*, 139 S. Ct. at 1907-08 (state ban on uranium mining); *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015) (federal Natural Gas Act); *CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (federal environmental statute); *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 336 (2011) (less restrictive federal seatbelt requirement).

'Our Federalism.'" *Thiokol Corp., Morton Int'l v. Roberts*, 76 F.3d 751, 755 (6th Cir. 1996) (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 103 (1981)). Thus, "implied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution." *Wyeth*, 129 S. Ct. at 1205 (Thomas, J, concurring).

Relying only upon *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938 (2016), Ford makes the sweeping claim that the presumption against pre-emption has been rejected by the Supreme Court. (ECF No. 82, PageID.3210, 3214). In doing so, Defendant seeks to distinguish two cases *Ford Fusion* and *Paduano v. Am. Honda Co., Inc.*, 169 Cal. App. 4th 1453 (Cal. App. 2009)) that found claims like those raised by Plaintiffs were **not** preempted. (ECF No. 82, PageID.3213-3215). Ford's reliance upon *Puerto Rico*, a bankruptcy case, is similarly misplaced. Courts after *Puerto Rico* have found that the presumption against pre-emption still exists where, as here, the field is traditionally within the historic police powers of the States.[9] *See e.g., Shuker v Smith & Nephew, PLC*, 885 F.3d 760, 770-71, fn.9 (3d Cir. 2017).

Even if the presumption against preemption no longer exists (which it does), Plaintiffs' claims would not be preempted as they are outside the scope of "related to" language of the applicable statute. *See e.g., Gamboa v. Ford Motor Company*, 381 F.

---

[9] Consumer protection, unfair business practices, and advertising regulations are fields that the states have traditionally occupied. *See e.g.*, *Ford Fusion*, 2015 WL 7018369, at *28; *Gilles v. Ford Motor Co.*, 24 F.Supp.3d 1039, 1047 (D. Colo. 2014); *True*, 520 F.Supp.2d at 1180.

Supp.3d 853, 870-71 (2019); 27A Am. Jur. 2d Energy and Power Sources § 127 (citing *Yung Kim v. General Motors, LLC*, 99 F. Supp. 3d 1096 (C.D. Cal. 2015); *True v. American Honda Motor Co., Inc.,* 520 F. Supp.2d 1175 (C.D. Cal. 2007)).

## A. Defendant's Express Preemption Arguments Fail

"Express preemption occurs when Congress 'explicitly state[s]' that it intends a statute to have that effect." *Chrysler Grp. LLC v. S. Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 681 (E.D. Mich. 2012) (quoting *Fednav, Ltd. v. Chester,* 547 F.3d 607, 618 (6th Cir. 2008), which quoted *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 (1977)). Such an expression must be clear: in "preemption cases ... [courts] 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth,* 129 S. Ct. at 1194-95 (quoting *Medtronic*, 518 U.S. at 485).

### i. 49 U.S.C. § 32919(a) does not preempt Plaintiffs' claims

Ford incorrectly argues that 49 U.S.C. § 32919(a) preempts Plaintiffs' claims. (*See* ECF No. 82, PageID.3209-3214). The statute provides that "a State … may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter." 49 U.S.C. § 32919(a).

This argument fails for two reasons. First, the statute's vague "related to" language is entirely insufficient to establish a clear preemptory intent. As the Supreme Court has noted, "[i]f 'relate to' were taken to extend to the furthest stretch of its

-17-

indeterminacy, then for all practical purposes preemption would never run its course," and this would "read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 655 (1995). "'Relate to' could be interpreted to include virtually all state provisions with even a tangential connection to fuel economy," which "takes this case out of a simple 'plain wording' analysis," and "require[es]… go[ing] beyond the unhelpful text and the frustrating difficulty of defining its key term, and look[ing] instead to the objectives of the ... statute as a guide to the scope of the state law that Congress understood would survive." *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 353 (D. Vt. 2007) (citing *N.Y. Conference*, 514 U.S. at 656). As discussed above, Ford eschews any such analysis. In its absence, the bare "related to" language does not overcome the strong presumption against preemption. *See, e.g., Wyeth*, *supra* (preemptory intent must be "clear and manifest").

Second, § 32919(a) pertains to fleet fuel efficiency standards, not the mileage of individual models. Ford relies on both *Ford Fusion* and *Paduano* but ignores their holdings and incorrectly argues Plaintiffs' claims are "related to" fleet-wide standards under § 32919(a). (ECF No. 82, PageID.3211-3212). In fact, "[e]nforcement of [consumer protection laws] in this case would not in any way 'relate to' the imposition of minimum fuel efficiency performance standards on [Ford] or other vehicle

manufacturers for a class, subclass, or fleet of vehicles." *Paduano*, 169 Cal. App. 4th at 1476.

In *Ford Fusion*, the court rejected the application of § 32919(a) to similar allegations, finding that it only "governs fuel economy standards for 'entire fleets and/or fleets of subclasses of vehicles,' rather than individual model vehicles." *Ford Fusion*, 2015 WL 7018369, at *25. Therefore, it "'has no application in this case, ... which only involves advertisements allegedly used to discuss the mpg estimates of the Vehicles.'" *Id.* (quoting *Paduano*, 169 Cal. App. 4th at 1476).[10]

Ford relies instead on an inapposite Second Circuit case holding that § 32919(a) preempted a city regulation for fuel economy that applied to entire fleets. *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 157 (2nd Cir. 2010). None of the other cases cited by Ford address the reach of § 32919(a), let alone support Ford's argument.

### ii. 49 U.S.C. § 32919(b) does not preempt Plaintiffs' claims

Ford erroneously asserts that Plaintiffs' claims are preempted by 49 U.S.C. § 32919(b), which provides that "[w]hen a requirement under § 32908 of this title" regulating vehicle fuel economy "is in effect, a State or a political subdivision of a

---

[10] As *Paduano* explained, "fuel economy standards for fleets are not the same as the fuel economy estimates for each model of vehicle that are required to be posted on the Monroney label…." 169 Cal. 4th at 1475. *See also Yung Kim*, 99 F. Supp. 3d at 1103 (adopting reasoning in *Paduano* and concluding that plaintiff's claims were not preempted by § 32919(a)).

State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by § 32908 only if the law or regulation is identical to that requirement." 49 U.S.C. § 32919(b). (*See* ECF No. 82, PageID.3209-3215).

Ford premises its argument on a series of cases in which plaintiffs did not challenge the underlying Monroney Sticker information but alleged that non-Sticker misrepresentations were actionable under state law – as opposed to Plaintiffs here, who allege *both* sorts of misrepresentations. As discussed below, the courts pervasively concluded that the non-Sticker misrepresentation claims were *not* preempted. And none of the courts concluded that the false-Sticker claims were preempted, because, unlike here, none of the cases involved such claims.[11]

> ### a. 49 U.S.C. § 32919(b) does not preempt Plaintiffs' state law claims based on Defendant's misstatements within the Monroney Sticker

49 U.S.C. § 32919(b) does not preempt state laws "identical" to the federal requirements. *Id.* Rather, the statute expressly permits such identical requirements. Put another way, there is no express preemption of a state law claim for a failure to comply with the federal rules. Here, Plaintiffs allege that "Ford fudged its coastdown testing and used inaccurate drag and resistance figures to boost the vehicles' [EPA]

---

[11] These cases simply found that 49 U.S.C. § 32919(b) preempts claims that advertisements repeating the properly calculated Monroney Sticker information alone, without misleading context, were fraudulent. *See, e.g.*, *Ford Fusion*, 2015 WL 7018369, at *27. But as discussed throughout, Ford here did not "merely use" EPA estimates; it manipulated the estimates and conveyed false information to consumers.

mileage ratings," which were displayed on vehicles' "window Sticker[s]." (¶¶ 6-7). The information on these Monroney Stickers would be different if it were based on accurate coastdown testing. (¶ 9). "Ford … used its inaccurate fuel economy ratings on the window Stickers to sell and lease these trucks to consumers." (¶¶ 2, 5-10).

To the extent Plaintiffs challenge Ford's failure to properly determine average fuel efficiencies and accurately report them on the Monroney Stickers, Plaintiffs do not seek to impose any requirements on Ford other than as provided under the federal statute and regulations. Thus, because the statute permits state law requirements identical to the federal requirements, state law claims based on these allegations are not preempted.

Despite this clear statutory language, Ford claims that various courts have diverged from the statute and found that claims premised on false Monroney Stickers are actually preempted. Ford misreads these cases. Ford claims that "the United States District Court for the Southern District of New York found state law claims preempted to the extent they directly attacked Ford's use of EPA estimates in connection with the sale of vehicles." (ECF No. 82, PageID.3213-3214) (citing *Ford Fusion*, 2015 WL 7018369, at *27). This statement is misleading. The *Ford Fusion* court explained that, in that case, "[p]laintiffs' claims appear[ed] to rest on two separate strands of alleged wrongdoing…. [s]ome … challenge Defendant's guarantees of a real-world fuel economy that go beyond including EPA estimates in

advertisements, … whereas others appear to challenge the mere use of EPA fuel estimates, in ways that the EPA contemplated using them, as opposed to 'actual' fuel economy." *In re Ford Fusion*, 2015 WL 7018369, at *25. While the Court found that a claim centered on a properly formed Monroney Sticker was indeed preempted, it *never considered* the issue here: falsified information in the Monroney Sticker itself. Put another way, Plaintiffs may not bring a state law claim arguing that a Monroney Sticker prepared in conformance with federal law is misleading; but Plaintiffs *can* bring a state law claim alleging that the Sticker is misleading because it was not prepared in conformance with federal law.

Ford also cites a comment to a footnote in *Paduano*, 169 Cal. App. 4th at 1468, n.9, that "as [plaintiff] clearly recognizes, he may not directly challenge the EPA estimates by way of state law causes of action." (ECF No. 82, PageID.3214). Again, though, the plaintiff was "not claiming that disclosing the EPA mileage estimates [wa]s, by itself, deceptive," but "[r]ather… that Honda ha[d] voluntarily made additional assertions, beyond the disclosure of the mileage estimates, that [we]re untrue or misleading, and that federal law does not require, or even address, these additional assertions." *Paduano*, 169 Cal. App. at 1477. The footnote language that Ford cites is *dicta* discussing the nature of the *Paduano* plaintiff's warranty claim.

Ford also claims that *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1046 (D. Colo. 2014) found "fuel economy advertising claims not preempted specifically

because they did not directly challenge the accuracy of EPA estimate figures." (ECF No. 82, PageID.3214-3215). This again is a mischaracterization. The *Gilles* court simply alluded to "problems such claims," alleging a violation of the federal law, "would create for him." *Gilles*, 24 F. Supp. 3d at 1046. It never said that such "problems" would be insurmountable. In fact, as to the related FTC regulations, it noted that because "plaintiff's claim does not rely on state law that conflicts with federal regulations, at least insofar as identifying that the numbers are EPA estimates is concerned, it appears that the regulations neither expressly nor impliedly preempt the claim," and that the claims can proceed because they "appear to be consistent with the FTC regulations." *Id.* at 1047.

The same is true for the EPA regulations. Again, 49 U.S.C. § 32919(b) explicitly permits state law requirements identical to the federal requirements. Ford cites no case that found to the contrary. Instead, preemption jurisprudence is clear that, in such situations, state law claims for a federally regulated consumer-facing notice are *not* preempted. The Monroney Sticker's safety rating (governed by a different statute) can be the basis of a state law deceptive practices claim. *Carriuolo v. Gen. Motors LLC,* 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) ("representations concerning the safety rating that a government agency assigned to a vehicle are material and that overstating this vehicle's safety ratings substantially harms the vehicle's purchaser," referencing "the Monroney Stickers that [defendant] ships with its vehicles"). And

again, *Wyeth* is instructive: the Supreme Court found that plaintiff could bring claims for an insufficient federally regulated medicine warning label, and even the dissenting justices suggest they would have so found if, as here, the defendant had falsified the label. *Wyeth*, 129 S. Ct. at 1230-31.

