# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In RE: FORD MOTOR CO. F-150 AND RANGER TRUCK FUEL ECONOMY MARKETING AND SALES PRACTICES LITIGATION | Case No.: 2:19-md-02901 |
| | Hon. Sean F. Cox |
| This Document Relates To: All Actions | |

# DEFENDANT FORD MOTOR COMPANY'S REPLY
# IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED
# CONSOLIDATED MASTER CLASS ACTION COMPLAINT PURSUANT
# TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 12(B)(1)

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   ARGUMENT.........................................................................................2

A.    Plaintiffs' claims are preempted by federal law.............................................2

    i.    Plaintiffs misrepresent precedent supporting dismissal. ...........................2

    ii.   Plaintiffs' claims are expressly preempted. ..........................................5

    iii.  Plaintiffs' claims are impliedly preempted. .........................................8

B.    Plaintiffs lack a justiciable claim. ......................................................9

    i.    Plaintiffs lack standing to directly or indirectly enforce the EPCA..............9

    ii.   Plaintiffs lack a cognizable injury-in-fact.................................................13

    iii.  Plaintiffs lack standing to assert claims arising under the laws of states without a named plaintiff.............................................................14

C.    Plaintiffs' claims should be stayed or dismissed pursuant to the doctrine of primary jurisdiction............................................................................15

D.    Plaintiffs' claims do not satisfy Rules 8(a) or 9(b). ....................................18

E.    Plaintiffs' Consumer Fraud and Consumer Protection Claims Fail...........21

    i.    Plaintiffs have not alleged facts to support the violation of any state consumer fraud or consumer protection statute....................................21

    ii.   Plaintiffs cannot raise class-wide claims in states where consumer protection statutes bar class actions......................................................24

    iii.  Ford's compliance with FTC regulations and pre-suit approval requirements bars many of Plaintiffs' claims. ....................................25

F.    Plaintiffs Cannot Sustain a Breach of Contract Claim...............................26

G.    Plaintiffs Fail to Allege Fraudulent Concealment.......................................28

H.    Plaintiffs' Express Warranty Claims Fail ...................................................30

I.    Plaintiff Cannot Sustain an MMWA Claim .................................................32

J.    Plaintiffs Fail to State Claims for Fraud or Negligent Misrepresentation .....35

K.    Plaintiffs' Unjust Enrichment Claims Fail..................................................36

III.  CONCLUSION .....................................................................................37

# INDEX OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)............................................................................10

*Bhatt v. Mercedes-Benz USA, LLC,*
  No. 16-3171, 2018 WL 5094932 (C.D. Cal. Apr. 16, 2018)................................34

*Bledsoe v. FCA US LLC,*
  378 F. Supp. 3d 626 (E.D. Mich. 2019) ........................................................ 27, 29

*Buckman Co. v. Plaintiffs' Legal Comm.,*
  531 U.S. 341 (2001)........................................................... 10, 11, 21

*Counts v. Gen. Motors, LLC,*
  237 F. Supp. 3d 572 (E.D. Mich. 2017) ........................................................29

*Davis v. United Airlines, Inc.,*
  575 F. Supp. 677 (E.D.N.Y. 1983) .............................................................11

*Ford Fusion & C-Max Fuel Economy Litigation,*
  No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ....................... passim

*Ford Fusion & C-Max Fuel Economy Litigation,*
  No. 13-2450, 2017 WL 3142078 (S.D.N.Y. Jul. 24, 2017) ........................ passim

*Gant v. Ford Motor Co.,*
  No. 19-12553, 2021 WL 364250 (E.D. Mich. Feb. 3, 2021) .............................25

*Gilles v. Ford Motor Co.,*
  24 F. Supp. 3d 1039 (D.Colo. 2014)............................................... 16, 17

*Gray v. Toyota Motor Sales, USA,*
  No. 08-cv-1690, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd,* 554 F. App'x
  608 (9th Cir. 2014)...............................................................................22

*Greer v. Fed. Express Corp.,*
  66 F. Supp. 2d 870 (W.D. Ky. 1999)..............................................................35

*Harris v. Adams,*
  873 F.2d 929 (6th Cir. 1989) ....................................................................11

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg. Sales Prac. Litig.,*
  295 F. Supp. 3d 927 (N.D. Cal. 2018)..............................................................26

*In re GM Air Conditioning Litig.,*
  406 F. Supp. 3d 618 (E.D. Mich. 2019) ............................................................29

*In re Refrigerant Compressors Antitrust Litigation,*
  No. 09-2042, 2012 WL 2917365 (E.D. Mich. Jul. 17, 2012)...............................15

*In re Scotts EZ Seed Litig.*,
  No. 12-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013)................................33

*Kuns v. Ford Motor Co.*,
  543 Fed. App'x 572 (6th Cir. 2013) ....................................................34

*Martin v. Behr Dayton Thermal Prods. LLC*,
  No. 08-326, 2011 WL 4073703 (S.D. Ohio Sept. 13,2011).................................18

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ................................................24

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
  No. 08-7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008) ...............................12

*Northampton Restaurant Grp., Inc. v. FirstMerit Bank, N.A.*,
  492 Fed. App'x 518 (6th Cir. 2012) ....................................................27

*Paduano v. Am. Honda Motor Co., Inc.*,
  169 Cal. App. 4th 1453 (2009) ............................................... 7, 22, 31

*Persad v. Ford Motor Co.*,
  No. 17-12599, 2018 WL 3428690 (E.D. Mich. Jul. 16, 2018)...................... 29, 34

*Raymo v. FCA US LLC*,
  475 F. Supp. 3d 680 (E.D. Mich. 2020) ................................................23

*Sanchez v. Ford Motor Co.*,
  No. 13-1924, 2014 WL 2218278 (D. Colo. May 29, 2014) .............................7, 30

*Santilli v. JPMorgan Chase Bank, N.A.*,
  No. 14-12359, 2014 WL 6675327 (E.D. Mich. Nov. 25, 2014) .........................27

*Silkwood v. Kerr-McGee Corp.*,
  464 U.S. 238 (1984)......................................................................8

*Smith v. Gen. Motors LLC*,
  No. 19-1614, --- F.3d. ---, 2021 WL 631475 (6th Cir. Feb. 18, 2021) ......... 21, 35

*Stoll v. Kraft Foods Global, Inc.*,
  No. 09-364, 2010 WL 3702359 (S.D. Ind. Sept. 6, 2010) ...............................18

*Temple v. Fleetwood Enters., Inc.*,
  133 F. App'x 254 (6th Cir. 2005) ......................................................33

*Thiedemann v. Mercedes-Benz USA, LLC*,
  183 N.J. 234 (2005) ...................................................................14

*Thorn v. Medtronic Sofamor Danek, USA, Inc.*,
  81 F. Supp. 3d 619 (W.D. Mich. 2015) .................................................25

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010)................................................34

*Whitlock v. FSL Mgmt., LLC,*
  843 F.3d 1084 (6th Cir. 2016) ....................................................... 24, 25
*Yung Kim v. Gen. Motors, LLC,*
  99 F. Supp. 3d 1096 (C.D. Cal. 2015) .............................................7, 23

## Statutes

15 U.S.C. § 2310(a)(3) ..................................................................................35
15 U.S.C. § 2310(e) ................................................................................ 34, 35
28 U.S.C. § 2072(b) ......................................................................................25
49 U.S.C. § 32911 .........................................................................................10
49 U.S.C. § 32912 .........................................................................................10
49 U.S.C. § 32919(b) ............................................................................ passim
Ala. Code § 8-20-4 .......................................................................................27
Fla Stat. § 320.61 ..........................................................................................27
Mich. Comp. Laws § 445.1574(h) ...............................................................27

## Rules

Fed. R. Civ. P. 8(a) .......................................................................................22
Fed. R. Civ. P. 9(b) .......................................................................... 5, 22, 28

## Regulations

16 C.F.R. §700.3 ...........................................................................................33
71 Fed. Reg. 77874 .......................................................................... 3, 6, 9, 29
71 Fed. Reg. 77914 .........................................................................................9
76 Fed. Reg. 39478 .........................................................................................9
76 Fed. Reg. 39505 ....................................................................................9, 29

## I.     INTRODUCTION

Plaintiffs admit that all 311 counts of the sprawling ACAC are premised on Ford's failure to calculate the "true fuel economy" for the subject vehicles and its provision of "inaccurate" fuel economy estimates. *See, e.g.*, ECF No. 78, PageID.2064 at ¶ 31 ("Had Ford disclosed the true fuel economy . . . Plaintiff[s] would not have purchased the vehicle or would have paid less for it."); ECF No. 78, PageID.2066 at ¶ 41 ("inaccurate fuel economy representations"); *accord* ECF 85, PageID.3304 ("Ford concealed the true [fuel economy] figures and advertised false ones"). This logically flawed premise, standing alone, warrants dismissal of the ACAC with prejudice as preempted by federal law. *See generally* ECF No. 82, PageID.3209-3215. Plaintiffs do not seriously dispute this. Instead, they use their opposition brief to distort precedent concerning this *exact* issue and confuse (if not mischaracterize) their own allegations. That will not do. A straightforward application of critical authority and federal law compels dismissal.