Ultimately, Ford's interpretation contradicts itself. Ford claims that "[b]ecause Plaintiffs' core theory of this case would impose … forbidden 'non-identical' testing and disclosure requirements, their claims are expressly preempted." (ECF No. 82, PageID.3210). But then Ford proceeds to argue that *identical* requirements are preempted. (ECF No. 82, PageID.3209-3211). They are not.

**b.      49 U.S.C. § 32919(b) does not preempt Plaintiffs'
state law claims based on Ford's misstatements
extrinsic to the Monroney Sticker**

Even if, *arguendo*, and despite the statute's plain language, 49 U.S.C. § 32919(b) preempts state law claims for falsified Monroney Sticker information, it does not also preempt claims for misstatements extrinsic to the Stickers themselves. *See Ford Fusion*, 2015 WL 7018369, at *26 (no preemption of "state law false advertising claims … rooted in an extrinsic duty not to deceive, one that is not equivalent to disclosure obligations under the EPCA"). Here, Plaintiffs make two such sets of allegations: that Ford made misleading marketing statements based on the falsified Sticker information; and that Ford made misleading fuel efficiency-based statements having nothing to do with the Sticker information at all.

To the extent that Plaintiffs' claims extend beyond the Monroney Sticker data

-24-

itself to encompass this mileage-related marketing campaign, § 32919(b) is simply inapplicable. Again, courts to consider the issue have rejected Ford's argument. The *Ford Fusion* court held that § 32919(b) does not preempt state law false advertising claims that "are rooted in an extrinsic duty not to deceive, one that is not equivalent to disclosure obligations under the EPCA." *Ford Fusion*, 2015 WL 7018369, at \*26. In short, "Congress did not intend to protect car manufacturers that may have falsely advertised facts about their vehicles-including facts that might go beyond merely reporting the EPA-estimated MPG." *Id*. Likewise, here, the fact that the marketing campaign referred to the Monroney Stickers' contents does not immunize Ford's for its misstatements.

In *Ford Fusion*, "Plaintiffs [we]re not challenging Defendant's compliance with the EPCA, including the accuracy of the Monroney Stickers or other information Defendant provided about the EPA-estimated MPG for the Vehicles." *Ford Fusion*, 2015 WL 7018369, at \*22.[12] Instead, they relied "on causes of action provided by state and common law that exist separate and apart from the provisions of the EPCA," and "contend[ed] that Defendant went beyond a discussion of the EPA-estimated MPG itself by representing what MPG would actually be achieved." *Id. See also*, *Paduano*, 169 Cal. App. 4th at 1478 (rejecting Honda's claim that § 32919(b) preempted false advertising causes of action; the court explained that "the phrase 'on

_____

[12] References to the ECPA meant The Energy Policy and Conservation Act of 1975, 49 U.S.C. §32901, *et. seq.*

disclosure of fuel economy or fuel operating costs'" in § 32919(b) "cannot be construed to encompass the general duty not to make fraudulent or misleading statements."). The *Paduano* court discussed *Altria Group, Inc. v. Good,* 555 U.S. 70 (2008), where the Supreme Court considered the federal statute preempting any state law "requirement or prohibition based on smoking and health … with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with" the federal requirements. *Id.* (citing 15 U.S.C. § 1334(b)). The Court found that this did not preempt a state law claim that "advertising of certain cigarettes as 'light' and as providing 'lowered tar and nicotine' constituted fraudulent advertising," because "'the phrase 'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements.'" *Paduano*, 169 Cal. App. 4th at 1477-78 (quoting *Altria Group, supra,* at 549). Likewise, here, even if the Monroney Sticker was itself compliant with federal law—again, it was not—that would not prohibit state regulation of advertising extrinsic to the Sticker.

Ford falsely claims that "Plaintiffs' ACAC continues the frontal assault on Ford's testing and dissemination of EPA-mandated estimates, in the exact way that the *Fusion & C-MAX* and *Paduano* courts say they cannot." (ECF No. 82, PageID.3215). To the contrary, Plaintiffs make valid claims for false advertising as those two cases say they *can*. (*See, e.g.,* ¶¶ 17, 20, 462-466, 468, 469).

The *Gilles* opinion further undermines Ford's argument; the plaintiff in *Gilles* sued Ford for misrepresenting in advertisements "that the vehicle achieves 30 miles per gallon on the highway without mentioning that this number is an EPA estimate or that actual mileage will vary." *Gilles*, 24 F. Supp. 3d at 1046. But the *Gilles* court held that federal statutes "do not purport to regulate advertising of fuel economy beyond the requirements of the Monroney Sticker and the dealer booklet." *Id.* Thus, the court agreed "with federal and state jurisdictions that have held that state law claims akin to those asserted here are not preempted by this body of federal law." *Id.*[13]

Under each of these authorities, Plaintiffs' claims for false advertising are not preempted. For example, Plaintiffs allege that Ford falsely claimed in advertising that "[w]ith EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mph combined, the 2019 Ford Ranger is the most fuel efficient gas-powered midsize pickup in America." (¶¶ 17, 462, 463). Ford knew this information was false because Ford knew that it had rigged the coastdown testing. Certainly, Ford cannot claim immunity when it imports the false information into advertising beyond the Sticker. *See, e.g., Altria Grp.,* 555 U.S. at 87. Plaintiffs alleged that Ford made a number of false claims, touting the 2018 F-150s as the 'best in class' for fuel economy. (¶¶ 20,

---

[13] *Accord*, *Yung Kim*, 99 F. Supp. 3d at 1104 ("Plaintiff challenges GM's *use* of the EPA estimates in a way that may give consumers the mistaken impression that they are able to achieve real-world mileage and tank range derived from those figures. Accordingly, the Court finds that the claims brought by Plaintiff are not expressly preempted by 49 U.S.C. § 32919(a) or (b).") (emphasis in original).

464-466, 468, 469). The fact that Ford *also* falsified its Monroney data does not preempt state law claims for this garden-variety misleading claim. Both sorts of allegations reflect precisely the types of claim for false advertising that *Ford Fusion*, *Paduano*, *Gilles*, and *Yung Kim* have held are *not* preempted.

These are also the sort of claims that fall well within states' customary consumer protection powers. *See Ford Fusion*, 2015 WL 7018369, at *28 (the "regulation of false advertising is a traditional state police power" triggering "the presumption against preemption"). *See also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 291 (D. Conn. 2015) (noting that the presumption against preemption applies to claims related to "[t]he advertising and labeling of consumer products" because it is "a field traditionally subject to state regulation" (citing *Altria Grp.*, 550 U.S. at 77)).

### iii.  The EPA's regulations do not preempt Plaintiffs' claims

Ford extensively cites various federal regulations, although it is unclear whether Ford contends that it establishes express preemption. In any event, it does not. The Supreme Court has "given 'some weight' to an agency's views about the impact of tort law on federal objectives when 'the subject matter is technica[l] and the relevant history and background are complex and extensive.'" *Wyeth*, 129 S. Ct. at 1201 (citing *Geier v. Am. Honda Motor Co.,* 529 U.S. 861, 883 (2000)). "Even in such cases, however, [it has] not deferred to an agency's *conclusion* that state law is pre-empted,"

but "[r]ather, [it has] attended to an agency's explanation of how state law affects the regulatory scheme." *Id.* (emphasis in original). "The weight … accord[ed] the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness." *Id.* at 577 (citing *United States v. Mead Corp.*, 533 U.S. 218, 234–235 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Thus, in *Wyeth*, "the FDA's … position that state tort suits interfere with its statutory mandate [wa]s entitled to no weight." *Id.* at 1204. *See also Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1193 (9th Cir. 2018) (federal "regulation … [is] entitled to little, if any, deference" as to preemption); *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 731 (6th. Cir. 2013) ("All manner of presumptions, substantive canons and clear-statement rules take precedence over conflicting agency views," citing *Wyeth*, 129 S. Ct. at 1201; additional citations omitted). Here, none of the cited regulations even purport to limit state-law civil liability.

## B. Defendant's Implied Preemption Arguments Fail

Implied preemption comes in two forms, field and conflict preemption. *Chrysler Grp.*, 862 F. Supp. 2d at 681 (citing *Fednav,* 547 F.3d at 618). Ford incorrectly argues that Plaintiffs' claims are impliedly preempted. (ECF No. 82, PageID.3215-3217). It is not entirely clear which theory of implied preemption Ford relies upon – field or conflict preemption – but neither of them warrants dismissal.

### i.    Field preemption does not bar Plaintiffs' state law claims

Under the doctrine of field preemption, state law is preempted if it attempts to

regulate "in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co*., 496 U.S. 72, 79 (1990). That intent must be "'clear and manifest,'" where the field "includes areas that have 'been traditionally occupied by the States.'" *Id*. (quoting *Jones*, 430 U.S. at 525). Such an intent may be inferred from a pervasive scheme of federal regulation that leaves no room for a state to supplement, or where Congress legislates in "'a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id*. (quoting *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947)); *see also Madeira v. Affordable Housing Foundation, Inc*., 469 F.3d 219, 240 (2d Cir. 2006).

The Supreme Court has described field preemption "as a species of conflict pre-emption: a state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." *English*, 496 U.S. at 79 n. 5. Again, Congressional intent is the "ultimate touchstone" of preemption analysis. *Freeman v. Burlington Broadcasters*, *Inc*., 204 F.3d 311, 320 (2d Cir. 2000) (quoting *Cipollone*, 505 U.S. at 516).

Field preemption is absent here. Courts have tended to find field preemption either by narrowly defining the field or in areas where states have not traditionally regulated. *See, e.g., Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 212 (1983) (nuclear safety). In contrast, "the Congressional

regulatory scheme to improve fuel economy does not express so dominant or pervasive a federal interest…" *Green Mountain Chrysler*, 508 F. Supp. 2d at 355. *See also Ass'n of Taxicab Operators, USA v. City of Dallas*, 866 F. Supp. 2d 595, 599 (N.D. Tex. 2012), *aff'd*, 720 F.3d 534 (5th. Cir. 2013) (rejecting preemption challenge to city ordinance requiring use of compressed natural gas taxis and holding that "Congress acknowledged that the regulation of air pollution from mobile sources was traditionally a state responsibility."); *see also Ford Fusion*, 2015 WL 7018369, at *28 ("regulation of false advertising is a traditional state police power").

Ford contends that Plaintiffs' claims "would wholly frustrate" an allegedly "comprehensive federal scheme to provide consumers with consistent and comparable fuel economy information." (ECF No. 82, PageID.3217). Those statutes and regulations establish test methods and procedures to determine fuel economy estimates, require display of Monroney Stickers, and mandate that the EPA prepare an annual Fuel Economy Guide, which dealers must make available. (*See* ECF No. 82, PageID.3216) (citing 49 U.S.C. §§ 32904, 32908(b)(1), 32908(c)(3); 40 C.F.R. §§ 533.6, 600.405-08, and 600.407-08). But Ford cites no case that has found field preemption in this area, while also failing to address the caselaw disavowing such preemption. *See, e.g., Green Mountain Chrysler, supra*. And Ford's description of extensive federal regulations is hardly enough to overcome the strong presumption against implied preemption, "field" or otherwise. *See, e.g., Wyeth*, *supra* (recognizing

strong presumption against implied preemption and continued state authority over pharmaceuticals despite extensive federal regulations).