Plaintiffs also concede that they lack standing to proceed against Ford under the laws of 22 states where no named Plaintiff is alleged to reside or have been injured. And Plaintiffs only half-heartedly oppose Ford's case-dispositive arguments that dismissal is warranted because their claims are premised on a violation of the EPCA and they fail to sufficiently allege a cognizable injury-in-fact. Nor do Plaintiffs muster a legitimate response to Ford's invocation of the EPA's primary

1

jurisdiction that precludes this Court from substituting its judgment for the special expertise of the EPA.  The same is true for Plaintiffs' opposition to Ford's claim-specific defenses, where Plaintiffs do not even confront many of Ford's arguments. For example, Plaintiffs do not dispute that Ford's compliance with FTC marketing guidelines or pre-suit approval requirements foreclose most of their consumer protection claims. This lack of rigor permeates Plaintiffs' opposition brief.

Plaintiffs have now taken three bites at the apple. They have filed individual complaints, a master consolidated complaint, and, after reviewing Ford's motion to dismiss (ECF 73), an amended consolidated complaint. Allowing a fourth bite would be fruitless after Plaintiffs have been unwilling to even once meaningfully alter their allegations. The ACAC should therefore be dismissed in its entirety with prejudice.

## II.    ARGUMENT

### A. Plaintiffs' claims are preempted by federal law.

#### i.  Plaintiffs misrepresent precedent supporting dismissal.

This Court should be guided by Judge Karas' preemption analysis in *In re Ford Fusion & C-Max Fuel Economy Litigation* ("*C-Max*").[1] There, the court was confronted with the *exact* question Plaintiffs present here: whether federal law, particularly 49 U.S.C. § 32919(b), preempts state law claims premised on a manufacturer's use of EPA estimates in advertisements or on Monroney labels as

_____

[1] *See* No. 13-2450, 2017 WL 3142078 (S.D.N.Y. Jul. 24, 2017) ("*C-Max II*"); No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ("*C-Max I*").

opposed to some other "actual" fuel economy calculation. *C-Max I*, 2015 WL 7018369 at *27; *C-Max II*, 2017 WL 3142078 at *9. The court explained that federal law does not require a manufacturer to "independently test and disclose the fuel economy of [a vehicle] to determine its 'actual' performance"—a figure that, if it exists at all, varies widely from driver to driver. *See* 71 Fed. Reg. at 77874 ("It is important to emphasize that fuel economy varies from driver to driver for a wide variety of reasons."). For this reason, the court concluded that preempting plaintiffs' state law claims under 49 U.S.C. § 32919(b) was appropriate. In so doing, the court recognized that requiring a vehicle manufacturer to determine and distribute "actual" fuel economy figures would impermissibly "impose a regime above and beyond that required by [the EPA and FTC] regulations." *C-Max I*, 2015 WL 7018369 at *27; *see also* Section II(B)(iii). Therefore, Plaintiffs could not state a claim based on the accuracy of Monroney label or mere use of EPA-mandated estimates in advertising. *See C-Max I*, 2015 WL 7018369 at *27; *C-Max II*, 2017 WL 3142078 at *9.

*C-Max* remains on all fours and supports dismissal of Plaintiffs' ACAC in its entirety with prejudice. As in *C-Max*, Plaintiffs here seek to hold Ford liable for not producing "actual"—or, in this case, "true"—fuel economy figures. *See, e.g.*, ECF No. 78, PageID.2064, 2066 at ¶¶ 31, 41; ECF No. 85, PageID.3304, 3336-3337 ("Ford had a duty under state law to disclose the true fuel economy" of class vehicles). While Plaintiffs may blind themselves to the fact that no such figure exists,

this Court should reject Plaintiffs' contention that the *C-Max* court, or any court, would greenlight any and all false advertising claims premised on EPA fuel economy estimates. Rather, the *C-Max* court unambiguously held that false advertising claims premised on the mere use of EPA-estimates—as opposed to "guarantees of specific, real-world performance"—are preempted. *C-Max II*, 2017 WL 3142078 at *9, 11.[2]

Here, mere use of EPA estimates is all Plaintiffs allege. Every Ford-produced advertisement cited by Plaintiffs contains the FTC-required disclaimer that actual fuel economy performance "will vary" and *none* contains a representation of real-world performance. *See, e.g.*, ECF No. 78-14, PageID.3072; *accord C-Max II*, 2017 WL 3142078 at *11 ("[Ford's] representations are based entirely on [] EPA-estimated MPG, as is evident from . . . the footnote," containing the FTC disclaimer).

In a further attempt to distract from *C-Max*, Plaintiffs claim, without analysis that Ford ignores "the raft of cases involving emissions cheating." ECF No. 85, PageID.3317. But that is for good reason. Unlike the *emissions* information at issue in those cases, where direct disclosure to consumers is neither mandated nor regulated, this case involves *fuel economy* representations that are both federally mandated and regulated by the EPA and FTC. Even if the emissions cases cited by

---

[2] Applying a presumption against preemption, as Plaintiffs suggest, would not change Ford's reliance on the *C-Max* decision. ECF No. 85, PageID.3319-3320. The *C-Max* court dismissed plaintiffs' claims despite applying a now non-existent "presumption against preemption." *See* ECF No. 82; PageID.3210.

4

Plaintiffs were rightly decided—Ford maintains they are not—they are inapplicable because this disclosure and regulatory context is different. Ford's statements regarding EPA fuel economy estimates are *compelled*, as is its universal disclosure that actual fuel economy performance *will* vary. There is no equivalent requirement for emissions, nor is there an FTC safe-harbor for emissions-related statements as there is for fuel economy estimates. Moreover, there is no allegation here that Ford installed a "defeat device" or similar component part in the subject vehicles with the goal of deceiving regulators and consumers.[3] This is a fuel economy case. And this Court should follow the precedent set in similar, well-reasoned fuel economy cases, like *C-Max*, to find Plaintiffs' claims are preempted by federal law.

### ii.  Plaintiffs' claims are expressly preempted.

Plaintiffs assert that their claims are not expressly preempted by 49 U.S.C. § 32919(b) for three unavailing reasons.

First, Plaintiffs posit that express preemption cannot apply because "Ford fails to address the congressional purpose behind the EPCA." ECF No. 85, PageID.3317.

---

[3] And any suggestion that Ford somehow "cheated" in calculating fuel economy are speculative, conclusory, and untethered from facts needed to satisfy the standard demanded by Rule 9(b). *See infra* Section II(D). It does not follow that Ford "cheated" simply because select employees "were questioning [Ford's] computer modeling and physical test practices." ECF No. 78, PageID.2157 at ¶ 410. This is particularly true here, where the Department of Justice investigation spawned as a result of these employees' questions has concluded without any charge or claim of wrongdoing against Ford. *Id.* (citing ECF No. 78, PageID.2149, 2157-2158, 2166 at ¶¶ 397; 410-411, 430).

That is false. Ford detailed the regulatory scheme imposed by the EPA and FTC governing Ford's fuel economy calculations and advertisements, and also stated the congressional purpose supporting this scheme. *See, e.g.*, ECF No. 82, PageID.3199-3205, 3210; Section II(A)(iii). In any event, even if Ford had not addressed the purpose of the regulatory scheme at issue, *C-Max* certainly did. *See C-Max I*, 2015 WL 7018369 at **26-28. Thus, Plaintiffs' first basis to avoid dismissal is meritless.