Finally, Ford cannot plausibly argue that the ECPA is intended to occupy the entire field of regulation at the same time that it concedes that the FTC has concurrent jurisdiction over these issues. *See, e.g., POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014) (quoting *Wyeth,* 129 S. Ct. at 1200 (coexistence of differing federal regulatory schemes is "powerful evidence that Congress did not intend" one of the regulatory bodies' "oversight to be … exclusive"). And, as discussed above, state law requirements can mirror the applicable FTC regulations, *Gilles*, 24 F. Supp. 3d at 1047, just as they can mirror the EPA requirements.

Courts routinely reject Ford's argument that false advertising claims are impliedly preempted by the statutes and regulations at issue here. In *Ford Fusion*, Ford made the identical argument it makes here, arguing that false advertising claims were preempted because "there is a 'comprehensive set of statutes and regulations to further the federal objective of providing consumers with uniform and comparable fuel economy information.'" 2015 WL 7018369, at *27. The court rejected Ford's argument, explaining that the "core of Plaintiffs' claims… is not in conflict with labeling and fuel economy guide requirements of the federal scheme." *Id.* at *28. As the court explained, "'the existence of the federal regulatory scheme does not preclude states from barring the misuse of EPA fuel efficiency data in advertising or other

promotional materials,' and 'allowing states to regulate false advertising and unfair business practices may further the goals of the EPCA.'" *Id.* at *27 (quoting *Yung Kim*, 99 F. Supp. 3d at 1105).

### ii. Conflict preemption does not bar Plaintiffs' state law claims

"Conflict preemption occurs when a provision of state law 'actually conflicts with federal law,'" *Fednav*, 547 F.3d at 618–19 (internal citation omitted), or because "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *English*, 496 U.S. at 79). "The Supreme Court has found obstacle preemption in only a small number of cases," and it has "frequently rejected claims of obstacle preemption." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, 959 F.3d 1201, 1212-13 (9th Cir. 2020) (collecting cases). Again, it is not clear whether Ford asserts "actual conflict" preemption or "obstacle" preemption but, in any event, neither theory would prevail. This is especially true as Ford fails to even mention the purposes and objectives of the EPCA as discussed above.

Contrary to *Ford Fusion*, Ford incorrectly argues that disclosure of the vehicles' true fuel economy would require Ford "to make disclosures that are different from what federal law requires" and "to construct and disclose a supposed 'true' fuel economy, which is impossible and would surely mislead consumers." (ECF No. 82, PageID.3217). But Plaintiffs' claims are that because of Ford's false advertising, Ford

had a duty under state law to disclose the true fuel economy *in addition to* the Monroney Sticker. That claim does not create a conflict, because "it is not impossible to comply with both the regulation and the obligations that Plaintiffs identify." *Ford Fusion*, 2015 WL 7018369, at *28. Ford's assertion here that disclosing the Vehicles' true fuel economy would "surely mislead consumers" is neither a preemption argument nor supported by authority or logic. Ford does not and cannot explain how revealing the *truth* to consumers could mislead consumers.

Ford further mischaracterizes Plaintiffs' claims, asserting that Plaintiffs allege that "Ford had a duty to disclose the 'true fuel economy' for the subject vehicles…." (ECF No. 82, PageID.3213). Plaintiffs do not allege a duty to disclose true fuel economy in *all* circumstances but instead allege that a duty to disclose arose under state law as a result of Ford's false advertising about the vehicles' fuel economy, which contained claims that were untrue or misleading. (*See e.g.*, ¶¶ 773-774, 805-807, 2685-2688); *see also Ford Fusion*, 2015 WL 7018369, at *26 ("state law false advertising claims are rooted in an extrinsic duty not to deceive"). And as *Ford Fusion* and the other cases cited by Ford have held, such false advertising claims are not expressly or impliedly preempted.

Courts in this District have rejected manufacturers' arguments that implied preemption bars plaintiff's claims of false advertising. In *Gamboa*, where plaintiffs alleged emissions cheating, the court rejected Ford's argument that false advertising

claims would "'lead to confusion for consumers, place manufacturers in impossible positions, and undermine the federal scheme and plan for consistent information and testing relating to emissions for new automobiles.'" 381 F. Supp. 3d at 872. The court held that "Ford's argument fails because it incorrectly addresses Plaintiffs' state law claims." *Id.* As the court explained, "for a car company to argue that claims arising from state consumer protection statutes are impliedly preempted," it would have to prove that "Congress intended for the [Clean Air Act] to regulate the scope of a vehicle manufacturer's disclosure obligations to consumers." *Id.* But "Ford has not provided this Court with any legal authority to support that position." *Id.* Nor has Ford provided this Court with any legal authority to support its argument that Congress intended for any federal statute to regulate its disclosure obligations. *See also In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1059 (E.D. Mich. 2018) (rejecting implied preemption argument, because "Plaintiffs' suit seeks compensation for GM's fraudulent *concealment* of the actual operation of the emissions technology in its diesel vehicles from consumers"). *Accord*, *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 642–44 (E.D. Mich. 2019); *Counts v. Gen. Motors LLC*, 237 F. Supp. 3d 572, 591 (E.D. Mich. 2017).

In short, Plaintiffs' claims are not preempted.

## V.   PLAINTIFFS ALLEGE A JUSTICIABLE CLAIM

### A.   Plaintiffs are Suing for State Law Claims, Not EPCA Violations

Ford misconstrues Plaintiffs' claims, improperly arguing that because the EPCA

does not include a private right of action, this Court should not permit "a private-enforcement action" through state consumer protection laws. (ECF No. 82, PageID.3218-3219). Ford fails to cite *any case* standing for the proposition that the EPCA bars consumers from asserting state consumer protection or common law claims based on Ford's false and misleading practices, including cheating on fuel economy testing and advertising the inaccurate fuel economy to gain a competitive advantage in the truck market.

Instead, the case Ford principally relies on is factually and legally inapposite. *Metro. Taxicab Bd. of Trade* dealt with a challenge to local MPG requirements for NY taxis. Plaintiffs claimed that the local MPG requirements would cause them substantial costs and that the rules were preempted by federal regulation. 615 F.3d at 155. Here, Plaintiffs do not seek to enforce different state regulations or statutes for calculating MPG or fuel economy; Plaintiffs seek to enforce state common law and consumer protection statutes premised on Ford's fraud in cheating on coastdown testing. (*See, e.g.*, ¶ 19, 22, 34, 471)[14]

Ford then pivots, arguing generally that indirect enforcement of statutes lacking a private-enforcement mechanism should be rejected. Again, neither case Ford cites in support is factually similar to this case. First, *Davis v. United Air Lines, Inc.* involved

---

[14] Ford's reliance on *Alexander v. Sandoval*, 532 U.S. 275 (2001) and *Correctional Servs. Corp. v. Maleska*, 534 U.S. 61, 75 (2001) is also misplaced. Those cases address "private rights of action to enforce federal law." *Alexander*, 532 U.S. at 286. Plaintiffs here, however, have not filed such a claim seeking to enforce federal law.

the Vocational Rehabilitation Act and a terminated employee with epilepsy, and not the EPCA or fuel economy. 575 F. Supp. 677, 679 (E.D.N.Y. 1983). Unlike here, the *Davis* plaintiff specifically argued that United violated the federal statute, which requires employers to take "affirmative action to employ … qualified handicapped individuals" when he was terminated, and thus he was a third-party beneficiary of that statute. *Id.* Here, Plaintiffs make no allegations that Ford violated the EPCA, do not seek enforcement of the EPCA, nor allege that Plaintiffs, as consumers, are third-party beneficiaries of the EPCA.[15]

Plaintiffs here are suing Ford because it intentionally misrepresented and/or omitted the fuel efficiency of its vehicles, causing Plaintiffs to overpay for their Vehicles because they consume more fuel than advertised. (*See, e.g.*, ¶¶ 24-26). As courts in this District have previously recognized, these types of claims seek compensation for the manufacturer's fraud in advertising and selling the vehicles. *See, e.g.*, *In re Duramax*, 298 F. Supp. 3d at 1059; *Bledsoe*, 378 F. Supp. 3d at 643 (finding plaintiffs' state consumer protection allegations well-pled, and not federally preempted, where plaintiffs allege that defendants concealed that subject vehicles were "less fuel-efficient than the advertisement they propagated," where such advertisements "induced reasonable consumers to purchase the vehicles based on

---

[15] Similarly, in *Grochowski v. Phoenix Const.*, the plaintiffs attempted to "privately enforce[] the prevailing wage schedules contained in the [federal Davis-Bacon Act]" through their common law claims. 318 F.3d 80, 86 (2d Cir. 2003).

promises of efficiency"). *See also Gilles*, 24 F. Supp. 3d at 1049 (declining to address Ford's arguments of justiciability where plaintiff "is not suing under the ECPA").

While the U.S. Department of Justice conducted a two-year criminal investigation into Ford's emissions certification process and an EPA investigation is ongoing, Ford fails to cite a single case standing for the proposition that a federal investigation bars Plaintiffs' civil claims here. In fact, many vehicle emissions class actions, both in this District and nationwide, have proceeded in tandem with federal investigations. *See In re Duramax*, 298 F. Supp. 3d at 1065-66; *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Prods. Liab. Litig.*, 2018 WL 4826866, at *1-2 (N.D. Cal. Oct. 4, 2018); *In re Volkswagen*, 959 F.3d at 1211. As such, Ford's motion to dismiss on that basis should be denied.

## B. Plaintiffs' Out-of-Pocket Losses are a Concrete Injury in Fact

According to Ford, because the MPG rating disclosed by Ford is an estimate, which inherently varies, Plaintiffs did not suffer "a cognizable, constitutional injury-in-fact under any state law." (ECF No. 82, PageID.3220). Ford again fails to cite *any* cases supporting this argument. Whether Ford's doctored MPG ratings vary from estimates does not excuse: (1) Ford's fraud and deception in cheating on coastdown testing; (2) fraudulently advertising the improper fuel efficiency to gain a competitive advantage, inducing buyers to purchase the Vehicles; and (3) causing Plaintiffs to overpay for their Vehicles while and incurring substantial and unanticipated fuel costs.

(*See e.g.*, ¶ 552). Plaintiffs clearly allege an injury as a result of Ford's conduct.

Lacking supporting authority, Ford instead argues that Plaintiffs cannot recover under the benefit of the bargain theory because Plaintiffs allegedly received the benefit of their bargain. (ECF No. 82, PageID.3220-3221). This argument completely ignores Plaintiffs' allegations that Ford intentionally *cheated* during coastdown testing and by its failure to properly account for Road Load factors, and affirmatively misrepresented the fuel economy of the Vehicles in advertisements in order to induce Plaintiffs and the Class to purchase and lease these Vehicles. (¶¶ 2, 15, 18-22, 402, 403, 433, 456). Ford's argument is also premature at this stage, as it conflicts with well-pled allegations in the FACC that the Court must accept as true at this stage, including drawing all reasonable inferences in favor of plaintiff. *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Ford's plea for the Court to ignore its intentional and fraudulent conduct on the basis of the fuel economy "estimates"—estimates derived from its intentional cheating in order to sell more vehicles—should be rejected.

Ford's series of case citations that are not factually analogous. Principally, Ford relies on the Ninth Circuit's decision in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) (plaintiffs alleged that iPods capable of playing music at high volumes were unsafe, which allegedly "deprived them of the full benefit of their bargain because they cannot 'safely' listen to music."). The court observed that the "plaintiffs d[id] not

allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time." *Id.* at 961. Here, however, Ford prominently advertised the fraudulent fuel economy of the Vehicles, with the knowledge that, by ignoring Road Load forces, its improper testing methods inflated the actual fuel economy rating, misleading consumers. (¶¶ 2, 15, 16, 18-22).