Second, while conceding that § 32919(b) preempts state laws that do not mirror the federal fuel economy regime, ECF No. 85, PageID.3323, Plaintiffs posit that their claims are not expressly preempted because they "do not seek to impose any requirements on Ford other than as provided under the federal statute and regulations," ECF No. 85, PageID.3324. This too is false. Plaintiffs seek to hold Ford liable for failing to produce and distribute "true" fuel economy figures. *See, e.g.*, ECF No. 85, PageID.3335-3336 ("Ford had a duty *under state law* to disclose the true fuel economy." (emphasis added)). The production of such figures is not required by the EPCA or any other federal law. *C-Max I*, 2015 WL 7018369 at *27 (explaining that requiring "actual" fuel economy figures would "impose a regime above and beyond that required by [federal law]."). Federal regulators have explained why: "it is impossible to design a 'perfect fuel economy test that will provide accurate, real-world fuel economy estimates for every consumer." 71 Fed. Reg. at 77874. The EPCA thus requires only that Ford publish fuel economy

6

*estimates* in the manner dictated by the FTC. Because Plaintiffs go far beyond the fuel economy requirements imposed by the EPCA by premising their claims on Ford's failure to calculate and distribute "true" fuel economy figures for the subject vehicles, dismissal is required. *See C-Max I*, 2015 WL 7018369 at *27.

Finally, Plaintiffs assert that Ford's "mileage-related marketing campaign[s]" cannot be preempted by § 32919(b). ECF No. 85, PageID.332-3328. Courts disagree. While *C-Max*, *Sanchez*, *Paduano,* and *Yung Kim* allowed claims premised on advertisements that "could lead a reasonable consumer to believe that a vehicle . . . [was] capable of achieving . . . EPA estimates under real-world conditions" to survive a motion to dismiss, those same courts found that claims premised on the advertisement of an "EPA estimate itself" were preempted. *C-Max II*, 2017 WL 3142078 at *9 (citing *Yung Kim v. Gen. Motors, LLC*, 99 F. Supp. 3d 1096, 1104 (C.D. Cal. 2015)).[4] Plaintiffs' claims fit squarely in the latter category.

In sum, Plaintiffs do not cite a single Ford-produced advertisement that could possibly be construed as representing the real-world fuel economy performance of the subject vehicles. To the contrary, in each cited advertisement includes the FTC-mandated disclaimer "actual mileage will vary," *see, e.g.*, ECF No. 78-14,

---

[4] *Sanchez v. Ford Motor Co.*, No. 13-1924, 2014 WL 2218278, at *3-5 (D. Colo. May 29, 2014); *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1477 (2009) (differentiating between claims premised on "disclosing EPA mileage estimates" and "assertions[] beyond the disclosure of the mileage estimates.").

PageID.3072. Therefore, Ford has not falsely represented that real-world fuel economy performance will match EPA estimates but has instead merely disclosed the EPA fuel economy estimates, as required by law. *See C-Max I*, 2015 WL 7018369 at *26-27; *see also C-Max II*, 2017 WL 3142078 at *11. The cited advertisements are nonactionable as a matter of law, and they foreclose all of Plaintiffs' claims.

### iii.  Plaintiffs' claims are impliedly preempted.

The ACAC should also be dismissed as impliedly preempted. Plaintiffs do not dispute that conflict preemption bars state law claims "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248 (1984); *see also* ECF No. 85, PageID.3336. Plaintiffs instead complain that Ford has not adequately "explain[ed] how revealing [true fuel economy] to consumers could mislead consumers" in order to stand as an obstacle to the EPCA's congressional purpose. ECF No. 85, PageID.3337. But Ford need not offer such an explanation; the EPA already has.

The EPA has emphasized that the purpose of its fuel economy estimates is to "provide car buyers with useful information when comparing the fuel economy of different vehicles." 71 Fed. Reg. 77872, 77874 (Dec. 27, 2006). To accomplish this, the EPA has not only promulgated regulations governing uniform calculation of fuel economy estimates, but informs consumers that while these estimates "are a useful tool for comparing the fuel economies of different vehicles," they "may not

accurately predict" a consumer's actual mileage. *EPA Your Mileage Will Vary*, available at https://www.fueleconomy.gov/feg/why_differ.shtml (last visited Feb. 2, 2021); *see also* 71 Fed. Reg. at 77874. The EPA has thus cultivated a "tradition of having a statement on the label" of every vehicle informing the buyer that estimated fuel economy values are not guaranteed. 76 Fed. Reg. 39478, 39505 (Jul. 6, 2011).

Plaintiffs seek to disturb this tradition, obstruct the purpose of the federal regulatory scheme, and demand that Ford do the "impossible"—create and market an actual, real-world fuel economy value. *See* 71 Fed. Reg. at 77874. By doing so, Plaintiffs ask this Court to corrupt the system, carefully created by the EPA and FTC, to calculate and distribute fuel economy estimates in a way that will invite, not minimize, consumer confusion. *Cf. id.* at 77914 ("[W]ithout a long-term, comprehensive public awareness campaign, any changes to the [fuel economy] metric could confuse the public."). This should not be permitted. If Plaintiffs' claims are not expressly preempted, they are impliedly so.

### B. Plaintiffs lack a justiciable claim.

#### i. Plaintiffs lack standing to enforce the EPCA.

Plaintiffs concede that they are using "state consumer protection or common law claims" to prosecute claims premised on "inaccurate" fuel economy estimates. ECF No. 85, PageID.3338. This end run around the EPCA fails as a matter of law.

The EPCA does not contain a *private* right of action. *See* ECF No. 82, PageID.3218. It instead contains a detailed *federal* compliance and enforcement

regime triggered by any potential violation of its terms by a vehicle manufacturer, like Ford. ECF No. 82, PageID.3218 (citing 49 U.S.C. §§ 32911, 32912). This means that consumers, like the Plaintiffs here, are barred from directly enforcing the Act's requirements, including its fuel economy and disclosure requirements. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see also* ECF No. 82, PageID.3218-3219. Thus, this private action, which seeks monetary and equitable relief for alleged violations of the EPCA's fuel economy testing and disclosure requirements and related regulations, should be dismissed outright.[5]

The Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), also precludes any attempt by Plaintiffs to argue that they are not prosecuting a claim under the EPCA because they simply challenge the accuracy of data passed to the EPA used to calculate fuel economy estimates.[6] There, the Court

---

[5] *See, e.g.*, ECF No. 78, PageID.2056 at ¶ 9 ("Testing of the F-150 using the [EPCA] mandated coastdown procedure reveals that Ford did not follow appropriate coastdown testing procedures."); ECF No. 78, PageID.2055 at ¶ 2 ("Ford [] cheated on its fuel economy testing . . . then used inaccurate fuel economy ratings on the window stickers to sell and lease these trucks to consumers."); ECF No. 78, PageID.2056 at ¶ 6 ("Ford fudged its coastdown testing and used inaccurate drag and resistance figures to boost the vehicles' 'EPA' [] mileage ratings.").

[6] *See, e.g.,* ECF No. 78, PageID.2152 at ¶¶ 404 ("[R]esults are sent by Ford to the EPA to be used as the basis for mileage information."); ECF No. 78, PageID.2201 at ¶¶ 488(d) ("Whether Ford provided false information to the EPA regarding the fuel efficiency . . . of…Vehicles."); ECF No. 85, PageID.3310 ("The Vehicles face more resistance under real world driving conditions than what Ford reported to the EPA."); ECF No. 85, PageID.3360 ("[R]oad load forces are some 20-35% higher than the false values reported to the EPA.").

unambiguously held that claims alleging fraud on an agency possessing independent enforcement authority were not cognizable under state law. *Buckman*, 531 U.S. at 347-348. It reasoned that "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied," and a decision to the contrary would conflict with federal regulatory schemes "amply empower[ed] . . . to punish and deter fraud." *Id.* Thus, even if this fraud-on-the-EPA theory of liability is not construed as prosecution of an EPCA violation, it is barred by controlling precedent.

Plaintiffs' current position, that they are *not* prosecuting a violation of the EPCA, also places form over substance. ECF No. 85, PageID.3340. Courts have explained in analogous contexts that permitting an end run around the limited enforcement mechanisms of a federal statute through, for example, state consumer protection laws, would be "inconsistent with the underlying purpose of the [statute's] legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute." *See Davis v. United Airlines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983).[7] This is because plaintiffs cannot create a private right of action where no such right exists. *See* ECF

---

[7] Plaintiffs' sole attack on *Davis* is that it concerns the Vocational Rehabilitation Act and not the EPCA. Plaintiffs do not provide any cogent explanation for why this distinction matters, as neither statute permits a private right of action and plaintiffs there, like here, acknowledged their claims were predicated on a federal statute or scheme. *See Harris v. Adams*, 873 F.2d 929, 932 (6th Cir. 1989) (acknowledging the VRA does not contain a private right of action).