Ford's additional case law is likewise distinguishable on this point. *Beck v. FCA US LLC* involved a plaintiff who "claim[ed] that he suffered economic harm because his vehicle was defective for not including an auto-park safety feature." 273 F. Supp. 3d 735, 747 (E.D. Mich. 2017). The *Beck* court noted that plaintiff did "not allege that he either bargained or paid for an auto-park feature at the time of purchase." *Id.* at 746. The same is true of *Azoulai v. BMW of N. Am. LLC*, where the plaintiffs again alleged "there is a defect because the product for which they paid $500 to $1000 lacks a feature–a sensor–that they believe would make the vehicles safer" but ultimately did "not allege that this feature was bargained for." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *6 (N.D. Cal. Apr. 13, 2017). Here, however, Plaintiffs allege that they would not have purchased or leased their vehicles, or would not have paid as much for them, had Ford disclosed the inflated fuel efficiency and improper testing mechanisms it employed. (*See, e.g.*, ¶¶ 15, 18-22, 39, 47, 55).

Similarly, in *Hubert v. General Nutrition Corp.*, the plaintiffs failed to allege that health supplements did not work as intended. 2017 WL 3971912, at *8 (W.D. Pa.

Sept. 8, 2017). Likewise, in *Estrada v. Johnson & Johnson*, the court held that "[a]bsent an allegation of adverse health consequences from using Baby Powder, or that Baby Powder failed to perform satisfactorily for its intended use, Plaintiff cannot claim that she was denied the benefit of her bargain." 2017 WL 2999026, at *9 (D.N.J July 14, 2017). The court noted that the benefit-of-the-bargain theory would be available if "the plaintiffs pled facts sufficient for the court to conclude that they would not have purchased the product at issue but for a specific misrepresentation made by the defendants; *i.e.*, that the plaintiff was induced into purchasing the product by a specific misrepresentation." *Id.* Here, Plaintiffs have alleged that the Vehicles are not as fuel efficient as advertised because of the fraudulent testing and that, but for Ford's misconduct, Plaintiffs would not have purchased or leased the trucks or would have paid less for their truck. (*See, e.g.*, ¶¶ 31, 39, 47, 55).

Numerous courts across the country have denied similar motions to dismiss involving vehicle manufacturers that intentionally misrepresented the fuel efficiency of their vehicles. *See Bledsoe*, 378 F. Supp. 3d at 643-44; *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 949-50 (N.D. Cal. 2018); *Aberdeen v. Toyota Motor Sales, U.S.A.*, 2008 WL 11336173, at *7 (C.D. Cal. Aug. 22, 2008); *Albers v. Mercedes-Benz USA, LLC*, 2020 WL 1466359, at *3, *10 (D.N.J. Mar. 25, 2020).

Ford also argues that lessees do not have standing to pursue diminished value

claims.[16] (ECF No. 82, PageID.3221). Ford again overlooks the factual allegations in the FACC. Plaintiffs allege that the Vehicles are worth less than what they purchased or leased them for,[17] which means that they may be underwater in their financing at the conclusion of the lease. *See, e.g.*, *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *8, *10 (C.D. Cal. Feb. 3, 2017) (rejecting argument that "lessee Plaintiffs cannot make a diminished value claim"); *Mooradian v. FCA US, LLC*, 2017 WL 4869060, at *9, *10 (N.D. Ohio Oct. 27, 2017) (same); *Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630, 634-35 (E.D. Tex. 2007) (same).

The cases cited by Ford do not compel a different result. In *Copelan v. Infinity Ins. Co.*, an insurance coverage case, the Ninth Circuit held that the plaintiffs' insurance policy "cover[ed] diminution-in-value damages." 728 Fed. App'x 724, 726 (9th Cir. 2018). And in *Thiedemann v. Mercedes-Benz USA, LLC*, the court found that a plaintiff was not an adequate class representative because she failed to establish any harm and could not demonstrate "loss in future resale value." 872 A.2d 783, 795-96 (N.J. 2005). The plaintiff did not advance, and the court did not consider, that the plaintiff may be underwater in her financing at the conclusion of the lease, making

---

[16] Ford does not argue, however, that the lessee Plaintiffs cannot pursue benefit of the bargain damages, or any other damages recoverable under Plaintiffs' claims.

[17] (*See, e.g.*, ¶¶ 2, 510, and pled under all state laws).

-42-

*Thiedemann* inapposite.[18] Ford offers no authority that lessees have not suffered a diminution in value, failed to receive the benefit of bargain or suffered other damages available to Plaintiffs.

### C. Plaintiffs Properly Assert Nationwide Claims

Finally, Ford argues that the claims from the 22 states in which a named Plaintiff does not reside must be dismissed. (ECF No. 82, PageID.3223). This argument is premature before Plaintiffs move for class certification and the Court should deny the present motion. Courts in the Sixth Circuit have repeatedly rejected attempts to dismiss claims arising under state laws other than those where the Plaintiffs reside prior to class certification. *See, e.g.*, *Counts*, 237 F. Supp. 3d at 588 ("Plaintiffs have standing to bring claims on their own behalf. The question of whether they may bring claims on behalf of the unnamed class members is an issue that is properly addressed via a motion for class certification."); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1000-01 (E.D. Mich. 2014) (delaying analysis until class certification motion); *In re Duramax*, 298 F. Supp. 3d at 1088-89 (same); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008).[19]

---

[18] Ford also cites to a case granting final approval to a settlement agreement, which has no relevance here. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *21, *28 (N.D. Cal. Oct. 25, 2016).

[19] *See also In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 953-56 (same). Similar to *Counts*, the *Chrysler-Dodge-Jeep Ecodiesel* court observed that discovery did not tilt the scale. *Id.* at 956 (holding defendant would still need to engage in nationwide

Ford's reliance on *Fallick v. Nationwide Mut. Ins. Co.* is especially misplaced here, since the Sixth Circuit delayed this analysis until class certification. 162 F.3d 410, 423 (6th Cir. 1998) ("Once his [Article III] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends *solely* on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.") (emphasis added).

The *Counts* court reached its conclusion principally based on three facts: that the discovery GM was subjected to would not significantly change because it related to a "defeat device" installed in all vehicles, that the case appeared to be appropriately pled as a class action, and that each plaintiff had satisfied Article III standing as to their individual claims. *Counts*, 237 F. Supp. 3d at 587-88. The same is true here. Plaintiffs allege Ford cheated on its fuel economy testing and then uniformly advertised those inaccurate fuel economy ratings on the window Sticker of the Vehicles and made other false misrepresentations. (*See, e.g.*, ¶¶ 397, 409, 414-15, 462-70). Plaintiffs have alleged that this case meets all the requirements to be certified under Fed. R. Civ. P. 23(a) and (b). (¶¶ 481-92). Finally, each Plaintiff has Article III standing to pursue their individual claims. *See, supra*, Section V(B). As such, Ford's argument is premature and should be rejected.

---

discovery even if it dismissed claims under states not currently represented). *See also Bledsoe*, 378 F. Supp. 3d at 641-642 (collecting cases).

## VI.   PRIMARY JURISDICTION DOES NOT APPLY

Ford purports that the EPA has primary jurisdiction to determine the accuracy of EPA MPG estimates, arguing it "is obviously within the EPA's special expertise." (ECF No. 82, PageID.3229).[20] Ford's argument ignores both the factual basis for this litigation and the nature of Plaintiffs' claims. Plaintiffs seek to determine Ford's liability under state consumer protection statutes and common law, alleging that Ford cheated on its fuel economy testing, advertised and touted the inaccurate fuel economy for financial gain, and deceived Plaintiffs and the class into purchasing or leasing vehicles at prices above what they were actually worth. (¶ 2).

Plaintiffs allege state law claims for monetary damages that are not subject to adjudication by the EPA or any other federal agency; but rather, such claims are within the sole province of the court. The EPA does not have the power to adjudicate Plaintiffs' claims for monetary damages. *See e.g.*, *Martin v. Behr Dayton Thermal Prods. LLC*, 2011 WL 4073703, at *3 (S.D. Ohio Sept. 13, 2011) (finding plaintiffs' request for monetary damages within "province of the courts, rather than the EPA, and thus, staying the litigation under the primary jurisdiction doctrine is inappropriate");

---

[20] The doctrine of primary jurisdiction only arises "when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency." *Counts*, 237 F. Supp. 3d at 592 (quoting *United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997)). While there is no "ready formula" for determining whether to apply the doctrine and stay a particular case, "courts generally inquire into whether the purposes of the doctrine, including uniformity and accuracy gained through administrative expertise, will be especially furthered by invocation in the particular litigation." *Counts*, *supra* at 592.

*In re Duramax*, 298 F. Supp. 3d at 1066; *Counts*, 237 F. Supp. 3d at 593.

There is little question that this Court is more than capable of determining whether the Plaintiffs' evidence to be gathered through discovery establishes that Ford misrepresented and/or omitted the fuel economy of the Vehicles at the point of purchase or lease. *Id.* at 593 ("mere technical complexity is not a 'compelling and legitimate' reason for a federal court to decline jurisdiction."); *Gentry v. Hyundai Motor Am., Inc.*, 2017 WL 354251, at *6 (W.D. Va. Jan. 23, 2017), *aff'd in part, dismissed in part sub nom*; *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018).

The two cases Ford cites fail to support Ford's argument here. First, in *Ford Fusion*, 2015 WL 7018369, the court sided with plaintiffs' arguments (which are consistent with those Plaintiffs make here) and held that "the question of whether the advertisements related to such information were misleading is a question conventionally left to the courts to answer." *Id.* at *30 (collecting cases). In *Ford Fusion*, the court simply held that claims concerning whether there is a way to properly calculate EPA-estimated fuel economy for that specific vehicle, and whether it should be disclosed, is barred by the doctrine of primary jurisdiction. Unlike in *Ford Fusion*, Plaintiffs here allege that Ford falsified information in the Monroney Sticker itself as Ford cheated in calculating the advertised fuel economy. Plaintiffs do not dispute that there is a way to properly calculate EPA-estimated fuel economy for the

-46-

Vehicles. Rather Plaintiffs contend that Ford deliberately falsified information and misrepresented the Vehicle's fuel economy in advertisements and the Monroney Sticker.

Similarly, the court in *Gilles*, 24 F. Supp. 3d at 1049-50 also agreed with plaintiffs and refused to apply the doctrine of primary jurisdiction to bar their claims. The *Gilles* court explained that claims regarding "specific advertisements which failed to disclose that they were based on the EPA estimates, and . . . [which] misled him and other purchasers" of the vehicle were properly raised in the court and the primary jurisdiction doctrine did not apply. *Id*. Ford's reliance on the *Gilles* opinion is nothing more than a reliance on *dicta* from the court, which briefly mentions that the accuracy of EPA mileage estimates may depend on technical information not within the "conventional experience of this Court." *Id.* at 1050. Again, this has no bearing here where Plaintiffs allege that Ford deceived consumers at the point of purchase or lease. The EPA has no authority to adjudicate such claims. As such, Ford's motion should be denied.

## VII.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS ARE PROPER

Plaintiffs' claims are not barred by 49 U.S.C. § 32908(d). In *Ford Fusion*, 2015 WL 7018369, at *35-36, the court rejected the same argument, finding that the statute did not apply to Ford's advertisements because "[T]he FTC regulations that govern advertising do not include a similar warranty provision." For that reason,

"[g]uarantees *beyond* a mere disclosure, namely the alleged statements that [p]laintiffs specifically challenge here, may still create a warranty." *Id.*[21] (emphasis in original). Here, Plaintiffs allege that Ford made express warranties in advertisements which go beyond the Monroney Stickers (*see, e.g.*, ¶¶ 524, 3978) ("In selling its vehicles, Ford expressly warranted in advertisements, including in the Stickers affixed to the windows of its vehicles, that its vehicles achieved certain fuel economy ratings in Ford's coastdown testing, depending on the vehicle."). (*See also* ¶¶ 17-20, 414-15, 429, 462-70) (specifying advertisements that emphasize fuel economy). Such advertisements are the "affirmations and promises [that] were part of the basis of the bargain" that Ford breached and that are not barred by the statute. (*See, e.g.,* ¶¶ 524-27, 3979-80).