No. 82, PageID.3218-3219. There is no reason to apply a different test to the EPCA, and Plaintiffs cite no case suggesting otherwise. *Cf. Metro. Taxicab Bd. of Trade v. City of N.Y.*, No. 08-7837, 2008 WL 4866021, at *6 (S.D.N.Y. Oct. 31, 2008) (no indication Congress intended EPCA to benefit the individual owner or user).

There is also no question that this action would interfere with the implementation of the administrative scheme developed by the EPCA. *See infra* Section II(C). The EPA—not a federal court—was empowered by Congress to administer, regulate, and enforce the development of fuel economy labels in the U.S. Under this charge, EPA has prescribed exactly how fuel economy must be calculated—from how to measure a vehicle's road load, to how to drive the vehicle over a standard test cycle, to how to group individual test results into a set of overarching fuel economy labels. In fact, EPA is currently evaluating Ford's process for measuring road load. *See* ECF No. 78-3, PageID.3033-3035. Plaintiffs should not be permitted to supplant the Agency's experienced judgment, particularly in light of its current evaluation, with implausible allegations, YouTube videos, and unconfirmed calculations. Nor should they be permitted to create liability for alleged non-compliance with the EPCA using their own methodology for assessing fuel economy that differs from that used by the agency charged with administering this statutory provision.

Finally, Plaintiffs' assertion that they are *not* prosecuting a violation of the

12

EPCA is wholly inconsistent with their argument opposing dismissal for express preemption. While Plaintiffs now claim that they do not seek to prosecute a violation of the EPCA, ECF No. 85, PageID.3340, they oppose dismissal for express preemption by arguing that they seek to "impose . . . requirements on Ford . . . provided under the federal statute [(*i.e.*, the ECPA)] and regulations," ECF No. 85, PageID.3324. Both cannot be true. Either Plaintiffs seek to prosecute claims for violations of the EPCA and lack standing, or their claims are raised under state law and are preempted. *See supra* Section II(A)(ii).

### ii.  Plaintiffs lack a cognizable injury-in-fact.

Plaintiffs claim they suffered a cognizable injury in fact, sufficient to support Article III standing, because they alleged "out-of-pocket" losses. ECF No. 85, PageID.3341. Yet the ACAC is devoid of any plausible allegation of such a loss. It is instead littered with bare allegations suggesting Ford failed to deliver on its promise to provide a specific fuel economy for each vehicle, which resulted in increased fuel costs and a lower resale value. But Ford made no such promise. Plaintiffs received exactly what they bargained for: a vehicle with estimated, *not* guaranteed, fuel economy performance using mileage estimates prescribed by the EPA. *See, e.g.,* ECF No. 78-14, PageID.3072 ("EPA-estimated ratings . . . . Actual mileage *will* vary." (emphasis added)). Thus, Plaintiffs have not suffered an injury-in-fact and their claims should be dismissed for lack of Article III standing. ECF No.

13

82, PagID.3221 (collecting cases).[8]

The same result should follow for Plaintiffs who leased their vehicles and "may be underwater in their financing at the conclusion of the lease." ECF No. 5, PageID.3345; *see also* ECF No. 82, PageID.3221-3222 (identifying lessee Plaintiffs). No such allegation exists in the ACAC, unsurprisingly, because the lessee owes no money at the end of a lease and the lessor assumes all risk of loss. *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 253 (2005) ("[T]he party who receives back the leased vehicle [(*i.e.* the dealer)] is the one that [] receives a vehicle having some diminution in future value."). Courts routinely dismiss actions by lessees seeking diminution of value damages. *See* ECF No. 82, PageID.3222.

### iii. Plaintiffs lack standing to assert claims arising under the laws of states without a named plaintiff.

Plaintiffs assert state law claims under the laws of each State, but do not name a plaintiff from or injured in 22 of those States. Plaintiffs therefore lack standing to pursue claims under the laws of those states. *See* ECF No. 82, PageID.3224-3225. Plaintiffs acknowledge this deficiency but assert that dismissal would be "premature." ECF No. 85, PageID.3346. That is contrary to the weight of authority and recent rulings by this Court.

In a decision ignored by Plaintiffs, *In re Refrigerant Compressors Antitrust*

---

[8] The cases cited by Plaintiffs concerning emissions "cheating" do not provide the appropriate analytical framework to assess this issue. *See supra* Section II(A)(i).

*Litigation*, this Court evaluated whether it "should [] consider the Constitutional standing issue" associated with plaintiffs' failure to identify a named plaintiff in each state before class certification. No. 09-2042, 2012 WL 2917365, at *4 (E.D. Mich. Jul. 17, 2012) (Cox, J.). This Court concluded that it should and dismissed all claims asserted under the laws of states without a named plaintiff. *Id.*; s*ee also* ECF No. 82, PageID.3224-3225 (collecting cases). The same result should follow here.

### C. Plaintiffs' claims should be stayed or dismissed pursuant to the doctrine of primary jurisdiction.

The Court should also decline to exercise jurisdiction over this case based on the doctrine of primary jurisdiction. Plaintiffs agree that primary jurisdiction bars an action within the special competence of an agency having an interest in the "uniformity and accuracy" of administrative policy. *See* ECF No. 82, PageID.3329-3230; *see also* ECF No. 85, PageID.3348. They say it is not implicated here. They are mistaken.

First, Plaintiffs wrongly assert that their claims do not require the Court to confront the complex and technical questions related to the proper calculation of fuel economy estimates. ECF No. 85, PageID.3348-3349. Plaintiffs admit that they must prove that Ford's fuel economy estimates were "inaccurate." *See, e.g.*, ECF No. 85, PageID.3279 ("[T]his Court has jurisdiction over cases challenging false and misleading advertising related to *inaccurate* fuel economy ratings." (emphasis added)). Yet they fail to explain how this Court could assess the accuracy of the

estimates without first assessing the underlying fuel economy calculations.

Second, Plaintiffs suggest that the Court is capable of conducting the complex calculations necessary to determine the accuracy of Ford's fuel economy estimates. ECF No. 85, PageID.3349. They posit that all issues related to the advertisement of fuel economy estimates are "conventionally left to the courts to answer." ECF No. 85, PageID.3349.  Plaintiffs cite no law to support their belief that this Court (or a jury) can substitute its judgment for the EPA's special expertise—as its investigation is not yet closed[9]—and can forsake the uniform administration of fuel-economy policy in the process. It cannot. *See, e.g.*, *C-Max I*, 2015 WL 7018369, at *30; *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039,1050 (D. Colo. 2014).

*C-Max* is instructive. There, the court dismissed false advertising claims based on the doctrine of primary jurisdiction. The court explained that any analysis concerning the accuracy of fuel economy estimates—or the methods used to derive those estimates—would "directly implicate[] the methods devised by the EPA." *C-Max I*, 2015 WL 7018369, at *30. Therefore, it could not "pass[] judgment on whether there is a way to [accurately] calculate fuel economy for [a vehicle]," and dismissal was warranted. *Id.* The *Gilles* court held the same, acknowledging that

---

[9] Plaintiffs acknowledge that the EPA's review of Ford's internal investigation into issues related to road load estimations (and therefore fuel economy estimates) remains open. Plaintiffs also concede that parallel investigations by the U.S. Department of Justice and the California Air Resources Board have closed without any finding of wrongdoing by Ford. *See* ECF No. 85, PageID.3311.

16

claims attacking the "accuracy of EPA estimates," even those within an advertisement, fall within the EPA's "special competence." *Gilles*, 24 F. Supp. 3d at 1050. Plaintiffs' false advertising claims, predicated on a finding that Ford's EPA estimates are "inaccurate," should be barred.  ECF No. 85, PageID.3279.

It is true that the *C-Max* and *Gilles* courts refused to bar advertising claims insofar as those claims were premised on false "guarantees of real-world fuel economy" or contained representations about fuel economy untethered from EPA-approved estimates. *See, e.g.*, *C-Max I*, 2015 WL 7018369, at *30; *Gilles*, 24 F. Supp. 3d at 1050. But Plaintiffs do not identify any such representations here. Plaintiffs do not plausibly allege that Ford produced or distributed a single advertisement guaranteeing *real-world* fuel economy. *Compare C-Max I*, 2015 WL 7018369, at *21 (detailing "marketing campaign [] designed to convey [a vehicle's] real world" fuel economy) *with* ECF No. 78, PageID.2060 at ¶ 19 ("The all-new Ranger has earned EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mpg combined for 4x2 trucks."). Nor do they plausibly allege that Ford produced or distributed any advertisements that represented fuel economy figures as anything but estimates. *See, e.g.*, ECF No. 78-14, PageID.3071-3094; ECF No. 78-19, PageID.3113; ECF No. 78-21, PageID.3119-3153.[10] This Court should

---

[10] Many exhibits cited by Plaintiffs were not produced by Ford. For example, Plaintiffs cite to articles published by "The Newswheel" and "Car and Driver." *See*

follow *C-Max* and *Gilles* and find that claims predicated on the accuracy (or inaccuracy) of Ford's fuel economy estimates are barred by primary jurisdiction.