Ford's assertion that Plaintiffs' express warranty claim fails to plead facts showing the defect is wrong. (*See* ¶¶ 397-403, 410-415, 433-456). Further, "courts have rejected efforts to create an artificial distinction between design and materials/workmanship defects," *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *5 (E.D. Mich. July 16, 2018) (finding sufficient factual allegations to assert a breach of

---

[21] In Ford's case, *Paduano* (ECF No. 82, PageID.3243), the court also affirmed that "[T]he federal law that regulates fuel economy estimates and labels does not preempt every lawsuit that challenges any statement an automobile manufacturer makes regarding fuel economy." *Paduano*, 169 Cal. App. 4th at 1463-63. S*ee also True*, 520 F. Supp. 2d at 1181 ("Nothing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these Stickers and booklets.").

-48-

warranty, regardless of whether the defect is in design or in manufacturing and workmanship"); *Francis v. Gen. Motors, LLC*, 2020 WL 7042935, at *6 (E.D. Mich. Nov. 30, 2020) (denying dismissal because allegation that the defect "could be due either to poor design, or to poor materials and workmanship," required development of the record); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224–25 (9th Cir. 2015) (reversing summary judgment given the ambiguous terms of Ford's warranty regarding whether it covers both manufacturing and design defects).

Ford argues that Plaintiffs' claims fail because they do not plead that Plaintiffs brought their Vehicles to an authorized dealer for a covered repair that was refused. But Plaintiffs allege that the NVLW, which covers a "defect in factory supplied material or workmanship," fails in its essential purpose because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time. (*See, e.g.,* ¶¶ 523, 529-30). Plaintiffs allege that affording Ford a reasonable opportunity to cure its breach would be unnecessary and futile, because Ford knew about the defect at the time of sale and it has not restored and is unable to restore the Vehicles to the condition it had promised. (*See, e.g.,* ¶¶ 527-28, 530). *See also* Section VII, *infra*.

Ford also contends that Plaintiffs did not provide pre-suit notice yet does not contest that each Plaintiff "provided notice of Ford's breach via certified mail as early as May 6, 2019." (ECF No. 82, PageID.3245) (citing *e.g.,* ¶ 602). In addition to this notice letter (sent over 8 months prior to the filing of the Consolidated Amended

Master Complaint, ECF No. 60), Ford had notice from other complaints filed against it months before this action began and internal knowledge of the inaccurate coast-down testing. (*See, e.g.*, ¶ 533).[22]

Pre-suit notice is not required in these circumstances under the laws of many states at issue here.[23] And, if pre-suit notice is required, "whether Plaintiffs gave

---

[22] The plain language of U.C.C. § 2-607(3)(a) does not require notice prior to filing suit, only that notice be given within a reasonable time. *See Patterson Oil Co. v. Verifone, Inc.*, 2015 WL 6149594, at * 3 (W.D. Mo. Oct. 19, 2015) (Missouri). *See also In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 1012-13 (E.D. Mich. 2017) (holding that most of the states at issue there allow "notice" to be satisfied by the filing of a civil complaint within a reasonable time); *In re MyFord Touch*, 46 F. Supp. 3d at 976 (Arizona and Ohio); *Horne v. Novartis Pharm. Corp.*, 541 F. Supp. 2d 768, 786 (W.D.N.C. 2008) (North Carolina); *In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, 2010 WL 2813788, at *40 (D.N.J. July 9, 2010) (Pennsylvania); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 686 F. Supp. 1319, 1340 (N.D. Ill. 1988) (Oklahoma); *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 750-51 (M.D. Tenn. 2010); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 491155, at *10 (E.D. La.) (Mississippi); *Parrish v. Volkswagen Group of America, Inc.*, 463 F. Supp. 3d 1043, 1063 (C.D. Cal. 2020) (Utah).

[23] Pre-suit notice is not required to be provided to manufacturers of the product at issue under the laws of most states. *See Beck*, 273 F. Supp. 3d at 756 (applying California law); *Persad*, 2018 WL 3428690, at *4 (Pennsylvania and Georgia law); *In re MyFord Touch*, 46 F. Supp. 3d at 978-79 (Virginia); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *12-13 (D.N.J. May 8, 2018) (collecting cases and applying laws of Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and Washington); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 355 (1975); *Ho v. Michelin North America, Inc.*, 2011 WL 3241466, at *15-16 (D. Kan. July 29, 2011); *In re Santa Fe Natural Tobacco Company Mktg. & Sales Practices and Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1271-72 (D.N.M. 2017); *Waupaca Electric Light and Railway Co. v. Milwaukee Electric Railway & Light Co.*, 88 N.W. 308, 309 (Wis. 1901).

timely notice is a question of fact for the jury to decide." *Persad*, 2018 WL 3428690, at *4 (internal citation omitted); *Francis*, 2020 WL 7042935, at *12.[24] Even if it is determined after discovery that proper notice was not given, "dismissal for want of notice is inappropriate where, as here, the defendant has made no showing that it was prejudiced by being deprived of a seasonable opportunity to remedy the problem." *Francis*, 2020 WL 7042935, at *11; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1012-13 (E.D. Mich. 2017) (collecting cases).

Plaintiffs' claims are also not barred by a lack of privity under state law. That "argument is nothing if not audacious," because if privity is required, then the NVLW is enforceable by nobody. *See Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 835-838 (D.N.J. 2013) (denying dismissal of breach of express warranty claim; explaining that it defies logic to say that the warranty flows to the retail purchase but that there is no such person). Also, there are exceptions to certain states' privity requirements, such as where a plaintiff relies on statements or promises from a manufacturer. *See Hamilton v. TBC Corp.*, 328 F.R.D. 359, 387-88 (C.D. Cal. Aug. 24, 2018) ("'notable exception[]' is cases where 'the purchaser relied on

---

[24] *Rhode v. E & T Investments, Inc.*, 29 F. Supp. 2d 1298, 1303 (M.D. Ala. 1998); *Canfield v. FCA US LLC*, 2019 WL 133402, at *18 (D. Del. Jan. 8, 2019); *Donat v. Trek Bicycle Corporation*, 2016 WL 297436, at *11 (D.S.D. Jan. 22, 2016); *Mainline Tractor & Equipment Co., Inc. v. Nutrite Corp.*, 937 F. Supp. 1095, 1109 (D. Vt. 1996); *In re Rustoleum*, 155 F. Supp. 3d at 806-807 (Tennessee); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1110 (C.D. Cal. 2012) (applying Indiana, Oregon, South Dakota, Washington, and Wyoming law).

representations made by the manufacturer in labels or advertising materials.'"). Where plaintiffs allege "direct dealings" with a manufacturer by relying on direct-to-consumer marketing in making a purchase decision, or when a plaintiff is a third-party beneficiary, state law privity requirements are satisfied. *Id.*[25] *See also Francis*, 2020 WL 7042935, at *9 (holding that a privity defense is fact-based and not appropriately resolved on a motion to dismiss); *In re AZEK Bldg, Prods., Inc. Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007).

Ford does not raise a lack of reliance as a basis to dismiss Plaintiffs' claims, presumably because Ford agrees that Plaintiffs have pled reliance. Instead, Ford simply attaches Appendix A-1, which lists certain states which purportedly require reliance to sustain a breach of express warranty claim. This cursory reference to a string of cases, with no substantive argument in the Motion, fails to adequately raise

---

[25] *See also De Shazer v. National RV Holdings, Inc.*, 391 F. Supp. 2d 791, 794-95 (D. Ariz. 2005) (rejecting argument that privity is required); *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1182-83 (S.D. Fla. 2019) (recognizing third-party-beneficiary exception under Florida law); *Helpling v. Rheem Manufacturing Company*, 2016 WL 1222264, at *5 (N.D. Ga. Mar. 23, 2016) (holding privity is not a bar to express warranty claims under Georgia law when item purchased from an authorized dealer); *In re Rustoleum*, 155 F. Supp. 3d at 806-807 (recognizing "direct dealing" exception under Illinois, Idaho, Maryland, and Tennessee law); *Reed v. Arthrex, Inc.*, 2017 WL 4560140, at *4 (D. Nev. Oct. 11 2017) (vertical privity not required under Nevada law); *Buettner v. R.W. Martin & Sons, Inc.*, 47 F.3d 116, 119 (4th Cir. 1995) (recognizing that foreseeable users have contractual rights under Virginia law); *Ball v. Sony Electronics, Inc.*, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005) (holding privity not required under Wisconsin law where manufacturer intends for the warranty to cover the ultimate purchaser).

this issue for consideration by the Court.[26] Baked into these appendices are recitations of law that also implicate the elements that Plaintiffs must show to ultimately prevail on the merits. However, a showing of reliance is not required to plead a breach of express warranty claim. U.C.C. §2-313.[27] Comment 3 to UCC § 2-313 states that, "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; *hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement*." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972 (N.D. Cal. 2014) (citing UCC § 2-313, cmt. 3); *see also In re Rustoleum Restore*, 155 F. Supp. 3d at 809-10; *Fire Ins. Exch. v. Electrolux Home Prods.*, 2006 WL 2925286, at

---

[26] Judge Lawson of this District recently entered two orders striking similar Appendices in support of a motion to dismiss and a motion for class certification. In the Court's March 16, 2017 Order Granting Plaintiffs' Motion to Strike Appendix, Judge Lawson found that a self-styled "appendix" filed by defendant as an exhibit in support of its motion to dismiss was "nothing more than an 89-page running footnote to the defendant's brief, which it has employed as an artifice in order grossly to enlarge the pages consumed by its briefing, far beyond the allowance for extra pages that the Court granted to both sides…" (Exhibit 4 at PageID.2284).

[27] This U.C.C. provision has been adopted in all 30 states where Ford contends reliance is required. *See, e.g.,* ALASKA STAT. § 45.02.313; ARIZ. REV. STAT. § 47-2313; ARK. CODE § 4-2-313; CAL. COM. CODE § 2313; CONN. GEN. STAT. § 42a-2-313; FLA. STAT. § 672.313; GA. CODE § 11-2-313; 810 ILCS 5/2-313; IOWA CODE § 554.2313; KENT. REV. STAT. § 355.2-313; MAINE REV. STAT. § 2-313; MASS. GEN. LAWS ch. 106, § 2-313; MICH. COMP. LAWS § 440.2313; MINN. STAT. § 336.2-313; MISS. CODE § 75-2-313; MONT. CODE § 30-2-313; NEB. REV. STAT. § 2-313; N.H. REV. STAT. § 382-A:2-313; N.J. STAT. § 12A:2-313; N.C. GEN. STAT. § 25-2-313; OKLA. STAT. § 2-313; OR. REV. STAT. § 72.3130; R.I. STAT. § 6A-2-313; S.D. COD. LAWS § 57A-2-313; TENN. CODE § 47-2-313; TEX. BUS. & COM. CODE § 2.313; UTAH CODE § 70A-2-313; WASH. REV. CODE § 62A.2-313; WISC. STAT. § 402.313; WYO. STAT. § 34.1-2-313.

*5-6 (E.D. Mich. Oct. 11, 2006).

Although reliance is not a requirement under the laws of any state at issue under these circumstances, Plaintiffs have pled that they purchased or leased their Vehicle "in part because of the stated 'best in class' fuel economy," "saw representations about the vehicle's performance, including its fuel economy, on Ford's website, dealer brochures, television commercials and on the vehicle's window Sticker," and "had Ford disclosed the true fuel economy and dubious certifications of the vehicle, Plaintiff would not have purchased the vehicle or would have paid less for it." (*See, e.g.,* ¶¶ 30, 31). Additionally, Plaintiffs have pled that Ford's "affirmations and promises were part of the basis of the bargain that was reached when [] Plaintiffs and the other [] Subclass members purchased or leased the Coastdown Cheating Vehicles." (*See, e.g.*, ¶ 526). These allegations are pled by all Plaintiffs and in the breach of express warranty claims under each state law.