Finally, Plaintiffs suggest that the application of primary jurisdiction is inappropriate because the EPA cannot provide them with the monetary relief they seek. ECF No. 85, PageID.3348. Some courts have refused to stay or dismiss an action in deference to an agency's primary jurisdiction when a plaintiff demands monetary damages.[11] But those cases involve statutes that afford a private right action (unlike the EPCA) or plaintiffs who sought damages for injuries to persons and property (unlike these Plaintiffs). Plaintiffs here allege only implausible "out-of-pocket loss" related to the value of their vehicles and cost of fuel. *See, e.g.,* ECF No. 78 at ¶¶ 31, 32. Thus, Plaintiffs' pursuit of economic damages does not save their claims from the EPA's primary jurisdiction.

### D. Plaintiffs' claims do not satisfy Rules 8(a) or 9(b).

Plaintiffs must not be permitted to escape from the false premise underlying the ACAC, that there exists a single measure of "true fuel economy" and the figures presented by Ford were "inaccurate." *See, e.g.*, ECF No. 78, PageID.2058 at ¶ 15

---

ECF No. 78-4, PageID.3037-3027, ECF No. 78-10, PageID.3055-3056. These representations cannot be attributed to Ford.

[11] *See, e.g.*, *Stoll v. Kraft Foods Global, Inc.*, No. 09-364, 2010 WL 3702359, at *6 (S.D. Ind. Sept. 6, 2010) (noting private right of action in the Resource Conservation and Recovery Act); *Martin v. Behr Dayton Thermal Prods. LLC*, No. 08-326, 2011 WL 4073703, at *1, 3 (S.D. Ohio Sept. 13,2011) (involving monetary damages predicated on injuries to persons and properties caused by the unlawful dumping of chemical waste).

("miscalculated" fuel economy); ¶ 31 ("true fuel economy"); ¶ 40 ("exaggerated fuel economy"); ¶ 41 ("inaccurate fuel economy"); *accord* ECF No. 85, PageID.3304 ("Ford concealed the true [fuel economy] figures and advertised false ones"). As the EPA has repeatedly explained to manufacturers and consumers alike, fuel economy ratings derived by manufacturers using EPA-mandated testing procedures are "a useful tool for comparing the fuel economies of different vehicles *but may not accurately predict the average MPG you will get.*" *See* ECF No. 82, PageID.3226 (citing Fueleconomy.gov). It is for this exact reason that EPA-approved, FTC-mandated window stickers affixed to the vehicles purchased and leased by Plaintiffs stated that "[a]ctual [fuel economy] results *will vary* for many reasons . . . ." *See, e.g.*, ECF No. 78-19, PageID.3313 (emphasis added). It is also why the advertisements of fuel economy by Ford are stated as estimates, and not guarantees of real-world performance. ECF No. 78-14, PageID.3071-3094; ECF No. 78-19, PageID.3113; ECF No. 78-21, PageID.3119-3153. Thus, any claim premised on the real-world accuracy (or inaccuracy) of fuel economy estimates must fail as facially implausible. *See, e.g.*, ECF No. 78 at ¶¶ 15, 31, 40, 41.

Plaintiffs disagree. They assert that their shotgun-style, 3,997 paragraph ACAC plausibly alleges a claim because their unnamed "expert"—who may or may not be the YouTube performer cited in the ACAC—performed the "identical EPA and SAE-required" fuel economy test Ford conducted and obtained results that

varied from those Ford provided to the EPA. *See* ECF No. 85, PageID.3360. But Plaintiffs themselves admit that the tests performed by their unnamed expert were *not* identical to those required by the EPA and performed by Ford. ECF No. 85, PageID.3360. Ford tested its vehicles in a lab setting under controlled conditions to adequately account for the variables necessary to calculate fuel economy. *Id.*; *see also* ECF No. 78, PageID.2151 at ¶ 403 (alleging "Ford's internal lab tests did not account for [certain] forces, which lead to better—and entirely inaccurate—fuel economy projections."). As far as Ford can glean from the Plaintiffs' filings, their expert did not. ECF No. 85, PageID.3360. It is therefore no surprise that their "expert's" results varied. In fact, Ford and the EPA explained to consumers that lab-constructed estimates "will vary" from performance achieved in other environments. *See* ECF No. 82, PageID.3226. In Plaintiffs' words, comparing the EPA-approved lab testing performed by Ford to the testing performed by Plaintiffs' unnamed "expert" is an "apples and oranges" comparison that does not render Plaintiffs' otherwise unsupported allegations plausible. ECF No. 85, PageID.3360-3361.[12]

Further, Plaintiffs fail to allege a misrepresentation or omission with the

---

[12] It does not follow that Ford "cheated" simply because select employees "were questioning [Ford's] computer modeling and physical test practices." ECF No. 78, PageID.2157 at ¶ 410. This is particularly true here, where the Department of Justice investigation spawned as a result of these employees' questions has concluded without any charge or claim of wrongdoing against Ford. *Id.* (citing ECF No. 78, PageID.2149, 2157, 2166 at ¶¶ 397; 410-411, 430).

particularity required by Rule 9(b). *See* ECF No. 82, PageID.3228 (misrepresentations); ECF No. 82, PageID.3232 (omissions); *see also Smith v. Gen. Motors LLC*, No. 19-1614, --- F.3d. ---, 2021 WL 631475, at *8-9 (6th Cir. Feb. 18, 2021). Given every Ford-produced advertisement cited represents estimated, not actual, fuel economy performance, Plaintiffs appropriately abandon any claim of misrepresentation-based fraud. *Compare* ECF No. 82, PageID.3228 *with* ECF No. 85, PageID.3361 (asserting only that "Ford ignores Plaintiffs' omission-based allegations."). The omission theory they retreat to also fails. ECF No. 85, PageID.3361. Plaintiffs have not identified "what" was allegedly omitted from Monroney labels or Ford's advertising. They allege only that mythical "true fuel economy" was not presented to consumers.[13] But what they are asking for is, as the EPA says, impossible. Ford cannot be compelled to produce individualized estimates for each buyer based on their driving conditions. This omission is not actionable.

### E.  Plaintiffs' Consumer Fraud and Protection Claims Fail.

#### i.  Plaintiffs have not alleged facts to support the violation of any state consumer fraud or consumer protection statute.

Plaintiffs agree that under all but one relevant consumer protection statute, they needed to plead reliance on an actionable misrepresentation or that an actionable misrepresentation or omission caused their injuries. ECF No. 85,

---

[13] Any claim that Ford committed a fraud on the EPA is not cognizable, under any pleading standard. *See* Section II(B)(i) (discussing *Buckman*).

PageID.3368-3369.  Plaintiffs thus concede that they must *at least* plausibly—and in most cases particularly—identify an actionable misrepresentation or omission. *See* ECF No. 82, PageID.3232; *accord* Fed. R. Civ. P. 8(a), 9(b). They have not. [14]

Plaintiffs assert that they have alleged an actionable misrepresentation or omission by reference to Ford's use and distribution of materials containing EPA-mandated fuel-economy estimates, as opposed to "true fuel economy" figures. *See* ECF No. 85, PageID.3304 ("Ford concealed the true [fuel economy] figures and advertised false ones"), PageID.3371-3372; *see also, e.g.*, ECF No. 78, PageID.2064 at ¶ 31 (similar). That argument is frivolous. Courts have repeatedly held, as Plaintiffs admit, "the mere use of EPA estimates, as opposed to any other supposed estimates of 'actual' [or, in this case 'true'] fuel-economy, [is] not actionable." *C-Max I*, 2015 WL 7018369 at *32; *see also* ECF No. 85, PageID.3371.[15] This means that use of an EPA-estimate in a vehicle booklet, television commercial, or print

---

[14] Plaintiffs claim Ford has ignored the possibility that an omission could constitute a deceptive practice. ECF No. 85, PageID.3369. That is false. Ford gave Plaintiffs' omission theory the space it deserved, relegating its discussion to a footnote. ECF No. 82, PageID.3232.