There is no dispute here that Ford's NVLW was part of each Plaintiff's bargain and courts readily find that a manufacturer's written warranty is part of a transaction. *See LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994) (holding that the mere fact a manufacturer's written warranty was printed in the manufacturer's product catalog, which had been provided to the purchaser/plaintiff before or at the time of the transaction, was enough to create a factual question whether it was part of the purchase transaction). Additionally, Plaintiffs "are not required to plead reliance by

each Plaintiff on specific misleading statements." *In re Rustoleum*, 155 F. Supp. 3d at 809. In any event, Plaintiffs have sufficiently pled reliance and any contention that Plaintiffs have failed to do so should be rejected. *See Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 961 (N.D. Cal. 2018) (holding that "reliance can be proved by showing that 'had the omitted information been disclosed, one would have been aware of it and behaved differently'") (quoting *Daniel*, 806 F.3d at 1225).

## VIII.   Plaintiffs' Magnuson-Moss Warranty Act Claims Are Well-Pled

Because Plaintiffs' express warranty claims are not barred, Plaintiffs' MMWA claim also survives. *Persad*, 2018 WL 3428690, at *6.

Like Plaintiffs' express warranty claim, their MMWA claim is partially based on what Ford warranted in its advertisements and communications, including that the vehicles at issue conformed to the promises in those advertisements and communications that became part of the basis of the bargain. (¶¶ 3966-69). The MMWA defines "written warranty" as "any written affirmation of fact or written promise." 15 U.S.C. § 2301(6). Ford acknowledges that an advertisement can constitute a warranty under the MMWA if it specifies a level of performance over a specified period of time. That is precisely what Plaintiffs allege. (*See, e.g.*, ¶¶ 17-20, 414-15, 429, 462-70) (specifying advertisements that emphasize fuel economy, including fuel economy rating of specific MPGs and a 2019 Ford Ranger brochure that represents "a driving range of up to 414 miles per tank").

Plaintiffs allege that (1) Ford was provided an opportunity to cure and multiple written notices of the intent to sue (¶ 3974); (2) Ford knew of the defect at the time of the sale, thus waiving an opportunity to cure (¶ 3971); and (3) that it would be futile to afford Ford an opportunity to cure its breach (*see, e.g.*, ¶ 528). These allegations sufficiently plead a viable MMWA claim. *See Persad*, 2018 WL 3428690, at *6 (holding that plaintiffs' complaint properly alleged futility and denied motion to dismiss based on lack of pre-suit notice).[28]

## IX.   PLAINTIFFS PROPERLY PLED THEIR STATE LAW CLAIMS

### A.   Plaintiffs' Allegations Satisfy Rules 8(a) and 9(b).

Ford argues Plaintiffs' claims are not plausible because this is simply a situation where Ford's estimates did not match "real-world performance." (ECF No. 82, PageID.3227). Ford argues, in essence, Plaintiffs are making an "apples to oranges" comparison between Ford lab mileage estimates and the vehicles' actual usage

---

[28] *See also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1235 (S.D. Fla. 2014) (denying motion to dismiss and holding that Ford's argument is an affirmative defense not properly decided at the pleading stage). *See also Ranford v. Daimler Chrysler Corp.,* 168 F. Supp. 2d 752, 753-54 (N.D. Ohio 2001) (denying motion to dismiss MMWA claim where plaintiff alleged defendant knew of the defective product at the time of sale and thus had an opportunity to cure but failed to do so); *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555, at *8 (W.D. Wash. Mar. 17, 2017) (holding that the plain language of § 2310(e) does not require pre-suit notice of a class action, thus dismissal of Plaintiffs' MMWA claim is not warranted at this stage"). Ford's case, *Kuns v. Ford Motor Co.*, 543 Fed. App'x 572, 576 (6th Cir. 2013), is inapposite. The 6th Circuit affirmed the court's grant of summary judgment, rejecting Plaintiff's futility claim that she had a third party perform a repair and did not provide Ford an opportunity to cure because she believed the warranty did not cover it even though Ford had issued TSB's to its dealers that the problem was covered by the warranty. *Id.*

mileage. (ECF No. 82, PageID.3226-3227).

Such is not the case. Plaintiffs' automotive expert followed the *identical* EPA- and SAE-required test specifications that Ford purportedly followed, and Plaintiffs' test results are vastly different from Ford's numbers, under circumstances where they *should* closely match up. For example, in the speed ranges where the road load has the greatest effect on overall engine load, road load forces are some 20-35% higher than the false values Ford reported to the EPA. (¶ 448). These are *not* immaterial differences that can be explained away as expected variability between Ford lab conditions and actual road conditions, because the test specifications performed by Ford are intended to account for, and minimize, inherent lab variability between the lab conditions and road conditions. (¶¶ 5, 8, 10, 398-403, 412-413, 433-437, 438-456; FACC Ex. 1).

Accordingly, Plaintiffs' testing is an "apples to apples" comparison with Ford's testing, and Plaintiffs have alleged (and will prove) that Ford reported false 2018 F-150 and 2019 Ford Ranger fuel economy information to Plaintiffs. (¶¶ 2, 6, 9, 405, 414-415, 433-456, 462-470). In addition to such measurable and verifiable scientific evidence, Plaintiffs have specifically alleged that Ford employees acknowledge Ford's improper computer modeling and test practices. (¶¶ 410-11; FACC Ex. 2). And after the whistleblowers' concerns became public, Ford acknowledged some test irregularities to the SEC. (¶¶ 411, 430, 432; Exs. 10, 11). Under these circumstances,

Plaintiffs' claims more than adequately satisfy Rule 8(a)'s plausibility standard.[29]

Ford also argues that all of Plaintiffs' consumer fraud claims should be dismissed because they do not satisfy Rule 9(b)'s particularity requirement. (ECF No. 82, PageID.3228). Rule 9(b)'s particularity requirement "does not require omniscience," but rather that "the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012). "Rule 9(b) generally requires that a plaintiff specify the who, what, where, when[,] and why of the alleged fraud; specifying which statements were fraudulent and why, who made the statements to whom, and when and where the statements were made." *Ford Fusion*, 2015 WL 7018369, at *12 (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993). *See Beck*, 273 F. Supp. 3d at 751. *See* also Sections VIII(B) and (C) *infra*.

Notably, Ford ignores Plaintiffs' omission-based allegations. (*See e.g.*, ¶¶ 34, 42, 50). The Rule 9(b) pleading standard "is 'slightly more relaxed' for claims of fraudulent concealment or fraud by omission (as opposed to affirmative fraud) ... because fraudulent omissions or concealments are by nature 'more amorphous' than

---

[29] Ford's reliance on *Ford Fusion*, 2015 WL 7018369, at *27 to support this point is misplaced. (*See* ECF No. 82, at PageID.3227). Ford references one sentence in *Ford Fusion* where the court held that to the extent plaintiffs' claims are premised on claims that Ford improperly used EPA estimates, those claims would be preempted. In reality, the court in *Ford Fusion* found plaintiffs' allegations to satisfy Rule 9(b) (and thus Rule 8(a)). *Id.* at *32-35.

affirmative misrepresentations." *Raymo v. FCA US LLC*, 2020 WL 4366061, at *4 (E.D. Mich. July 30, 2020) (collecting cases). These "claim[s] can succeed without the same level of specificity required by a normal fraud claim." *Beck*, 273 F. Supp. 3d at 751 (holding that a plaintiff alleging omission-based fraud "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.").

Plaintiffs' allegations satisfy this standard. The 963-page FACC, plus exhibits, is extensively sourced and detailed. Plaintiffs have adequately pled "the 'who' (Ford); the 'what' (Ford knowing about, yet failing to correct, false fuel economy information: (¶¶ 2, 6, 15, 16, 397, 438-56)); the 'when' (from the time the vehicles were first placed on the market in 2018 to the present day (¶¶ 16, 22, 410, 431, 464)); the 'where' (the various channels through which Ford disclosed this false fuel economy information (*i.e.,* Monroney Stickers, vehicle brochures, and massive advertising) (¶¶ 2, 6, 7, 11, 17, 19, 20, 414-15, 438-56, 462-466, 470; Exs. 3, 4, 5, 6, 8, 9)); and the 'how' (if Plaintiffs and the class members had known the Vehicles could not deliver the fuel economy Ford reported, they would have not purchased or leased the Vehicles, or they would have paid less for them (*e.g.,* ¶¶ 2, 28, 30, 31, 471)). Contrary to Ford's argument, Plaintiffs identify representations they saw regarding the vehicle's performance and where they specifically viewed the information (*e.g.*, on Ford's website, in its dealer brochures, on television

commercials, and on the window Sticker) (*See, e.g.*, ¶ 30.) *See, e.g.*, *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 641 (E.D. Mich. 2019) ("*In re GM AC*") (finding Rule 9(b) satisfied by alleging fraud via "various advertisements, window Stickers on the Vehicles, and discussions with GM dealers").

Such allegations readily meet Rule 9(b)'s requirements. *See also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (finding that fraud claim satisfies Rule 9(b) where plaintiffs alleged that "GM was bound by a duty to disclose material facts about its speedometers from 2003 to 2007. GM failed to disclose this information, and plaintiffs [] suffered damages after justifiably relying on GM's failure to disclose").

### B.  Plaintiffs' Fraudulent Concealment Claims are Well-Pled

Ford incorrectly contends that all fraud-based concealment claims should be dismissed because Plaintiffs do not allege with particularity some combination of (1) actionable misrepresentations by Ford; (2) Plaintiffs' reliance on specific misrepresentations; or (3) that Ford had a duty to disclose the alleged omissions. Ford's arguments fail, not only because Ford misconstrues state law, but also because Plaintiffs allege with particularity all elements of a claim for fraudulent concealment.

Plaintiffs have alleged numerous actionable misrepresentations and omissions by Ford, including that it cheated in its fuel economy testing and then used the

resultant inaccurate fuel economy ratings to sell and lease Vehicles to consumers (*e.g.*, ¶¶ 1-15). In particular, Plaintiffs have alleged that Ford deliberately miscalculated coastdown testing in order to report and market false information that the Vehicles used less fuel and emitted less pollution than they actually did (¶¶ 397-409); Ford had exclusive knowledge of material facts that were not known by Plaintiffs; (*e.g.*, ¶ 548); Ford knew that their misrepresentations were false (*e.g.*, ¶ 540); Ford concealed its scheme, despite its own employees questioning Ford's testing practices and Ford's promises about the Vehicles being "most fuel efficient" and "best in class" for fuel economy (*e.g.*, ¶¶ 16-23); Plaintiffs reasonably relied on Ford's omissions and misrepresentations; and that Ford had a duty to disclose the truth about the Vehicles' true fuel economy–and that the fuel economy was calculated by cheating.