[15] S*ee also, e.g.*, *Gray v. Toyota Motor Sales, USA,* No. 08-cv-1690, 2012 WL 313703, at *6 (C.D. Cal. Jan. 23, 2012), *aff'd,* 554 F. App'x 608, 609 (9th Cir. 2014) ("[N]o misrepresentation occurs when a manufacturer merely advertises EPA estimates."); *id.* (explaining consumer protection claims "must fail [when] they rely solely on advertisements that merely repeat the approved EPA mileage estimates, without any additional representations as to, for example, a consumer's ability to achieve those figures under normal driving conditions."); *Paduano,* 169 Cal. App. 4th at 1470 ("[T]here is nothing false or misleading about . . . advertising with regard to its statements that identify the EPA fuel economy estimates[.]").

advertisement is not actionable *unless* the use mischaracterizes the estimate as a "guarantee of specific real-world performance." *C-Max II*, 2017 WL 3142078 at *9.[16] And here, as explained, none do. *See, e.g.*, ECF No. 78-14, PageID.3072. This is dispositive. *C-Max II*, 2017 WL 3142078 at *11 ("[Ford's] representations are based entirely on [] EPA-estimated MPG, as is evident from the inclusion of the footnote," containing the FTC disclaimer).

Plaintiffs also do not allege that they saw, much less relied on, the cited advertisements. This too is dispositive. *C-Max I*, 2015 WL 7018369 at *21 (dismissing consumer protection claims because plaintiffs must but did not "identify each and every advertisement [p]laintiffs *relied* upon in order to establish the 'who . . . where, when[,] and why' of the fraud." (emphasis added)).

Plaintiffs also assert that their consumer protection claims can survive by reference to puffery. *See* ECF No. 85, PageID.3372 (asserting Ford's use of EPA estimates to market its vehicles as "most fuel efficient" and "best in class" is actionable). That is wrong. These statements are puffery, and puffery cannot serve as an actionable misrepresentation. *See, e.g., Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 706 (E.D. Mich. 2020) (finding statements "leading fuel economy" and "unprecedented performance and fuel economy" nonactionable puffery). Nor can

---

[16] S*ee also Yung Kim*, 99 F. Supp. 3d at 1099 (permitting consumer protection claim based on "beyond the label" representation of the distance a vehicle could travel on one tank of gas on a map outlining a route from Chicago to Rochester, New York).

generalized statements comparing the EPA-estimated fuel-economy figures among vehicles. *C-Max II*, 2017 WL 3142078 at *10 (statements that "C-Max [] bests in MPG" and "most fuel-efficient midsize hybrid in America" not actionable). Comparisons are, after all, the *purpose* of the EPA estimates. *EPA Your Mileage Will Vary*, available at https://www.fueleconomy.gov/feg/why_differ.shtml (last visited Feb. 2, 2021) (estimates "are a useful tool for comparing the fuel economies of different vehicles"). Yet that is all Plaintiffs allege. ECF No. 85, PageID.3372.

Because Plaintiffs have not cited a single representation made by Ford constituting a guarantee of real-world performance (much less one they saw, heard, or relied upon) or explained how Ford omitting non-existent "true" fuel economy figures amounts to a deceptive act, each consumer protection claim fails.

### ii. Plaintiffs cannot raise class-wide claims in states where consumer protection statutes bar class actions.

The consumer protection statutes of ten states preclude class actions or otherwise provide a private right of action exclusively for individuals acting in their own capacities. *See* ECF No. 82, PageID.3234 (collecting statutes). Federal courts in this District routinely enforce these, or similar, substantive state statutory class action prohibitions. *See, e.g.*, *Matanky v. Gen. Motors LLC,* 370 F. Supp. 3d 772, 798-99 (E.D. Mich. 2019); ECF No. 82, PageID.3235 (collecting cases); *cf. Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1092 (6th Cir. 2016) (acknowledging that Rule 23 does not displace class action bars where the prohibition is part of the state

substantive right, or "appears within the same statutory provision that creates the private cause of action.").[17] This Court should do the same.

### iii. Ford's compliance with FTC regulations and pre-suit approval requirements bars many of Plaintiffs' claims.

Plaintiffs do not dispute, and therefore concede, that their consumer protection claims under the laws of 26 states should be dismissed because the law of those states precludes suits premised on advertisements compliant with or expressly authorized by federal law. *See* ECF No. 82, PageID.3235-3237; *see also Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631 (W.D. Mich. 2015) (collecting controlling cases recognizing that a plaintiff waives a claim "by failing to respond to or to refute arguments made by the defendants" to support dismissal).[18] That is precisely the case here, and these claims should be dismissed.

Further, Plaintiffs do not substantively dispute that the consumer protection statutes in Mississippi and Iowa require pre-suit approval from each state's Attorney

---

[17] Plaintiffs cite several decisions holding that Rule 23 displaces state class action bars. ECCF No. 85, PageID.3373. Rule 23, spawned from the Supreme Court's authority to promulgate procedural rules under the Rules Enabling Act, does not displace state substantive law. *See* 28 U.S.C. § 2072(b) (federal procedural rules "shall not abridge, enlarge, or modify any substantive right."). Or, in this case, the substantive requirements to recover for an alleged consumer protection violation. *See Whitlock*, 843 F.3d at 1092. The cases Plaintiffs cite are therefore not instructive.
[18] This Court recently rejected the exact argument Plaintiffs now raise in response to Ford's motion to dismiss Plaintiffs' MCPA claim. *See Gant v. Ford Motor Co.*, No. 19-12553, 2021 WL 364250, at *7-8 (E.D. Mich. Feb. 3, 2021) (Cox, J.); *see also* ECF No. 82, PageID.3255-3256.

General. They instead argue that: (1) dismissal is premature under Mississippi law; and (2) there is insufficient authority interpreting Iowa's law to permit dismissal. ECF No. 85, PageID.3373-3374. Neither argument is persuasive. Courts have dismissed Mississippi and Iowa-based consumer protection claims for failing to obtain adequate pre-suit approval from the States' Attorney General. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg. Sales Prac. Litig.,* 295 F. Supp. 3d 927, 1017 n.22 (N.D. Cal. 2018) (Iowa); *id* at 1023 (Mississippi).[19] And limited precedent is no reason to discount the clear text of Iowa's consumer protection statute. *See* Iowa Code § 714H.7 ("A class action lawsuit alleging a violation of [the state's consumer protection law] *shall not* be filed with a court unless it has been approved by the attorney general." (emphasis added)). Dismissal of these claims is warranted.

### F.  Plaintiffs Cannot Sustain a Breach of Contract Claim

Plaintiffs concede that they have not identified a single written or oral contract, much less contractual term, Ford has allegedly violated. ECF No. 85, PageID.3375-3376. Yet they push on with their baseless claim for breach of contract.

Plaintiffs assert their breach of contract claims are proper because they "bought or leased a Ford vehicle from an authorized Ford dealership." ECF No. 85, PageID.3375. But they do not plead that they purchased or leased a vehicle from the

---

[19] Plaintiffs in *In re Chrysler-Dodge-Jeep EcoDiesel,* were granted leave to amend. That would be inappropriate here given the fact that Plaintiffs have not even attempted to remedy this issue following the filing of their individual complaints, a master consolidated complaint, and an amended master consolidated complaint.

defendant in this case, Ford Motor Company. Nor do they allege that they communicated with Ford at the time of sale. Indeed, it is Plaintiffs' position, breathtaking in its distance from controlling precedent, that a third-party product manufacturer unaffiliated with a consumer transaction forms a contract, with unknown terms, with every consumer of its products.[20] Such a conclusion is untenable under Sixth Circuit precedent. *See, e.g.*, *Northampton Restaurant Grp., Inc. v. FirstMerit Bank, N.A.*, 492 Fed. App'x 518, 522 (6th Cir. 2012) ("It is a basic tenet of contract law that a party can only advance a claim . . . by identifying and presenting the actual terms of the contract allegedly breached."); *Santilli v. JPMorgan Chase Bank, N.A.*, No. 14-12359, 2014 WL 6675327, at *5 (E.D. Mich. Nov. 25, 2014) (Cox, J.) (dismissing action where "the contract at issue was not identified [and] there was no indication of the terms that were breached.").[21]

Because Plaintiffs do not allege facts showing that Ford made them an offer, that they accepted that offer, that they paid consideration to Ford, or that Ford failed

---

[20] Plaintiffs do not even attempt to confront the fact that Ford is barred from selling vehicles directly to consumers in some states. *See, e.g.*, Mich. Comp. Laws § 445.1574(h); Ala. Code § 8-20-4; Fla Stat. § 320.61.