Under similar circumstances, courts presiding over other motor vehicle cases and adjudicating materially identical arguments have upheld fraudulent concealment claims at the pleading stage. For example, in *In re GM AC*, 406 F. Supp. 3d at 636, the court recognized that the essence of plaintiffs' fraudulent concealment claims was that GM knowingly failed to disclose the defect and omitted the existence of the defect in GM's representations to plaintiffs and the public. The court found that plaintiffs plausibly alleged facts that could support a duty to disclose, because plaintiffs alleged that: (1) GM knew of the defect before plaintiffs' purchases; (2) GM willfully failed to disclose the defect and repeatedly misrepresented the vehicles through a marketing

-61-

campaign and on vehicle window Stickers; (3) these facts were material to plaintiffs; and, as alleged here,[30] (4) plaintiffs were not able to reasonably discover the defect on their own. *Id*. at 638-39; *see also Bledsoe*, 378 F. Supp. at 643-44 (holding that plaintiffs plausibly alleged that defendants had exclusive knowledge of defeat devices but actively concealed them); *Persad*, 2018 WL 3428690, at *3 (collecting cases recognizing a duty to disclose where a defendant like Ford has exclusive and superior knowledge than plaintiffs; finding that plaintiffs stated a viable claim for fraudulent concealment); *Counts*, 237 F. Supp. 3d at 600. Like the foregoing case law, Plaintiffs here have also adequately alleged Ford's fraudulent concealment.[31]

Also, Ford's assertion that Plaintiffs' allegations fail because they rely on "the mere use of EPA estimates," is simply wrong. Plaintiffs' claims do not depend on whether Ford violated EPA fuel efficiency standards, but rather that Ford fraudulently concealed or misrepresented that the fuel efficiency was "substantially lower than a reasonable customer would expect, given the representations in [GM's] advertising campaign." *Counts*, 237 F. Supp. 3d at 595.

## C.   Plaintiffs' Fraud and Negligent Misrepresentation Claims are Proper

Plaintiffs have sufficiently alleged common law fraud and negligent

---

[30] Plaintiffs had no way of knowing about Ford's deception. (¶¶ 472-77, 545-46).

[31] Ford is incorrect that Washington only permits a fraudulent concealment claim to be brought by a purchaser of a residential building. *See Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836, at *12 (D.N.J. Nov. 30, 2017).

misrepresentation claims in accordance with Fed. R. Civ. P. 9(b). Although Ford contends that Rule 9(b) requires specificity, that rule must be read against the backdrop of Fed. R. Civ. P. 8, which aims to put a defendant on notice of claims so that a defendant may reasonably respond to allegations in a complaint. *Gamboa*, 381 F. Supp. 3d at 872-73. *See also*, Section IX(A) above. Ford, in moving to dismiss the entirety of Plaintiffs' fraud claim, conveniently ignores Plaintiffs' allegations of fraudulent omissions, which are subject to a lower specificity pleading standard because omissions occur over time and are more amorphous. *Id*. In *Gamboa*, the court found that plaintiffs' allegations of fraudulent omissions satisfied Rule 9(b), because plaintiffs stated: (1) what was omitted–material facts regarding Ford vehicles' engines; (2) who should have made a representation–Ford; (3) the content of the alleged omission and the manner in which it was misleading; and (4) what Ford obtained as a consequence of the alleged fraud–increased profits. *Id*. at 874-75.

Here, Plaintiffs allege the same: (1) Ford omitted material facts regarding its failure to include essential factors during internal vehicle testing in order to report that its vehicles were more fuel efficient than they actually were (*see, e.g.*, ¶¶ 22, 3984-86); (2) Ford should have disclosed the true fuel economy of the vehicles (*see, e.g.*, ¶¶ 410-15, 430-32, 3985); (3) how Ford deliberately miscalculated coastdown testing in order to report that the vehicles used less fuel and emitted less pollution than they actually did and how Ford admitted improper coastdown testing on the 2019 Ranger

but took no action to correct ongoing misrepresentations to consumers (*see, e.g.*, ¶¶ 397, 410-11, 430); and (4) that Ford obtained increased profits due to its fraud (*see, e.g.*, ¶¶ 11, 18, 32, 414-15, 429, 464, 471, 474, 3986). *See also* Section IX(A)).[32]

Ford's argument for dismissal labels Plaintiffs' fraud claim as a formulaic recitation of the elements, but Ford makes no attempt to address the foregoing allegations, all of which and more are incorporated into Count 309. (¶ 3982). Ford's dismissal bid focuses only on Ford's representations, without addressing the reality that Plaintiffs' fraud claim alleges properly alleges affirmative misrepresentations *and omissions*. *Raymo*, at *17-18 (sustaining both types of fraud claims). Plaintiffs have satisfied Rule 9(b).

Because Ford also attacks Plaintiffs' negligent misrepresentation claims under Rule 9(b), the motion to dismiss that claim should be denied for the same reasons discussed above. *See Persad*, 2018 WL 3428690, at *4 ("Ford attacks Plaintiffs' negligent misrepresentation claims using the same argument … These arguments fail for the same reasons. Plaintiffs adequately pled all of the elements of negligent misrepresentation."). Ford incorrectly contends that Oklahoma and Virginia do not

---

[32] Plaintiffs' also allege actionable misrepresentations, including Ford's advertisements stating the Vehicles are the "Most Fuel Efficient" and "best in class" for fuel economy in places like Ford's website, dealer brochures and sales pamphlets, television and radio commercials, and/or on the vehicle's window stickers. (*See* ¶¶ 11, 17-22, 414-415, 456, 462-470). Each Plaintiff selected and ultimately purchased or leased his/her vehicle, in part, because of reliance on such "best in class" and/or other representations *notwithstanding* EPA mileage estimates concerning fuel economy.

recognize negligent misrepresentation claims. The claims can be referred to as "constructive fraud," but they contain substantially the same elements pled in Counts 220 (Oklahoma) and 281 (Virginia) and should not be dismissed.[33] Ford also contends that Iowa law requires privity, but that is incorrect.[34]

Ford's final argument for dismissal of certain negligent misrepresentation claims under the laws of Arizona, Kentucky, Massachusetts, Missouri, Nevada, Ohio, Vermont, Washington, and Wyoming—arguing that a business transaction is necessary—is also meritless since Plaintiffs alleged that they purchased or leased the Vehicles. As explained in *In re Rustoleum*, the requirement that the misrepresentation surrounds a business transaction is satisfied where, as here, plaintiffs allege that they purchased the product at issue. 155 F. Supp. 3d at 822-23 (collecting cases). Plaintiffs have adequately pled negligent misrepresentation claims and Ford's motion to dismiss these claims should be denied.

### D.  Plaintiffs Properly Pled State Law Consumer Protection Claims

#### i.  Defendant fails to meet its burden under Rule 12(b)(6)

Ford's argument that Plaintiffs fail to plead their consumer protection act claims is premised on a series of legally and factually false statements, devoid of meaningful and necessary legal analysis.

First, Ford wrongly asserts "[t]o state a claim under all but one of the consumer

---

[33] *Sales v. Kecoughtan Hous. Co.*, 279 Va. 475, 481-82 (2010); *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, 2011 WL 3881495, at *5–6 (N.D. Okla. Sept. 2, 2011).
[34] *Rouse v. Walter & Assocs., L.L.C.*, 513 F. Supp. 2d 1041, 1073 (S.D. Iowa 2007).

protection statutes at issue, Plaintiffs are required to plead reliance on an actionable misrepresentation or that an actionable misrepresentation caused their injury" and "[a]s such, Plaintiffs, at the very least, needed to identify an actionable misrepresentation with particularity." (ECF No. 82, PageID.3232). This is false. With the exception of Wisconsin, every state implicitly or explicitly recognizes that an *omission* constitutes a deceptive practice in violation of its respective consumer protection act.[35] Ford fails to address Plaintiffs' fraudulent omission allegations.[36]

---

[35] *See, e.g.*, AL: *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 406 (S.D.N.Y. 2017); AK: Alaska Stat. § 45.50.471(12); AZ: *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016); AR: *Pleasant*, 2018 Ark. App. 254, 7 (2018); CO: *Schmaltz v. Smithkline Beecham Corp.*, 2009 WL 1456723, at *2 (D. Colo. May 21, 2009); CA: *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014); CT: *Langan*, 95 F. Supp. 3d at 288; DE: *Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222, at *2 (Del. Super. Ct. Apr. 1, 2010); FL: *Zlotnick v. Premier Sales Group, Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007); GA: *In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 1222, 1227 (N.D. Ga. 2018); HI: *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262 (2006); ID: *In re Edwards*, 233 B.R. 461, 470 (Bankr. D. Idaho 1999); IL: *2500 Lakeview Ass'n v. Euchem, Inc.*, 1997 WL 126857, at *1 (N.D. Ill. Mar. 17, 1997); IN: *Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1026 (N.D. Ind. 2020); IA: *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015); KS: *In re Motor Fuel Temperature Sales Practices Litig.*, 867 F. Supp. 2d 1124, 1140 (D. Kan. 2012); KY: *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 131 (Ky. Ct. App. 1998); LA: *Jones v. Herlin*, 2013 WL 823420, at *3 (W.D. La. Mar. 6, 2013); ME: *Campbell v. First Am. Title Ins. Co.*, 644 F. Supp. 2d 126, 134 (D. Me. 2009); MD: *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505, 535 (D. Md. 2011); MA: *Greenery Rehabilitation Group, Inc. v. Antaramian,* 36 Mass. App. Ct. 73, 78 (1994); MI: *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 855 (S.D. Ohio 2012); MN: *McQueen v. Yamaha Motor Corp., U.S.A.*, 2020 WL 5630006, at *7 (D. Minn. Sept. 21, 2020); MS: *In re Intel Corp. CPU Mktg., Sales Practices & Prod. Liab. Litig.*, 2020 WL 1495304, at *27 (D. Or. Mar. 27, 2020); NE: *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, 2008 WL 4866604, at *22 (D. Neb. Nov. 7, 2008); NV: *Poole v. Nevada Auto Dealership*

Instead of addressing the nuances of each state's law, Ford improperly relies on its appendices. (ECF No. 82, PageID.3232-3233). This is insufficient: "Courts are not responsible for combing through appendices in an attempt to *sua sponte* raise and resolve legal arguments which the parties have not briefed." *Counts*, 237 F. Supp. 3d at 594 (concluding "[t]he appendices do not directly raise legal arguments, and thus those cases and arguments will not be systematically addressed by the Court.").[37]

Moreover, Ford fails to prove that *each state's* consumer protection law obligates the Plaintiffs to meet any heightened pleading standard. Not every state

*Investments, LLC*, 135 Nev. 280, 284 (Nev. App. 2019); NH: *Moulton v. Bane*, 2016 WL 1091093, at \*13 (D.N.H. Mar. 21, 2016); NJ: *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 652 (D.N.J. 2013); NM: *DeFrank v. Samsung Elecs. Am., Inc.*, 2020 WL 6269277, at \*7 (D.N.J. Oct. 26, 2020); NY: *Bildstein v. MasterCard Int'l, Inc.*, 2005 WL 1324972, \*10–11 (S.D.N.Y. June 6, 2005); NC: *Kron Med. Corp. v. Collier Cobb & Assocs., Inc.*, 107 N.C. App. 331, 339 (1992); ND: N.D. Cent. Code § 51–15–02; OH: *Intel*, 2020 WL 1495304, at \*27; OK: *Parks v. AT&T Mobility, LLC*, 2011 WL 102543, at \*4 (W.D. Okla. Jan. 12, 2011); OR: *Harney v. Associated Materials, LLC*, 2018 WL 468303, at \*7 (D. Or. Jan. 18, 2018); PA: *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002); RI: *Motley v. Jaguar Land Rover N. Am., LLC*, 2012 WL 5860477, at \*15 (Conn. Super. Ct. Nov. 1, 2012); SC: *Wright v. Craft*, 372 S.C. 1, 23 (Ct. App. 2006); SD: S.D. Codified Laws § 37-24-6(1); TN: *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 796 (E.D. Tenn. 2009); TX: Tex. Bus. & Com. Code Ann. § 17.46(24); UT: Utah Code § 13-11-4(2)(b); VT: *Gregory v. Poulin Auto Sales, Inc.*, 2012 VT 28, ¶ 12, (2012); VA: *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001); WA: *In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 5629790, at \*36 (E.D. Va. Sept. 18, 2020); WV: *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 292–93 (N.D. Cal. 2017); WY: Wyo. Stat. Ann. § 40-12-105(a)(xv).