[21] Plaintiffs cite a single case, *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 645 (E.D. Mich. 2019), to support its gross expansion of contract liability. This case was wrongly decided. Although it correctly explains that a contract can be formed through the "sale of [a] vehicle" between a buyer and seller, where "the buyer pays or promises to pay the seller for the thing bought or sold[,]" *Bledsoe*, 378 F. Supp. 3d at 645, the court incorrectly leaps to the conclusion that a vehicle manufacturer, is a "seller." Not so. Dealerships, not manufacturers, sell vehicles to consumers.

to honor a binding promise made to them, they do not state a viable contract claim.

### G. Plaintiffs Fail to Allege Fraudulent Concealment

Plaintiffs do not dispute that to state a claim for fraudulent concealment they must allege with the specificity required by Rule 9(b) the common law elements of fraud and that Ford concealed a material fact it had a duty to disclose. *See* ECF No. 82, PageID.3239-3240 (collecting cases). Yet they do neither. As detailed below in Section II(J), Plaintiffs have not adequately alleged a misrepresentation or omission and therefore have not alleged the common law elements of fraud with specificity. A threadbare allegation that Ford "cheated" or provided "inaccurate" EPA-approved fuel economy estimates is not enough. *C-Max I*, 2015 WL 7018369 at *32 (explaining that "the mere use of EPA estimates, as opposed to any other supposed estimates of 'actual' fuel-economy, are not actionable" misrepresentations). Ford disclosed that actual mileage varies, using the language and format that the EPA and the FTC dictate, and Plaintiffs fail to allege a plausible basis for any further duty to explain the details of such variations (which the EPA has previously published in the Federal Register in any event).[22]  These pleading failures warrant dismissal.

Plaintiffs cannot salvage their claim by reference to the four cases cited in

---

[22] Nor have Plaintiffs plausibly, much less specifically, alleged that: (1) they maintained a special relationship with Ford; (2) Ford partially disclosed material information, which created the impression of full disclosure; or (3) Ford was a party to their purchase transaction and possessed superior knowledge not available to Plaintiffs. ECF No. 82, PageID.3240-3241. Thus, they have not alleged Ford owed them a duty to disclose facts concerning the calculation of fuel economy estimates.

their opposition. *See* ECF No. 85, PageID.3364-3365.[23] In each, courts sustaining fraudulent concealment claims not only concluded that plaintiffs had plausibly alleged a defect, but also that the defect was known to the defendant at the time of sale and either could not be discovered by the plaintiffs with reasonable diligence or existed for the sole purpose of concealing information. That is not the case here.

Plaintiffs do not plausibly allege a defect. Plaintiffs instead complain that their vehicles' real-world fuel economy diverged from the fuel economy estimates provided by Ford and the EPA. This is not a plausible defect. It is a reality caused by the widely disclosed fact that "fuel economy varies for a wide variety of reasons, such as different driving styles, climates, traffic patterns, use of accessories, loads, weather, and vehicle maintenance." 71 Fed. Reg. at 77874; *see also* 76 Fed. Reg. at 39505 (emphasizing the "tradition" of ensuring consumers know estimates do not reflect real world estimates). If fuel economy variance is an actionable "defect," then every car on the road today suffers from such a defect. Further, even had Ford inflated its fuel economy estimates, Plaintiffs own allegations suggest that the "defect" was subject to consumer discovery. *See* ECF No. 78, PageID.2158-2159 at 413-14. The cases cited by Plaintiffs are therefore inapposite.

---

[23] Plaintiffs' cite: *In re GM Air Conditioning Litig.*, 406 F. Supp. 3d 618, 638-39 (E.D. Mich. 2019) (Air conditioning defect); *Bledsoe*, 378 F. Supp. 3d at 643 ("defeat device"); *Persad v. Ford Motor Co.*, No. 17-12599, 2018 WL 3428690, at *6 (E.D. Mich. Jul. 16, 2018) (Exhaust fume defect); *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 600 (E.D. Mich. 2017) ("defeat device").

### H. Plaintiffs' Express Warranty Claims Fail

Plaintiffs' express warranty claim is everchanging. In their ACAC, Plaintiffs allege that Ford made two express warranties related to fuel economy: (1) the EPA fuel economy estimates on the Monroney label; and (2) the New Vehicle Limited Warranty ("NVLW"). Plaintiffs now disclaim reliance on the Monroney label, abandon their NVLW allegations, and lean on Ford's general advertising of fuel economy estimates. ECF No. 85, PageID.3350-3351. But the advertisements they identify do not support a warranty claim.

Plaintiffs assert that Ford created and breached a warranty by including fuel economy representations in advertising that go beyond "mere disclosure" of EPA estimates. ECF No. 85, PageID.3351 ("[G]uarantees beyond a mere disclosure . . . may still create a warranty."). While Ford agrees that an advertisement promoting *real-world fuel economy* or promising *actual performance* may create an express warranty, Plaintiffs identify no such advertisement here, much less one that *all* of the named Plaintiffs and *all* of the absent class members saw before purchasing or leasing their vehicles. *Compare In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at **3, 35-36 (sustaining express warranty claims premised on allegations that Ford advertised its vehicles would achieve a "total range of . . . 571 miles" and that the vehicle could "go further on a [single] tank of fuel" than its competitors) and *Sanchez*, 2014 WL 2218278, at *5 (suggesting a representation that

a vehicle could "travel 717 miles on one tank" of gas went "beyond mere disclosure" of an EPA estimate) with *Paduano*, 169 Cal. App. 4th at 1467 ("[T]o the extent that Honda identified the EPA fuel economy estimates in the Monroney sticker and reiterated those EPA mileage estimates in its own advertising, Honda's provision of those estimates does not constitute an independent warranty that [plaintiff's] vehicle would achieve the EPA fuel economy estimates or a similar level of fuel economy."). Each Ford-produced advertisement cited contains a disclaimer noting that the fuel economy figures are estimates, not real-world guarantees of fuel economy performance. *See, e.g.*, ECF No. 78-14, PageID.3072, ECF No. 78-19, PageID.3113, ECF No. 78-21, PageID.3121. Thus, by Plaintiffs' own standard, the cited advertisements cannot support their express warranty claims.

To the extent that Plaintiffs still intend to rely on the Monroney label or the NVLW, their claims fail. Plaintiffs accept that mere recitations of an EPA estimate on a Monroney label do not create an actionable express warranty related to fuel economy. ECF No. 85, PageID.3350-3351. Federal law compels that conclusion. *See* ECF No. 82, PageID.3342-3341 (citing 49 U.S.C. § 32908(d)). With respect to the NVLW, Plaintiffs have not plausibly alleged it covers fuel economy. Plaintiffs instead assert that the NVLW covers defects "in factory supplied material or workmanship." It is unclear how Plaintiffs believe Ford's calculation of a fuel economy estimate amounts to a "defect," much less a defect impacting "material or

31

workmanship." *See* ECF No. 78, PageID.2587, 2604 ("…Ford failed to inform [Plaintiffs] that the [subject vehicles] were *defectively designed*." (emphasis added)); *see also* ECF No. 82, PageID.3243-3244. Put simply, a vehicle's fuel economy is not subject to repair or, in turn, warranty coverage. In any event, Plaintiffs concede that they have failed to invoke the warranty or satisfy the prerequisites for making a claim under the warranty (*e.g.*, that they presented their vehicle to an authorized Ford dealer for a repair). ECF No. 85, PageID.3352. Warranty coverage is not available.

Plaintiffs have further failed to plausibly allege they provided Ford pre-suit notice of this claim. *See* ECF No. 82, PageID.3244-3245; *see also* ECF No. 85, PageID.3353 (acknowledging pre-suit notice requirements). Plaintiffs do allege that they "provided notice of Ford's breach [of warranty] *via* certified mail as early as May 6, 2019" for plaintiffs in each state but California. *See, e.g.*, ECF No. 78, PageID.2227 at ¶ 602. However, this allegation is facially implausible given the fact that several of the states' classes do not even have representative plaintiffs who could have accomplished notice. *See supra* Section II(B)(iii). Stated differently, phantom plaintiffs cannot provide adequate pre-suit notice. The lack of pre-suit notice warrants dismissal in several states. *See* ECF No. 82, PageID.3245.