[36] *See* Section IX, *supra*.

[37] S*ee also In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 1015 (rejecting "Defendants' attempt to make argument via the joint appendix" where, as here, defendant claimed "Plaintiffs fail to adequately allege reliance" and "Plaintiffs fail to allege a deceptive act, omission, or practice.").

requires consumer protection claims to be alleged with particularity, as Ford improperly suggests. *See, e.g.*, *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (recognizing "a categorical rule that [New York General Business Law § 349] claims, regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations … are not subject to the heightened pleading requirement of Rule 9(b)"); *see also McKie v. Sears Protection Co.*, 2011 WL 1587103 (D. Or. Apr. 27, 2011) (finding that Rule 9(b) did not apply because Oregon UTPA claims are distinguishable from common law fraud claims); *Pleasant v. McDaniel*, 2018 Ark. App. 254, 7 (2018) ("An action under the [Arkansas] DTPA is not a 'fraud' action" subject to Rule 9(b).).

Second, Ford's contention that the "[d]issemination of EPA-estimated fuel-economy figures has been widely held as insufficient to support consumer protection claims" is itself "misguided." (ECF No. 82, PageID.3233). Ford's authority stands for the narrow proposition "that the *mere* use of EPA estimates, as opposed to any other supposed estimates of 'actual' fuel-economy, are not actionable." *Ford Fusion*, 2015 WL 7018369, at *32 (emphasis added). However, even Ford's authority recognizes "additional" representations that go beyond EPA estimates are sufficient to establish claims "even under the strict requirements of Rule 9(b)." *Id.*; *see also Ford Fusion*, at *32-33 (finding that plaintiffs' claims "have sufficiently distinguished [] additional representations from the mere use of EPA estimates" in alleging actionable consumer

-68-

protection claims).

Third, Plaintiffs' have alleged reliance on misrepresentations *other* than EPA estimates. For example, Ford falsely claimed the Class Vehicles were "most fuel efficient" and "best in class" for fuel economy – in other words better than the competition to induce sales – in places like Ford's website, dealer brochures and sales pamphlets, television and radio commercials, and/or on the Vehicle's window Stickers. (*See* ¶¶ 11, 17-22, 414-415, 456, 462-470). Each Plaintiff selected and ultimately purchased or leased his/her vehicle, in part, because of reliance on such "best in class" and/or other representations *notwithstanding* EPA mileage estimates concerning fuel economy.[38]

### ii. Plaintiffs can pursue class claims under all states' consumer protection statutes

Ford's attempt to dismiss consumer protection claims from Alabama, Arkansas, Georgia, Louisiana, Mississippi, Montana, Ohio, South Carolina, Tennessee, and Virginia by relying on state statutory provisions that purportedly bar class actions is foreclosed by Fed. R. Civ. P. 23. Specifically, Rule 23 displaces state statutory provisions precluding class actions because Rule 23 governs procedure in a diversity action such as this one. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 599-600 (E.D. Mich. 2018).

---

[38] (¶¶ 30, 38, 46, 54, 62, 68-70, 78, 86, 94, 102, 110, 118, 126, 134, 142, 150, 158, 166, 174, 182, 190, 198, 206, 214, 222, 230, 238, 244-246, 254, 262, 270, 278, 285, 293, 301, 309, 317, 325, 331-333, 341, 349, 357, 365, 373, 381, 389)

Accordingly, courts routinely reject Ford's argument. *See, e.g., Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018) (denying motion to dismiss GFBPA claims because "[s]tate statutes, like the GFBPA, 'precluding class actions for specific kinds of claims conflict with Rule 23 and so [are] displaced for claims in federal court so long as applying Rule 23 does not abridge, enlarge or modify any substantive right.'") (quoting *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015)); *In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304, 1322 (S.D. Fla. 2020) (finding that class claims under the consumer protection laws of Alabama, Arkansas, Georgia, Louisiana, Tennessee, and Virginia can proceed); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1107 (S.D. Fla. 2019) (finding that Rule 23 permits assertion of a class claim under the Tennessee Consumer Protection Act); *In re Myford Touch*, 2016 WL 7734558, at *27 (certifying claim for violation of the Virginia Consumer Protection Act).[39]

### iii. Plaintiffs can pursue claims under the Iowa and Mississippi Consumer Protection statutes

Plaintiffs' Iowa and Mississippi claims are not precluded at this time. Ford

---

[39] *See also Andren v. Alere, Inc.*, No. 16-1255, 2017 WL 6509550, at *22 (S.D. Cal. Dec. 20, 2017) ("[A] representative action for monetary relief is not barred under Georgia or Colorado law.") (collecting cases applying Rule 23); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("Rule 23 governs Plaintiffs' claims [under the consumer protection laws of Georgia, Louisiana, Montana, South Carolina, and Tennessee] and are not subject to dismissal based on the state statutes prohibiting class actions").

incorrectly argues that Plaintiffs need approval from Iowa's Attorney General to pursue a class action. However, the *FCA Monostable* decision in this District found no authority "on point from any jurisdiction holding that Iowa Code § 714H.7 should be applied to bar a consumer class action in federal court, and [Ford] cites none." *In re FCA Monostable*, 355 F. Supp. 3d at 600 (E.D. Mich. 2018).

Additionally, whether the Mississippi Consumer Protection Act claim must be dismissed for failure to comply with Mississippi's requirement of participation in settlement programs "boils down to [a question of] federalism" and "is an issue that need not be faced until the certification stage." *Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *16 (D.N.J. June 25, 2020) (upholding claim where "[t]he elements of a cause of action [were] set forth" despite alleged settlement program requirement).[40]

### iv.   Plaintiffs' Claims are Not Exempt under the Michigan CPA

Michigan Plaintiffs allege violations of the MCPA on behalf of the Michigan Subclass (Count 130). The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." (¶ 1976). Plaintiffs allege that Ford violated the MCPA by, among other acts, willfully failing to disclose the vehicles do not have the advertised fuel economy and that the fuel economy was worse than a reasonable consumer would expect (¶¶ 1979-1981, 1988).

---

[40] In any event, Ford's authority acknowledges any purported insufficiency with respect to these statutory notice provisions can be cured. *In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 1016, 1023.

Ford argues that Plaintiffs MCPA claims are barred because a statutory exception provides that the Act does not apply to "[a] transaction or conduct *specifically authorized* under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a) (emphasis added). But that exemption is narrow, and this Court has already held that "[a]n analysis of whether claims are barred by the exemption requires the identification and careful consideration of the specific statute that purports to authorize the transaction at issue." *In re GM AC*, 406 F. Supp. 3d at 642-43 (declining to hold the exemption bars MCPA claim in the absence of detailed statutory analysis).

Ford fails to make such an analysis here and fails to cite to *any* specific state or federal regulation that purportedly regulates the conduct at issue–much less one that meets the exemption's requisite criteria (*e.g.*, a law administered by a regulatory board or officer). Ford's unsubstantiated assertion that Plaintiffs' MCPA claim is exempt–with no recitation to an applicable statute–is deficient. *Id.* ("In the absence of such a detailed statutory analysis, the Court declines to hold, at this time, that the exemption bars [plaintiff's] MCPA claim.").

E.    **Plaintiffs Properly Pled Their Breach of Contract Claims**

Plaintiffs alleged that they bought or leased a Ford vehicle from an authorized Ford dealership (*see, e.g.*, ¶ 29); Plaintiffs need not allege a direct relationship with

Ford to sufficiently plead their breach of contract claims against Ford. *See Bledsoe*, 378 F. Supp. 3d at 645 (finding plaintiffs stated plausible claims by alleging that the vehicle sale is a "contract"; they purchased the vehicles based on defendant's advertisements of low-emissions and high fuel economy and defendant installed a defeat device to circumvent emissions and fuel economy regulations). Plaintiffs' allegations are similar to *Bledsoe* and should not be dismissed. *See*, *e.g.*, ¶¶ 28-35 (Plaintiff's vehicle purchase, and representations about the vehicle's performance and fuel economy), (*e.g.*, ¶¶ 515-519 (breach of contract, including lower fuel economy than advertised)).

### F.    Plaintiffs Properly Pled Their Unjust Enrichment Claims

Plaintiffs allege that Ford charged higher prices for the Vehicles which exceeded their true value (*See, e.g.*, ¶¶ 31-34). Ford enjoyed and wrongfully obtained profits that would be inequitable and unjust for Ford to retain. (*See, e.g.*, ¶¶ 562-63, 3995-96). *See* also *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1015 (denying motion to dismiss, noting that "when stripped to its essence, a claim of unjust enrichment requires [plaintiffs] to allege sufficient facts to show that Defendants received a benefit and under the circumstances of the case, retention of the benefit would be unjust").

Citing as examples California and Texas, Ford wrongly argues, without more,

that Plaintiffs' unjust enrichment claims have variations in state laws.[41, 42] (ECF No. 82, PageID.3253); *Francis*, 2020 WL 7042935, at *23 (holding same under the laws of 33 states).[43] *See also In re Auto. Parts*, 29 F. Supp. 3d at 1029 ("the allegations in the complaints before the Court create a reasonable inference of unjustness regardless of the particularities of any state law").

Ford also argues that "other states" require Plaintiff to plead that there is no adequate remedy. (ECF No. 82, PageID.3254). However, Rule 8(a)(3) permits pleadings in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Solo v. UPS Co*., 819 F.3d 788, 796 (6th Cir. 2016). Plaintiffs are not required to establish they do not have an adequate remedy at law on the pleadings. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 229 (E.D. Mich. 2020) (denying motion to dismiss where defendant never conceded the warranty in question covered the defect, and the pleading of the restitution claim was in the alternative).

Direct privity is not required under Florida, Georgia, New Jersey, or New York

---

[41] Ford claims the "deficiencies" in Plaintiffs' claims are "laid out more fully in Appendix A," but the Appendix merely recites the elements of a claim and does not include a discussion of any specific claims. (ECF No. 82, PageID.3255).

[42] Contrary to Ford's brief, California and Texas recognize unjust enrichment. *See Cottrell v. AT&T Inc.,* 2020 WL 4818606, at *4 n.4 (N.D. Cal. Aug. 19, 2020); *Newington v. Forrester*, 2008 WL 4908200, at *4 (N.D. Tex. Nov. 13, 2008).

[43] *See also In re Auto. Parts*, 29 F. Supp. 3d at 1015-27 (collecting cases and holding same for multiple states); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 867-68 (E.D. Mich. 2014) (same under Utah law); *Maggard v. Essar Global Ltd.*, 16 F. Supp. 3d 676, 688 (W.D. Va. 2014).

law.[44] Plaintiffs allege facts that go to privity, including Ford's NVLW and Ford's direct marketing to Plaintiffs and Class members. (*See, e.g.*, ¶¶ 19-20, 30, 396, 523-24, 592-93). The Court should deny Ford's motion to dismiss Plaintiffs' unjust enrichment claims.

## X. CONCLUSION

For the foregoing reasons, Ford's motion to dismiss should be denied.

DATED: January 8, 2021　　　　　Respectfully Submitted,

**THE MILLER LAW FIRM, P.C.**
By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI  48307
(248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

*Interim Lead Counsel for Plaintiffs
and the Class*

---

[44] *Kowalski v. Jackson Nat'l Life Ins. Co.*, 2013 WL 11941583, at *4-5 (S.D. Fla. Aug. 30, 2013); *Amin*, 349 F. Supp. 3d at 1362; *DeFrank*, 2020 WL 6269277, at *23; *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010).

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Christopher R. Pitoun
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
(213) 330-7150
christopherp@hbsslaw.com

**DICELLO LEVITT GUTZLER LLC**
Adam J. Levitt
John E. Tangren
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com

*Additional Counsel for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 8, 2021 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will notify all counsel of record authorized to receive such filings.

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com