## I.  Plaintiff Cannot Sustain an MMWA Claim

Plaintiffs' MMWA claim fails for three reasons. First, Plaintiffs concede that absent an actionable violation of a state warranty law, their MMWA claim fails. ECF

No. 85, PageID.3358; *see also Temple v. Fleetwood Enters., Inc.,* 133 F. App'x 254, 268 (6th Cir. 2005). Plaintiffs have failed to state an express warranty claim. *See supra* Section II(H). Dismissal is appropriate. *See* ECF No. 82, PageID.3246.

Second, even assuming Plaintiffs have adequately alleged a state warranty claim, they have not identified a specific "written warranty," as defined by the MMWA, related to fuel economy. "[A] written affirmation of fact or a written promise of a specified level of performance must relate to a specified time period in order to be considered a 'written warranty.'" *See* 16 C.F.R. §700.3. Plaintiffs assert that their claim is "partially based on what Ford warranted in its advertisements and communications." ECF No. 85, PageID.3358.[24] But the cited advertisements promise neither a specific level of performance nor a specific fuel economy over a specific period of time. *See* ECF No. 82, PageID.3246-3247 (collecting cases); *see also* ECF No. 78-14, PageID.3071-3094; ECF No. 78-19, PageID.3113; ECF No. 78-21, PageID.3119-3153. Rather, they present consumers with an *estimated* fuel economy and provide that "actual mileage will vary." *Id.*; *see also In re Scotts EZ Seed Litig.*, No. 12-4727, 2013 WL 2303727, at **4-5 (S.D.N.Y. May 22, 2013) (advertisement stating "[r]esults may vary" precludes creation of written warranty

---

[24] Plaintiffs never say what else their claim could be based upon. Plaintiffs do not attempt to dispute Ford's claim that Plaintiffs "do not allege that [the NVLW] serves as the basis for their MMWA claim." ECF No. 82, PageID.3246. Nor do they dispute that "federal law bars any claim that advertising EPA-estimated fuel-economy figures constitutes an actionable warranty." *Id.* at 52.

under the MMWA). Accordingly, they are not actionable under the MMWA.

Third, Plaintiffs failed to satisfy the MMWA's pre-suit notice requirements. To proceed with class-wide claims under the MMWA, a plaintiff must give the warrantor a reasonable opportunity to cure and, after that opportunity is provided, notify the warrantor of a plaintiff's intention to bring class claims. *See* 15 U.S.C. § 2310(e); *Bhatt v. Mercedes-Benz USA, LLC,* No. 16-3171, 2018 WL 5094932, at **4-5 (C.D. Cal. Apr. 16, 2018). Plaintiffs offer no such allegations, but again attempt to argue around their pleading failure.

Plaintiffs claim that dismissal is unwarranted because either Ford waived pre-suit notice as it "knew of the defect at the time of sale," or because notice was "futile." ECF No. 85, PageID.3359. Plaintiffs identify no facts or law to support waiver; none exist. *See Tietsworth v. Sears, Roebuck & Co.,* 720 F. Supp. 2d 1123, 1144 (N.D. Cal. 2010). And the Sixth Circuit has rejected Plaintiffs' suggestion that the MMWA's pre-suit notice requirements can be cast aside as "futile." *Kuns v. Ford Motor Co.,* 543 Fed. App'x 572, 576 (6th Cir. 2013).[25] This provides yet another basis for dismissal. *See* Moving Br. at 53 (collecting cases).[26]

---

[25] Plaintiffs do not provide a cogent reason why *Kuns* should not control. ECF No. 85, PageID.3359. That court remarked that it could not locate "any case law indicating that th[e] statutory requirement can be waived if a plaintiff [believes] that demand [is] futile." *Kuns*, 543 Fed. App'x at 576.

[26] Plaintiffs cite one case to suggest they have adequately alleged an MMWA claim: *Persad*, 2018 WL 3428690, at *6. This case addressed the MMWA's "informal

### J. Plaintiffs Fail to State Claims for Fraud or Negligent Misrepresentation

Plaintiffs do not confront that there is no federal common law cause of action for fraud or negligent misrepresentation. ECF No. 82, PageID.3249-3250. Nor do they cite the ACAC to suggest their fraud claims are raised under the laws of any state. This alone warrants dismissal of Plaintiffs' claims. *See, e.g.*, *Greer v. Fed. Express Corp.,* 66 F. Supp. 2d 870, 873 (W.D. Ky. 1999) ("[T]he Sixth Circuit held that claims for common law fraud and negligent misrepresentation did not exist under federal common law."); *cf. Smith*, 2021 WL 631475, at *4 (general rule that "in diversity cases we apply the . . . substantive law of the forum state."). Further, Plaintiffs concede that Arkansas, Idaho, and Indiana do not even recognize a cause of action for negligent misrepresentation. *Compare* ECF No. 82, PageID.3251-3252 *with* ECF No. 85, PageID.3368.

Even if this Court construes Plaintiffs' claims as arising under the laws of each state, those claims still fail because, as already explained, Ford made no actionable misrepresentation. *See supra* Section II(E)(i) (discussing that puffery is non-actionable.) And, in any event, Plaintiffs appear to concede that they failed to plausibly allege reasonable reliance on any advertisement's fuel economy representations. *Compare* ECF No. 82, PageID.3251 *with* ECF No. 85,

---

dispute settlement" procedures codified at 15 U.S.C. § 2310(a)(3). This is not the same as the pre-suit notice requirements codified at 15 U.S.C. § 2310(e).

PageID.3365-3368 (omitting any opposition to Ford's reliance-based argument).

Plaintiffs cannot resurrect their failed fraud and negligent misrepresentation claims by now arguing that Ford failed to "disclose[] the true fuel economy of [its] vehicles." ECF No. 85, PageID.3366. As noted, no such value exists. For this reason, Ford, at the EPA and FTC's command, only provides consumers with fuel economy estimates. Ford cannot be held liable for omitting information it does not possess.

Plaintiffs also assert that an omission claim is cognizable because "Ford admitted improper coastdown testing on the 2019 Ranger but took no action to correct ongoing misrepresentations to consumers." ECF No. 85, PageID.3366-3367. This is false, Ford made no such admission. In support, Plaintiffs rely solely on the fact that select Ford employees "were questioning [Ford's] computer modeling and physical test practices," and the existence of a DOJ investigation, which—along with a parallel investigation by CARB—was closed *without* a charge of wrongdoing against Ford. *Id.* (citing ECF No. 78, PageID.2149, 2157, 2166 at ¶¶ 397; 410-411, 430). That is, Plaintiffs do not allege that Ford "admitted" anything. Plaintiffs' attempt to invent an admission to support their fraud claim speaks volumes.

### K. Plaintiffs' Unjust Enrichment Claims Fail.

Plaintiffs concede that to state an unjust enrichment claim they were required to "allege sufficient facts to show that [Ford] received a benefit" from them and that Ford's "retention of the benefit would be unjust." ECF No. 85, PageID.3376. They

do not allege either. Nor could they. Ford did not sell or lease Plaintiffs their vehicles. So Plaintiffs provided no financial benefit to Ford based on the sale or lease of their vehicles. Additionally, Plaintiffs fail to allege that any action undertaken by Ford to comply with EPA and FTC regulations was somehow unjust. Plaintiffs' unjust enrichment claim should be dismissed with prejudice.[27]

## III.   CONCLUSION

For the reasons stated above, and those contained in Ford's moving brief, Plaintiffs' ACAC should be dismissed in its entirety with prejudice.

Respectfully submitted,

By:   /s/ Joel A. Dewey                    By:  /s/ Stephanie A. Douglas
    Joel A. Dewey                              Stephanie A. Douglas (P70272)
    Jeffrey M. Yeatman                      Susan M. McKeever (P73533)
    DLA PIPER LLP (US)                    BUSH SEYFERTH PLLC
    6225 Smith Avenue                      100 W. Big Beaver Rd., Ste. 400
    Baltimore, Maryland 21209        Troy, MI 48084
    (410) 580-4135                              (248) 822-7800
    joel.dewey@dlapiper.com            douglas@bsplaw.com
    jeffrey.yeatman@dlapiper.com    mckeever@bsplaw.com

*Attorneys for Ford Motor Company*

Dated: February 22, 2021

---

[27] The claims also fail because they are not cognizable under the laws of a variety of states or require direct privity with Ford. *See* ECF No. 82, PageID.3253-3255.